# EXHIBIT 1

# INDEPENDENT CONTRACTOR AGREEMENT

**THIS INDEPENDENT CONTRACTOR AGREEMENT** (the "Agreement") is made and entered into as of the 26th day of March, 1998, by and between **WORLD CHAMPIONSHIP WRESTLING, INC.**, a Georgia corporation located at One CNN Center, Box 105366, Atlanta, Georgia 30348 ("WCW"), and the undersigned wrestler ("Wrestler").

**FOR AND IN CONSIDERATION** of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. **Services**.

    (a) Subject to the terms and conditions set forth in this Agreement, Wrestler agrees to provide the following services as requested by WCW (the "Services") i) appear and perform as a professional wrestler at events, including without limitation, live and taped television shows, pay-per-view telecasts, live arena shows and other promotional events ("Events"); ii) cooperate with and assist in activities intended to publicize, advertise and promote Events, including, but not limited to, on-sale ticket appearances, media interviews and other publicity appearances; (iii) develop his own, individual wrestling style and persona, with advice from WCW, that will be attractive to wrestling fans; (iv) provide all wardrobe, props and make-up necessary for his performance at any Event; provided, however, all such items shall be subject to approval by WCW prior to their use in an Event; and (v) perform such other services as may be reasonably requested by WCW. Wrestler agrees to use his best efforts to perform the Services in a professional manner consistent with the customs of the professional wrestling industry.

    (b) In connection with Wrestler's performance of the Services, Wrestler grants WCW the following exclusive, paid-up, worldwide rights: i) to arrange Wrestler's performance or appearance at Events; ii) to sell or distribute admission tickets for all Events; iii) to create,

1

publish, distribute, broadcast, photograph, film, tape or otherwise record (or authorize others to do so), in any and all available media, any or all of the Events or animated programs (any such creation or recording shall be referred to as a "Program"); and iv) to use, exhibit and distribute, and to license others to use, exhibit and distribute, in perpetuity, any Program, or any part or segment of any Program, in any and all media and by any and all methods, whether now known or coming into existence hereafter, and, in connection therewith, to utilize and exploit the name, image, likeness, character, costume, props, ring name, voice, logo, service marks, trademarks, trade names, signature, gimmicks, routines, themes and charicatures and any and all other distinctive and identifying indicia as used by or associated with Wrestler. The rights granted by this section shall be exclusive to WCW during the Term and for the period set forth in section 9(b), and shall be non-exclusive thereafter. Wrestler expressly acknowledges and agrees that the rights granted to WCW in section 1(b)(iv) shall continue in effect after the expiration, nonrenewal or termination (for any reason) of this Agreement.   WCW and Wrestler acknowledge and agree that they have entered into that certain Merchandising Agreement of even date herewith with respect to certain specified merchandising activities.

2. **Independent Contractor.** Wrestler, in the performance of the Services agreed to in this document, is an independent contractor. In the performance of this Agreement, both WCW and Wrestler shall be acting in their own separate capacities and not as agents, employees, partners, joint venturers or associates of one another. It is expressly understood and agreed that Wrestler is not authorized to bind WCW to any liability or obligation or to represent that it has any such authority. Wrestler is responsible for all of his expenses, including without limitation, medical expenses, health and welfare insurance, disability insurance, training expenses, props, wardrobe, make-up and other expenses necessary to perform the Services under this Agreement. Without limiting the generality of the foregoing, Wrestler acknowledges that, as between WCW

2

and Wrestler, Wrestler shall be solely responsible and liable for the payment of any and all withholding or other taxes levied, assessed or due as a result of the services which are performed by Wrestler under this Agreement. Any and all travel incurred by Wrestler in the performance of services hereunder shall be pursuant to WCW's Travel Policy, as amended by WCW from time to time.

3. **Compensation.**

(a) As full and complete compensation for the Services, WCW shall pay to Wrestler, and Wrestler shall accept, the payments described on Exhibit A, attached hereto and incorporated herein by reference.

(b) Wrestler's compensation as outlined in Exhibit "A" shall be apportioned according to the following schedule:

| | |
|---|---|
| Pay Per Views | 40% of annual compensation |
| Televised Events (taped or live) | 25% of annual compensation |
| Non-Televised House Shows | 20% of annual compensation |
| Interviews, Photo Shoots and Personal Appearances | 15% of annual compensation |

In the event Wrestler fails to timely appear and perform as required by WCW, except by reason of Incapacity, WCW shall have the right to deduct pro-rata sums from Wrestler's compensation payments based on the foregoing apportionment divided by WCW's reasonable projection of Wrestler's number of annual appearances in each category. For the purposes of this section, Incapacity shall be defined as Wrestler's inability to perform all of the physical requirements of the Services, as determined by WCW. This right of WCW shall be in addition to every other remedy now or later existing at law or in equity and shall not in any way interfere with any rights on the part of WCW to enjoin wrestler from any violation of this Agreement or any part thereof. Notwithstanding any reduction or deduction of compensation payments pursuant to this section,

all remaining terms and conditions of this Agreement shall continue in full force and effect, unless and until terminated pursuant to the terms of this Agreement.

