# EXHIBIT 10

# WORLD CHAMPIONSHIP WRESTLING, INC.

## MERCHANDISING AGREEMENT

THIS MERCHANDISING AGREEMENT (the "Agreement") is made as of the 26th day of March, 1998, by and between **WORLD CHAMPIONSHIP WRESTLING, INC.**, a Georgia corporation ("WCW"), whose address is One CNN Center, Box 105366, Atlanta, Georgia  30348 and Marcus Bagwell, ███████████████████████████████████████

### RECITALS:

A.     WCW and Wrestler have entered into that certain Independent Contractor Agreement of even date herewith (the "Independent Contractor Agreement") pursuant to which Wrestler has agreed to perform certain services for WCW.

B.     The Independent Contractor Agreement contemplates and requires that WCW and Wrestler enter into this Agreement.

For and in consideration of the above premises and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.     **GRANT OF RIGHTS**

(a)     Wrestler grants WCW the exclusive (including to the exclusion of Wrestler), worldwide right and license, subject to Paragraph 6 below, to use and to license third parties to use, Wrestler's name, ring name, image, likeness, voice, logo, service marks, trademarks, trade names, signature, costumes, props, gimmicks, routines, themes, characters and caricatures and any and all of Wrestler's other distinctive and identifying indicia as used by or associated with Wrestler in the business of professional wrestling (all of the foregoing are collectively referred to as the "Intellectual Property"), in connection with the design, manufacture, printing, production, reproduction, publishing, sale, distribution and advertising of any materials, goods and/or services, and all other commercial exploitation of the Intellectual Property of any kind or nature and in any and all forms and media now known or hereafter devised, to be determined in WCW's sole discretion, (collectively the "Merchandise") whereby such activities are conducted (i) directly by WCW, its affiliated companies, and/or through its distribution agent (the "Merchandising Activities") and/or (ii) by a third party under a license from WCW (the "Licensing Activities"); (the

1

5.    **TERM**.

(a) The term of this Agreement shall commence on the date hereof, and shall be coterminous with the Independent Contractor Agreement.

(b) Notwithstanding anything herein to the contrary, the expiration, nonrenewal or termination of this Agreement shall not affect any agreement concerning any or all of the Intellectual Property, including, but not limited to, any agreements entered into during the term and in accordance with this Agreement granting a third party the right to use the Intellectual Property, even if the term of such agreement with such third party continues beyond the date of the expiration, nonrenewal or termination of this Agreement.

(c) Notwithstanding anything herein to the contrary, the expiration, nonrenewal or termination of any agreement between Wrestler and WCW (other than this Agreement and the Independent Contractor Agreement) shall not affect the term of this Agreement or any agreement concerning any or all of the rights in the Intellectual Property, including but not limited to, any agreements entered into during the term and in accordance with this Agreement granting a third party the right to use the Intellectual Property.

6.    **CONSIDERATION**.

(a) Subject to Section 6(c) of this Agreement, in consideration of the rights granted to WCW hereunder, WCW shall pay Wrestler five percent (5%) of all revenues actually received by WCW or any of its affiliated companies specifically derived from the use of the Intellectual Property in connection with Merchandising Activities, less any cost of goods sold, sales tax and vendor commissions (the "Merchandising Royalties"). With respect to any Merchandising Royalties derived from the use of the Intellectual Property together with the name, image, likeness or other proprietary indicia of one or more other wrestler or other persons, five percent (5%) of such Merchandising Royalties shall be placed into a pool (a "Merchandising Royalty Pool") and Wrestler shall receive a portion of such Merchandising Royalty Pool equal to the ratio of one (1) to the total number of wrestlers or other such persons whose names, images, likenesses or other proprietary indicia are used in connection with such Merchandising Activity. By way of example, but not of limitation, if any of Wrestler's Intellectual Property is used in any Merchandising Activity together with that of one other wrestler, Wrestler shall receive one-half (1/2) of the Merchandising Royalty Pool; if it is used with that of two other wrestlers, Wrestler shall receive one-third (1/3) of the Merchandising Royalty Pool.

(b) Subject to Section 6(c) of this Agreement, in consideration of the rights granted to WCW hereunder, WCW shall pay Wrestler thirty-three and one-third percent (33 1/3%) of all revenues actually received by WCW or any of its affiliated companies specifically derived from the use of the Intellectual Property in connection with Licensing Activities (the "Licensing Royalties"). With respect to any Licensing Royalties derived from the use of the Intellectual Property together with the name, image, likeness or other proprietary indicia of one or more other

3

wrestler or other persons, thirty-three and one-third percent (33 1/3%) of such Licensing Royalties shall be placed into a pool (a "Licensing Royalty Pool") and Wrestler shall receive a portion of such Licensing Royalty Pool equal to the ratio of one (1) to the total number of wrestlers or other such persons whose names, images, likenesses or other proprietary indicia are used in connection with such Licensing Activity. By way of example, but not of limitation, if any of Wrestler's Intellectual Property is used in any Licensing Activity together with that of one other wrestler, Wrestler shall receive one-half (1/2) of the Licensing Royalty Pool; if it is used with that of two other wrestlers, Wrestler shall receive one-third (1/3) of the Licensing Royalty Pool.

