# EXHIBIT 12



Via Federal Express

August 7, 2001

Buff Stuff, Inc.
c/o Marcus Bagwell
███████████████

Re:   Early Contract Release ("Release")

Dear Mr. Bagwell:

Reference is hereby made to that certain Loan Out Agreement and Booking Contract between Buff Stuff, Inc. f/s/o Marcus Bagwell ("Bagwell") and WCW, Inc. ("WCW") dated May 18, 2001 and any prior contracts, amendments or modifications thereto in full force and effect as of the date hereof (collectively, the "Contract"). In consideration of the mutual promises and covenants set forth below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Bagwell and WCW hereby agree as follows:

1.   At the mutual request of the parties, the Contract shall be and is hereby terminated and canceled effective as of the execution date of this letter (the "Termination Date").

2.   Bagwell acknowledges and agrees that WCW created and owns the "New Intellectual Property" as described in the Contract, including without limitation the Name and Likeness of the character "Buff Bagwell" and that all rights in and to the history, name, likeness and image of such character have belonged to, and forever belong to, WCW. Bagwell further acknowledges and agrees that WCW retains the exclusive right to retain and exploit in perpetuity history, for whatsoever purpose in any and all media and means of commerce, whether now or hereafter devised, the New Intellectual Property, including without limitation, the name and likeness of the character "Buff Bagwell". Bagwell acknowledges and agrees that he is forever precluded from using any names, likenesses, costumes, props, gimmicks, gestures, routines, themes, music, personalities, caricatures or anything else which refer or relate to, or which are confusingly similar to the character "Buff Bagwell". Bagwell shall also immediately return to WCW all gags, costumes or parts of costumes, accessories, crowns, inventions, championship, title or other belts (if applicable), and any other items of tangible property provided to Bagwell by WCW. For the avoidance of doubt, WCW may continue to exploit Bagwell's Original Intellectual Property beyond the Termination Date in previously recorded programming, home videos, music and the like. Notwithstanding the foregoing, WCW will return to you your "Buff Bagwell" hat and grants you a non-precedential, non-exclusive revocable license to portray the "Buff Bagwell" character for third party promoters.

3.   Bagwell hereby acknowledges and agrees that WCW has performed all of its obligations pursuant to the Contract and WCW hereby acknowledges that Bagwell has performed all of his obligations pursuant to the Contract, except as required hereunder.

4.   A.   In consideration of the representations and warranties set forth herein by WCW and for WCW's agreement to grant this Release, WCW shall pay Bagwell the total sum of ███████████████████████████████████████



Mr. Marcus Bagwell
August 7, 2001
Page 2

equal weekly installments beginning the week of July 16, 2001 and ending the week of October 15, 2001 as a full and complete buyout of Bagwell's services under the Contract, other than the obligation to pay Bagwell the royalties due him pursuant to, and as determined by, the Contract.

    B.    In addition to the foregoing, Bagwell represents and warrants as follows:

    (i)    Other than as may be required by applicable law, government order or regulations, or by order or decree of the Court, Bagwell hereby acknowledges and agrees that in further consideration of WCW's entering into this Release, Bagwell shall not, at any time during the Contract, or after the execution of the Release for any reason whatsoever, disclose to any person, organization, or publication, or utilize for the benefit or profit of Bagwell or any other person or organization, any sensitive or otherwise confidential business information, idea, proposal, secret, or any proprietary information obtained while with WCW and/or regarding WCW, its employees, independent contractors, agents, officers, directors, parents, subsidiaries, affiliates, divisions, representatives, or assigns. Included in the foregoing, by way of illustration only and not limitation, are such items as reports, business plans, sales information, cost or pricing information, lists of suppliers or customers, talent lists, story lines, scripts, story boards or ideas, routines, gags, costumes or parts of costumes, accessories, crowns, inventions, championship, title or other belts (if applicable) and any other tangible or intangible materials written, composed, submitted, added, improvised, or created by or for Bagwell in connection with appearances for WCW, information regarding any contractual relationships maintained by WCW and/or the terms thereof, and/or any and all information regarding wrestlers engaged by WCW.

    (ii)    Bagwell further acknowledges and agrees that his agreement to be bound by the terms hereof is a material condition of WCW's willingness to execute this Release. Other than as may be required by applicable law, government order or regulation, or by order or decree of the court, the parties agree that neither of them shall publicly divulge or announce, or in any manner disclose, to any third party, any of the specific terms and conditions of the Contract or this Release; and both parties warrant and covenant to each other that none of their officers, directors, employees or agents will do so either.