(c) Notwithstanding the forgoing apportionment, for general payment purposes, Wrestler's compensation shall be payable in equal installments on a bi-weekly basis or based on such schedule as WCW may implement from time to time.

4. **Ownership of Work Product.** All work product, themes, routines, characters, storylines, property, data, documentation or information or materials conceived, discovered, developed or created by Wrestler pursuant to this Agreement including, without limitation, the Programs (collectively, the "Work Product") shall be owned exclusively by WCW. To the greatest extent possible, any Work Product shall be deemed to be a "work made for hire" (as defined in the Copyright Act, 17 U.S.C.A. §§ 101 et seq., as amended) and owned exclusively by WCW. Wrestler hereby unconditionally and irrevocably transfers and assigns to WCW all right, title and interest in or to any Work Product, including, without limitation, all patents, copyrights, trade secrets, trademarks, service marks and other intellectual property rights therein. Wrestler agrees that any ring name, nickname, persona, logo or character developed by him and/or WCW during the Term and used by him in connection with performance of the Services shall be part of the "Work Product," and shall be the exclusive property of WCW. WCW shall have the right to register any such name, nickname or logo as a trademark or service mark of WCW, to the extent WCW considers such registration to be permitted and appropriate under any applicable law. Without regard to any such registration, Wrestler hereby covenants that he shall not use any such ring name, nickname, persona, logo or character developed during the Term for any purpose at any time, in perpetuity, without the express consent of WCW. Wrestler agrees to execute and deliver to WCW any transfers, assignments, documents or other instruments which WCW may

4

deem necessary or appropriate, from time to time, to vest complete title and ownership of any Work Product, and all associated intellectual property and other rights, exclusively in WCW. If such Work Product is not considered to be a "work made for hire," Wrestler hereby assigns to WCW for One Dollar ($1.00) in hand and other good and valuable consideration all rights, title and interest in and to the copyright thereof and all renewals and extensions thereof that may be secured under the laws of any country now or hereafter in force and effect. WCW shall have full, immediate and unrestricted access to all Work Product during the Term of this Agreement.

5. **Compliance with Laws, Rules and Regulations.** (a) Wrestler agrees to comply with all applicable policies, rules, procedures and regulations adopted from time to time by WCW (including without limitation the Code of Conduct and Travel Policy) and all other applicable federal, state and local laws, rules, regulations, or ordinances; (b) Wrestler further agrees to abide by the terms and conditions of the WCW Substance Abuse Policy which Wrestler agrees he has received and reviewed.

6. **Representations and Warranties.** Wrestler hereby represents and warrants to WCW as follows: (a) Wrestler has the full power, authority, ability and legal right to execute and deliver this Agreement and to perform his obligations hereunder; (b) Wrestler has all legal rights, power, authority and ability to convey the Work Product to WCW; (c) this Agreement constitutes the legal, valid and fully binding obligation of Wrestler and is enforceable in accordance with its terms; (d) the execution, delivery and performance of this Agreement have been consented to and authorized by all individuals or entities required to consent to and authorize the same, will not contravene any law, regulation, judgment or decree applicable to Wrestler, and will not cause or result in a breach of or default under any other agreement, contract or understanding to which Wrestler is a party; (e) there are no pending claims or litigation which would or might interfere with the performance of Wrestler's obligations or the enjoyment of WCW's rights under this Agreement; and (f) Wrestler is not currently using, and

during the term of this Agreement, shall not use, any illegal drugs, steroids or other substances prohibited by WCW.

7. **Indemnification.** Wrestler agrees to indemnify, defend and hold harmless WCW, its directors, officers, and shareholders, and their respective agents, officers and employees, against any and all suits, damages, expenses (including, without limitation, court costs, attorneys' fees and allocable costs of in-house counsel), losses, liabilities and claims of any kind, caused by or resulting from any breach of this Agreement or by any other act or omission of Wrestler whether the same may be the result of negligence, willful act, responsibility under strict liability standards, any other substandard conduct or otherwise.

Wrestler shall at all times be responsible for any loss or damage to any WCW property by Wrestler or while in the possession of Wrestler, unless said damage occurs at the direct instruction of WCW as part of a storyline. The loss or damage thereto shall be restored at Wrestler's expense.