(c)     Notwithstanding anything herein to the contrary, Wrestler expressly acknowledges and agrees that in no event shall Wrestler receive or be entitled to any share of any revenues derived by WCW from the sale or other exploitation of any of the Intellectual Property in connection with (i) any wrestling magazine published and distributed by WCW (or its licensees), or (ii) the sale or licensing in any medium, market or form of videocassettes of any wrestling matches or other events sponsored by WCW, or (iii) any telephone call-in lines (such as 800, 900, 511, or 976), or (iv) any pay-per-view wrestling matches or events.

7.     **REPRESENTATIONS AND WARRANTIES**.  Wrestler represents, warrants and agrees that:

(a)     He/she is free to enter into this Agreement and to grant the rights and licenses herein granted to WCW (collectively, the "Granted Rights") and that WCW's use of the Intellectual Property in accordance with this Agreement will not violate or infringe upon any right of any third party;

(b)     He/she has not previously entered and shall not hereafter enter into any contract, agreement or arrangement that is in conflict with the provisions hereof or that would interfere with the full and complete performance by Wrestler of any of his/her obligations hereunder or the free and unimpaired exercise or enjoyment by WCW of any of the Granted Rights; and

(c)     There are no pending claims or litigation affecting Wrestler or any of the Intellectual Property which would or might interfere with the full and complete performance by Wrestler of any of his/her obligations hereunder or the full and complete exercise or enjoyment of WCW of any of the Granted Rights.

8.     **INDEMNIFICATION**.

(a)     Each party (the "Indemnifying Party") shall indemnify, defend and hold harmless the other party (the "Indemnitee") from and against all costs, damages, claims (threatened or actual) and expenses (including, without limitation, reasonable attorney's fees and allocable fees of in-house counsel) which may arise or derive in any way from the Indemnifying Party's breach of any of its duties, obligations, representations or warranties under this Agreement. The Indemnitee shall give the Indemnifying Party prompt written notice of any such claim or suit, and the

4

indemnifying Party shall have the right to control the defense thereof; provided, however, that without the consent of the Indemnitee, the Indemnifying Party shall not agree to any settlement of such claim or suit which would have more that a de minimus effect on the Indemnitee's business.

(b)  For purposes of this paragraph, "Indemnitee" shall include, with respect to WCW, the respective officers, directors and employees of WCW and its parent, subsidiaries and affiliates.

9.    **ACCOUNTING AND STATEMENTS.**

(a)  On or before the date forty-five (45) days after the end of each calendar quarter during which WCW is receiving Merchandising and/or Licensing Royalties hereunder, WCW shall send Wrestler statements showing gross Merchandising and/or Licensing Royalties actually received by Wrestler during such quarter.  Payments due to Wrestler hereunder shall accompany such statements.

(b)  WCW shall maintain at its main office, records covering all transactions relating to amounts payable under this Agreement.  WCW shall keep such records for at least two (2) years following WCW's receipt thereof, and such records shall be available for inspection by Wrestler or his/her designated representatives, once per year, and only once with respect to any particular records, during reasonable business hours and upon reasonable notice.  In the event any inconsistencies or mistakes are discovered in such statements or payments, such inconsistencies shall be promptly rectified and the appropriate payments made by WCW.

10.    **COOPERATION.**  Wrestler acknowledges that WCW's exploitation of the Granted Rights may require Wrestler's further cooperation, including but not limited to Wrestler's attendance at and participation in photo shoots, tapings, promotions advertising and other events and appointments.  Accordingly, Wrestler agrees to give WCW, upon WCW's reasonable request and at WCW's expense, Wrestler's full reasonable cooperation with respect to such activities.

11.    **MISCELLANEOUS.**

(a)  Nothing herein shall be deemed to obligate WCW to use the Intellectual Property in connection with any L&M Activities or otherwise.  This Agreement shall not be construed in any way to limit WCW's ability to enter into this type of arrangement with any other individual or entity.

(b)  This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and may not be changed or altered except by an agreement in writing signed by both parties.

(c)  WCW shall have the right to assign, license or transfer this Agreement and/or any or all of the rights granted to it hereunder or any or all of its obligations provided herein

to any entity or corporation and, if any such assignee shall assume in writing WCW's obligation hereunder, WCW thereafter shall have no further obligations to Wrestler.  Wrestler may not assign, transfer or delegate any of his/her rights or obligations hereunder.

(d)  Any notices to be given to a party hereunder shall be in writing and shall be delivered personally or sent postage prepaid by certified mail, return receipt requested to such party's respective address as first set forth above, or as such party may otherwise designate in accordance herewith.  The date of mailing or of personal delivery, as the case may be, shall be deemed to constitute the date of service of any such notice.

(e)  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Georgia.  The parties hereto agree that the state or federal courts located in Atlanta, Georgia shall have personal jurisdiction over them with respect to, and shall be the exclusive forum for the resolution of, any matter of controversy or dispute arising from or with respect to this Agreement.  Service of a summons and complaint concerning and any such matter of controversy or dispute may, in addition to any other lawful means, be effected by sending a copy of such summons and complaint by certified mail to the party to be served as specified above or at such other address as the party to be served shall have provided in writing to the other party from time to time in accordance herewith.

(f)  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

"WRESTLER"                                "WCW"

Signature: _____        By: _____
Printed Name: _____        Title: _____

6