    (iii)    To that end, Bagwell further agrees that he shall not make any statement or comments (written or otherwise) that criticize, disparage, injure or harm the reputation of WCW and/or the World Wrestling Federation including, but not limited to any statements or comments regarding the Buff Bagwell character, the McMahon Family and/or any representative of WCW or World Wrestling Federation Entertaining, Inc. As such, the parties mutually agree that if and when asked about the terms of this Release or the reasons why Bagwell has left WCW, the parties will state essentially as follows:



5.    Effective as of the Termination Date, WCW hereby releases and discharges Bagwell from any and all further obligations pursuant to the Contract, except the provisions of this Release. Bagwell shall have no further obligations to render or perform any services of any



Mr. Marcus Bagwell
August 7, 2001
Page 3

nature whatsoever pursuant to the Contract after the Termination Date, and WCW shall have no right to cause Bagwell to provide any further services under the Contract thereafter.

6. Effective as of the Termination Date, Bagwell hereby releases and discharges WCW from any and all obligations pursuant to the Contract except as required hereunder. Bagwell acknowledges that except as expressly set forth herein, no representations of any kind or character have been made to Bagwell by WCW or by any of WCW's agents, representatives or attorneys to induce the execution of this Release. In order for Bagwell to induce WCW to sign this Release, Bagwell hereby releases WCW, its parent companies, affiliates, subsidiaries, successors, assigns, and its and their respective officers, directors, employees, independent contractors, licensees, representatives and agents from any and all claims, liabilities and obligations whatsoever in law or equity (whether now known or hereinafter discovered) which Bagwell has or may ever have arising out of or in connection with the Contract.

7. This Release shall be binding upon and inure to the benefit of Bagwell and WCW and their respective heirs, representatives, successors and assigns. This Release contains the entire understanding of the parties hereto and supersedes all prior oral and written communications and agreements with respect to the subject matter hereof.

8. This Release, its validity, construction and effect, shall be governed by and construed in accordance with the laws of the State of Connecticut applicable to contracts to be performed wholly therein, and shall not be modified or amended except by an instrument in writing signed by each of the parties hereto duly authorized to execute such modification or amendment. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other provision hereof.

9. Any claim, dispute, or other matter in question arising out of or relating to this Release shall be solely under the jurisdiction of the United States District Court located in Bridgeport, Connecticut and the Judicial District Court of Stamford located in Stamford, Connecticut. The parties agree that service of process by mail shall be effective service of same and such service shall have the same effect as personal service with the State of Connecticut and result in personal jurisdiction over the parties in the forum in the State of Connecticut. The parties' agreement to submit all claims, disputes or maters in question to the courts in the state of Connecticut shall be specifically enforceable, and each party consents to jurisdiction in Connecticut.

10. In the event a legal action or any other proceeding is commenced to enforce any provision of this Release or as a result of any breach, default, or dispute related to this Release, the successful or prevailing party shall be entitled, in addition to any other relief, to recover all costs of litigation, including expert fees and reasonable attorneys' fees incurred in such action or proceeding.

11. The parties further agree that because of the special and unique obligations of Bagwell under this Release, a breach by Bagwell of the provisions in this Release shall cause WCW and/or World Wrestling Federation irreparable injury which cannot be adequately measured by monetary relief. Consequently, without prejudice to or limitation of any other

Mr. Marcus Bagwell
August 7, 2001
Page 4

rights, remedies or damages which WCW is legally entitled to obtain, WCW shall be entitled to seek injunctive and other equitable relief against Bagwell to enforce the provisions of this Release.

Please confirm your acceptance of this Release as set forth above by signing in the space provided below on each of the enclosed two (2) copies and return them to me. One fully executed copy will be returned to you for your files. Thank you in advance for your prompt attention to this matter.

Very truly yours,

*Edward L. Kaufman/ks*

Edward L. Kaufman

ELK:ks

cc:   Jim Ross
      Rich Hering
      Benny Morales

AGREED AND ACCEPTED:

BUFF STUFF, INC.                          WCW, INC.
("Bagwell")                               ("WCW")


By: _____              By: _____
     Marcus Bagwell                            Edward L. Kaufman
                                               Vice President and Secretary


Date: _____              Date: _____