8. **Term, Termination and Incapacity.**

   (a) Unless sooner terminated in accordance with the provisions of this Agreement, the term of this Agreement shall be as described in Exhibit A attached hereto and incorporated herein by reference.

   (b) The term of this Agreement shall be divided into consecutive three (3) month periods. During any such period, WCW may terminate this Agreement with or without cause after giving Wrestler at least one (1) month prior written notice of such termination. Any such termination shall be effective at the end of the then-current three (3) month period.

   (c) Wrestler may terminate this Agreement upon the occurrence of any material breach of any provision hereof by WCW which remains uncured for a period of fifteen (15) consecutive days.

   (d) WCW may immediately terminate this Agreement upon the occurrence or at any time during the continuation of any material breach of any provision hereof by Wrestler.

(e) This Agreement shall terminate automatically upon the death of Wrestler. WCW may terminate this Agreement upon the incapacity of Wrestler or at any time during the continuation of the Incapacity.

(f) Wrestler acknowledges his present eligibility for workers' compensation through WCW. Wrestler agrees to accept the benefits provided by said workers' compensation coverage as his sole and exclusive remedy against WCW, (including its parent, affiliates, employees and agents), for any and all injuries sustained during the Term provided said coverage is maintained by WCW and is in effect with respect to such injury. Notwithstanding anything herein to the contrary, WCW shall not be obligated to maintain workers' compensation coverage.

9. **Restrictive Covenants**.

(a) <u>Confidentiality</u>. "Confidential Information" shall mean any confidential, proprietary, business information or data belonging to or pertaining to WCW that does not constitute a "Trade Secret" (as defined under applicable law) and that is not generally known by or available through legal means to the public. In recognition of WCW's need to protect its legitimate business interests, Wrestler hereby covenants and agrees that Wrestler shall not, unless specifically directed by WCW, for any reason or in any fashion, either directly or indirectly use, disclose, transfer, assign, disseminate, reproduce, copy, or otherwise communicate any: Confidential Information, at all times during his contractual relationship with WCW and for a period of one (1) year following the termination thereof for any reason; and Trade Secrets, at all times such information remains a "trade secret" under applicable law. During the Term, Wrestler shall: exercise his best efforts to ensure the continued confidentiality of all Trade Secrets and Confidential Information of WCW known by, disclosed to or made available to Wrestler, whether in connection with this Agreement or any other past or present relationship with WCW; immediately notify WCW of any unauthorized disclosure or use of any Trade Secrets or Confidential Information of which Wrestler becomes aware; and assist WCW, to the extent

7

necessary, in the procurement of or any protection of WCW's rights to or in any of the Trade Secrets or Confidential Information.

(b) During the Term and within the Territory of this Agreement, Wrestler shall perform the Services exclusively for WCW and shall not, directly or indirectly, be employed by, perform services for, or engage or be connected in any manner with any other business entity without the express written consent of WCW. Wrestler expressly covenants and agrees that for a period of one hundred and twenty (120) days after any termination or expiration of this Agreement, for any reason (the "Non-Compete Period"), he shall not provide those Services specifically delineated in sections 1(a)(i) and (ii) to any other individual, company or business in the United States, Canada and Japan. In addition, during the Non-Compete Period, Wrestler shall not appear or perform in any media (including but not limited to broadcast, pay-per-view and cable television, video replay, telephone hot-line, radio, magazine and internet) for or on behalf of Titan Sports, Inc. (WWF) or HHG Corporation (ECW) in the United States, Canada and Japan.

(c) <u>Acknowledgment of Reasonableness</u>. The parties expressly acknowledge the reasonableness and content of the covenants and agreements contained in this section.

10. **Notices**. All notices and statements provided for or required by this Agreement shall be in writing, and shall be delivered personally to the other designated party, or mailed by certified or registered mail, return receipt requested, or delivered by a recognized national overnight courier service, to the addresses set forth together with the signature of each party to this Agreement.

11. **Miscellaneous**.

(a) This Agreement, and the documents referenced herein, contain the entire agreement and understanding and shall supersede all prior agreements or understandings concerning the subject matter hereof between the parties hereto. No waiver, termination or discharge of this Agreement, or any of the terms or provisions hereof, shall be binding upon either party hereto unless confirmed in writing. This Agreement may not be modified or amended, except by a writing executed by both parties. No waiver by either party of any term or provision of this Agreement or of any default hereunder shall affect such party's rights thereafter to enforce such term or provision or to exercise any right or remedy in the event of any other default, whether or not similar.

(b) This Agreement is the product of arm's-length negotiations between Wrestler and WCW. Wrestler expressly states that he has had the opportunity to seek and obtain consultation in connection with the negotiation and execution of this Agreement, and that he fully understands the rights and obligations set forth herein. In the construction and interpretation of this Agreement, no account shall be taken of which party requested or drafted any particular provision or provisions of this Agreement.

(c) Regardless of the place of execution hereof, this Agreement and all amendments hereto, shall be deemed to have been negotiated, made, entered into and fully performed in the State of Georgia, without regard to the actual location at which Wrestler provides Services to WCW. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of Georgia applicable to contracts made, entered into and performed entirely therein, without giving effect to its conflict of laws provisions. Wrestler hereby (i) submits to the jurisdiction of the United States District Court for the Northern District

9

of Georgia and of any Georgia state court sitting in Atlanta for the purposes of all legal proceedings arising out of or relating to this Agreement and (ii) irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue of any such proceeding which is brought in such a court. Additionally, the parties hereto agree that the State of Georgia shall be the exclusive forum and situs for the resolution of any and all disputes, controversies or matters arising herefrom or related hereto. Wrestler's Home Base is identified solely for travel purposes and shall not affect the choice of law, jurisdiction or venue hereunder.

(d)     The parties further agree, notwithstanding the consideration provided for herein, that because of the special, unique and extraordinary nature of the Services hereunder and of the rights and licenses which are the subject matter of this Agreement, WCW shall be entitled to injunctive and other equitable relief to prevent any breach or default by Wrestler hereunder, and such relief shall be without prejudice to any other rights or remedies of WCW as may be provided by law.

(e)     WCW may hereby assign its rights and delegate its obligations under this Agreement, and if such assignee shall assume WCW's obligations in writing, WCW shall have no further obligations to Wrestler. Wrestler may not assign this Agreement, in whole or in part, without the prior written consent of WCW, and any attempted assignment not in accordance herewith shall be null and void and of no force or effect.

(f)     This Agreement shall be binding on Wrestler and his successors and permitted assigns.

(g)     Nothing herein shall be deemed to obligate WCW to use the services of Wrestler and WCW shall have fully discharged its obligations hereunder by paying the amount specified herein.

10

(h) With respect to WCW's rights hereunder, WCW shall have the sole right and discretion to bring any and all claims including but not limited to infringement or unfair competition claims.

(i) The headings contained herein are for the convenience of the parties only and shall not be interpreted to limit or affect in any way the meaning of the language contained in this Agreement.

(j) This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute the same Agreement. Any signature page of any such counterpart, or any electronic facsimile thereof, may be attached or appended to any other counterpart to complete a fully executed counterpart of this Agreement, and any telecopy or other facsimile transmission of any signature shall be deemed an original and shall bind such party.

(k) If any provision of this Agreement shall be held void, voidable, invalid or inoperative, no other provision of this Agreement shall be affected as a result thereof, and accordingly, the remaining provisions of this Agreement shall remain in full force and effect as though such void, voidable, invalid or inoperative provision had not been contained herein.

(l) Upon the request of WCW, Wrestler agrees to take any and all actions, including, without limitation, the execution of certificates, documents or instruments, necessary or appropriate to give effect to the terms and conditions set forth in this Agreement.

(m) Notwithstanding any termination of this Agreement, all provisions which, by their terms or reasonable interpretation thereof, sets forth obligations that extend beyond the termination of this Agreement hereof shall survive and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed or caused their duly authorized representatives to execute this Agreement to be effective as of the day and year first above written.

"WRESTLER"                                              "WCW"

Signature: *[signature]*                                By: *[signature]*

Printed Name: Marcus Bagwell                            Title: E.V.P.

## INDEPENDENT CONTRACTOR AGREEMENT

## FOR: MARCUS BAGWELL

### EXHIBIT "A"

**TERM:** This Agreement shall commence as of March 26, 1998 and shall continue through March 25, 2001.

**COMPENSATION:** In consideration of Wrestler's grant of the rights, licenses and services hereunder, and provided Wrestler faithfully and fully performs all of his obligations hereunder, WCW shall pay Wrestler as follows:

| | | |
|---|---|---|
| Year 1 | March 26, 1998 through March 25, 1999 | ████ |
| Year 2 | March 26, 1998 through March 25, 2000 | ████ |
| Year 3 | March 26, 1999 through March 25, 2001 | ████ |

**TRAVEL:** During the Term, when required to travel for WCW business, WCW shall provide Wrestler with First Class air transportation.

HOME BASE: Atlanta, GA

ADDRESS: ████████

_____     _____
WRESTLER                         WORLD CHAMPIONSHIP WRESTLING, INC.

13