UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Marcus Bagwell** and **Scott Levy**, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:16-cv-01350-JCH |
| | ) | |
| **World Wrestling** | ) | |
| **Entertainment, Inc.; WCW, Inc.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**Amended Motion for Class Certification**

Plaintiffs file this Amended Motion for Class Certification to preserve the class action

issue, and reserve the right to amend this motion for future discovery in this matter.

Plaintiffs Marcus Bagwell and Scott Levy, on behalf of themselves and all similarly

situated individuals, move pursuant to Federal Rules of Civil Procedure Rule 23, to certify a

Class and Subclasses consisting of:

WWE NETWORK CLASS

All individuals to whom WWE or WCW-WWE are obligated to pay royalties to for
WWE's/ WCW-WWE's sales of "WWF or WCW Video Products" (as defined in
boilerplate booking contracts) featuring "WWF or WCW pay per views or WWF or
WWE non pay per views" (as defined in boilerplate booking contracts).

Excluded from the class are those who have signed a WWE "Nostalgia" or "Legends"
Contract, a Booking Contract with WWE from January 1, 2004 – prospectively (all
WWE contracts in this time period declare that no royalties will be paid for internet
subscriptions and video on demand fees), or a settlement agreement with WWE or

WCW-WWE, that releases any claims in law or equity against WWE, except for enforcement of any royalty obligations that may exist.

The included class is further defined by the following two Subclasses:

a)      WWE Controlled Performers

1) For the signing period of January 1, 1992 until January 1, 1999,

- All persons who signed a WWF Booking Contract when the definition of WWF Video Products was, "video programs."

2) For the signing period of January 1, 1999 until January 1, 2004

- All persons who signed a WWF, WWE, or WCW-WWE Booking Contract when the definition of WWE (or any other name WWE has used including World Wrestling Federation ("WWF") or WCW Video Products was, "video cassettes, videodiscs, CD ROM, or other technology, including technology not yet created."

ROYALTIES NOT PAID WITHIN 90 DAYS SUBCLASS

All individuals entitled to statements of royalties payed to them by WWE or WCW-WWE within 90 days following the end of each quarter and did not receive their statement of royalties within 90 days following the end of each quarter.

The Class and Subclasses members' claims are identical, varying only by which Subclass the particular individual's entitlement to royalties arises from.

**Nature of the Case**

Plaintiffs bring this action on behalf of themselves and all similarly situated individuals who have not received contractually owed royalty payments from World Wrestling Entertainment ("WWE") and WCW Inc. ("WCW-WWE") for certain video content that has been sold by WWE and WCW-WWE on the World Wrestling Entertainment Network ("WWE Network"), pursuant to the Plaintiffs' and Proposed class members' right under identical

provisions of Defendants' Booking Contracts (and further reinforced in Plaintiffs' Early Contract

Releases).

Plaintiff Levy

WWE Network Unpaid Royalties

On June 30, 2000, Plaintiff Levy signed as a professional wrestler with World Wrestling

Federation Entertainment, Inc. ("WWF"), subsequently changing its name to World Wrestling

Entertainment ("WWE").  On January 21, 2003, Plaintiff Levy signed an early Contract Release

with WWE, releasing all WWE obligations owed to Plaintiff Levy, except royalty payment

obligations (pursuant to Plaintiff Levy's June 30, 2000 Booking Contract).

Under Section 7.5(c)(i) of Plaintiff Levy's June 30, 2000 Booking Contract, WWE is

obligated to pay Royalties for Pay-Per-View Videos Sold by WWF (WWE) under the following

circumstances:

> WWF shall allocate 5% of the Net Receipts paid to WWF with respect to the
> direct sale by WWF of WWF Pay-Per-Views to a talent royalty pool.  Thereafter,
> WWF shall pro-rate payment to Plaintiff and all other talent appearing in such
> WWF Pay-Per-Views in the same proportion as was the compensation paid to
> Plaintiff for his appearances in the pay-per-views to the total amount paid to all
> talent for their appearances on the pay-per-views.

Under 7.5 (c)(ii) of Plaintiff Levy's Booking Contract, WWF is obligated to pay

Royalties for Pay-Per-View Videos Sold by WWF when:

> The WWF Video Product is a compilation or derivative work of multiple
> individual WWF Pay-Per-Views in their entirety, such as a collection of videos,
> e.g., a WrestleMania box set, payment to Plaintiff shall be calculated as follows:
> 5% of the Net Receipts paid to WWF shall comprise the talent royalty pool,
> which shall first be pro-rated based on the number of individual videos in the
> compilation, and then the payment to Plaintiff for each video shall be consistent
> with the royalty payment to the Plaintiff at the time each individual video was
> first released.

For 7.5 (c)(i) and (c)(ii) calculations, Net Receipts means the gross amount received by

WWF for the WWF Pay-Per-Views.

Under 7.5 (d) of Plaintiff Levy's Booking Contract, WWF is also obligated to pay

Plaintiff Royalties for Non Pay-Per-View Videos Sold by WWF under the following

circumstances:

> WWF shall allocate 5% of the Net Receipts paid to WWF with respect to the
> direct sale by Plaintiff of all other WWF Video Products other than those set forth
> in 7.5 (c)(i) and (c)(ii) above, to a talent royalty pool, from which WWF shall pay
> Plaintiff and all other talent appearing in such WWF Video Products pro-rata
> among Plaintiff and all other talent so featured.
>
> For 7.5 (d) calculations, Net Receipts means:
>
> The gross amount received by WWF for the WWF Video Products.
> Notwithstanding the foregoing, if Plaintiff is deemed to be the "featured
> performer" as determined by WWF in its sole discretion, Plaintiff shall receive a
> bonus of an additional 5% of WWF's Net Receipts up to the sale of the first
> 150,000 units.  Once sales exceed 150,000, Plaintiff as a featured performer shall
> receive 10% of WWF's Net Receipts on all units sold, including the first 150,000
> units.  If Plaintiff is part of a group that is determined to be the "featured
> performer," Plaintiff shall share pro-rata with each and every member of the
> group in any bonus monies that may be due in connection with such WWF Video
> Products.

The definition of WWF Video Products under Section 7.5 (a) is, "video cassettes,

videodiscs, CD ROM, or *other technology, including technology not yet created*," which

includes streaming videos on the World Wrestling Entertainment Network ("WWE Network")

because under Section 7.5 (a), streaming the WWE Network was "*other technology and/or*

*technology not yet created*" at the time Plaintiff Levy signed the June 30, 2000 Booking

Contract.

The definition of Non-Pay-Per-View Videos ("Non-PPVs") under Section 7.5 (b) and 7.5

(d) is, "all other WWF Video Products, other than WWF Pay-Per-Views in their entirety and a

compilation or derivative work of multiple individual WWF Pay-Per-Views in their entirety."

For several years, WWE has sold WWF Video Products (streaming videos on WWE Network) of Pay-Per-View Videos ("PPVs")/ Non-Pay-Per-View Videos ("Non-PPVs") without paying royalties to Plaintiff Levy.

Because streaming video content and videos on demand on the WWE Network was "*other technology and/or technology not yet created*" at the time Plaintiff signed the Booking Contract, streaming videos on the WWE Network is within the definition of WWF Video Products under Section 7.5 (a) of Plaintiff Levy's June 30, 2000 Booking Contract, "video cassettes, videodiscs, CD ROM, or *other technology, including technology not yet created*" (*emphasis added*)

WWE breached its Early Contract Release with Plaintiff by selling WWF Video Products (streaming videos on the WWE Network) of PPVs and Non-PPVs without paying any royalties to Plaintiff Levy pursuant to his June 30, 2000 Booking Contract.

WWE's Failure to Pay Royalties to Plaintiff Levy Within 90 Days Following the End of Quarter
Failure to Pay Plaintiff Levy Within 90 Days

89.     Under Section 7.12 (a) of Plaintiff Levy's Booking Contract:

*PROMOTER shall prepare and send statements as to royalties payable hereunder to WRESTLER within ninety (90) days following the end of each quarter*, based upon the royalties received and processed by PROMOTER in the previous quarter, together with payment of royalties, if any, earned by WRESTLER hereunder during such quarter-annual period, less advances and/or debits made by PROMOTER on WRESTLER's behalf.

34.     Plaintiff Levy's Second Quarter 2016 royalty statement evidences the nonpayment of royalties within 90 days dating back to Fourth Quarter 2015.  **EXHIBIT 8** (Plaintiff Levy's Second Quarter 2016 royalty statement).

34.     WWE has not paid WWE Network royalties to Plaintiff Levy in any quarter since the Network's inception in February 2014.

34.     Nonpayment of royalties within 90 days is a breach of Plaintiff Levy's Early

Contract Release and June 30, 2000 Booking Contract.

Plaintiff Bagwell

On June 4, 2001, Plaintiff Bagwell signed as a professional wrestler with WCW-WWE.

On August 7, 2001, Plaintiff Bagwell signed an early Contract Release with WCW-WWE,

releasing all WCW-WWE obligations owed to Plaintiff Bagwell, except royalty payment

obligations (pursuant to Plaintiff Bagwell's June 4, 2001 Booking Contract).

Under Section 7.5(c)(i) of Plaintiff Bagwell's June 4, 2001 Booking Contract, WCW-

WWE is obligated to pay Royalties for Pay-Per-View Videos Sold by WCW under the following

circumstances:

> WCW shall allocate 5% of the Net Receipts paid to WCW with respect to the
> direct sale by WCW of WCW Pay-Per-Views to a talent royalty pool.  Thereafter,
> WCW shall pro-rate payment to Plaintiff and all other talent appearing in such
> WCW Pay-Per-Views in the same proportion as was the compensation paid to
> Plaintiff for his appearances in the pay-per-views to the total amount paid to all
> talent for their appearances on the pay-per-views.

Under 7.5 (c)(ii) of Plaintiff's Booking Contract, WCW is obligated to pay Royalties for

Pay-Per-View Videos Sold by WCW when:

> The WCW Video Product is a compilation or derivative work of multiple
> individual WCW Pay-Per-Views in their entirety, such as a collection of videos,
> e.g., a WrestleMania box set, payment to Plaintiff shall be calculated as follows:
> 5% of the Net Receipts paid to WCW shall comprise the talent royalty pool,
> which shall first be pro-rated based on the number of individual videos in the
> compilation, and then the payment to Plaintiff for each video shall be consistent
> with the royalty payment to the Plaintiff at the time each individual video was
> first released.

For 7.5 (c)(i) and (c)(ii) calculations, Net Receipts means the gross amount received by

WCW for the WCW Pay-Per-Views.

Under 7.5 (d) of Plaintiff's Booking Contract, WCW is also obligated to pay Plaintiff

Royalties for Non Pay-Per-View Videos Sold by WCW under the following circumstances:

> WCW shall allocate 5% of the Net Receipts paid to WCW with respect to the
> direct sale by Plaintiff of all other WCW Video Products other than those set forth
> in 7.5 (c)(i) and (c)(ii) above, to a talent royalty pool, from which WCW shall pay
> Plaintiff and all other talent appearing in such WCW Video Products pro-rata
> among Plaintiff and all other talent so featured.

> For 7.5 (d) calculations, Net Receipts means:

> The gross amount received by WCW for the WCW Video Products.
> Notwithstanding the foregoing, if Plaintiff is deemed to be the "featured
> performer" as determined by WCW in its sole discretion, Plaintiff shall receive a
> bonus of an additional 5% of WCW's Net Receipts up to the sale of the first
> 150,000 units.  Once sales exceed 150,000, Plaintiff as a featured performer shall
> receive 10% of WCW's Net Receipts on all units sold, including the first 150,000
> units.  If Plaintiff is part of a group that is determined to be the "featured
> performer," Plaintiff shall share pro-rata with each and every member of the
> group in any bonus monies that may be due in connection with such WCW Video
> Products.

The definition of WCW Video Products under Section 7.5 (a) is, "video cassettes,

videodiscs, CD ROM, or *other technology, including technology not yet created*," which

includes streaming videos on the World Wrestling Entertainment Network ("WWE Network")

because under Section 7.5 (a), streaming the WWE Network was "*other technology and/or*

*technology not yet created*" at the time Plaintiff signed the June 4, 2001 Booking Contract.

The definition of Non-Pay-Per-View Videos ("Non-PPVs") under Section 7.5 (b) and 7.5

(d) is, "all other WCW Video Products, other than WCW Pay-Per-Views in their entirety and a

compilation or derivative work of multiple individual WCW Pay-Per-Views in their entirety."

For several years, WCW has sold WCW Video Products (streaming videos on WWE

Network) of Pay-Per-View Videos ("PPVs")/ Non-Pay-Per-View Videos ("Non-PPVs") without

paying royalties to Plaintiff.

Because streaming video content and videos on demand on the WWE Network was

"*other technology and/or technology not yet created*" at the time Plaintiff signed the Booking

Contract, streaming videos on the WWE Network is within the definition of WWE Video

Products under Section 7.5 (a) of Plaintiff's Booking Contract, "video cassettes, videodiscs, CD

ROM, or <u>other technology, including technology not yet created</u>" (*emphasis added*)

WWE breached its contract with Plaintiff by not paying royalties from the above mentioned sales

of WWE Video Products.

WWE breached its Early Contract Release with Plaintiff by selling WWE Video Products

(streaming videos on the WWE Network) of PPVs and Non-PPVs without paying any royalties

to Plaintiff pursuant to his June 4, 2001 Booking Contract.  Plaintiff assigned his intellectual

property rights in perpetuity to WCW (WWE) in exchange for royalty payments from the sales

of WCW Video Products of PPVs and Non-PPVs.

<u>Failure to Pay Plaintiff Bagwell Royalties Within 90 Days Following End of the Quarter</u>

89.     Under Section 7.12 (a) of Plaintiff Bagwell's Booking Contract:

> *PROMOTER shall prepare and send statements as to royalties payable hereunder to*
> *WRESTLER within ninety (90) days following the end of each quarter*, based upon
> the royalties received and processed by PROMOTER in the previous quarter,
> together with payment of royalties, if any, earned by WRESTLER hereunder during
> such quarter-annual period, less advances and/or debits made by PROMOTER on
> WRESTLER's behalf.

34.     Plaintiff Bagwell's First Quarter 2016 Royalty statement evidences the nonpayment

of royalties within 90 days dating back to the Third Quarter 2012.

34.     Third Quarter 2012 royalties were due to Plaintiff Bagwell 90 days following the

end of the Third Quarter 2012, not March 24, 2016.   (Even if the amount due is $0.01, payment is

due within 90 days following the end of the quarter).

8

23.     WWE also failed to pay royalties to Plaintiff Bagwell within 90 days for the

following quarters (list not exhaustive): Fourth Quarter 2012, First Quarter 2013, Second Quarter

2013, Fourth Quarter 2013, Second Quarter 2014, Second Quarter 2015, and Third Quarter 2015.

34.     WWE has not paid WWE Network royalties to Plaintiff Bagwell in any quarter

since the Network's inception in February 2014.

34.     WCW-WWE's nonpayment of royalties within 90 days is a breach of Plaintiff

Bagwell's Early Contract Release and June 4, 2001 Booking Contract, and appears to be a

widespread WWE pattern and practice.

**Class Certification Under Fed. R. Civ. P. Rule 23**

This case satisfies all of the Fed. R. Civ. P. Rule 23(a) prerequisites and is maintainable

under 23 (b)(3) for monetary recoveries.

**A.     Class Definition**

Rule 23(c)(B) requires a class definition.  Here, Plaintiff defines the class with two

subclasses:

WWE NETWORK CLASS

All individuals to whom WWE or WCW-WWE are obligated to pay royalties to for
WWE's/ WCW-WWE's sales of "WWF or WCW Video Products" (as defined in
boilerplate booking contracts) featuring "WWF or WCW pay per views or WWF or
WWE non pay per views" (as defined in boilerplate booking contracts).

Excluded from the class are those who have signed a WWE "Nostalgia" or "Legends"
Contract, a Booking Contract with WWE from January 1, 2004 – prospectively (all
WWE contracts in this time period declare that no royalties will be paid for internet
subscriptions and video on demand fees), or a settlement agreement with WWE or
WCW-WWE, that releases any claims in law or equity against WWE, except for
enforcement of any royalty obligations that may exist.

The included class is further defined by the following two Subclasses:

b)     WWE Controlled Performers

1) For the signing period of January 1, 1992 until January 1, 1999,

- All persons who signed a WWF Booking Contract when the definition of WWF Video Products was, "video programs."

2) For the signing period of January 1, 1999 until January 1, 2004

- All persons who signed a WWF, WWE, or WCW-WWE Booking Contract when the definition of WWE (or any other name WWE has used including World Wrestling Federation ("WWF") or WCW Video Products was, "video cassettes, videodiscs, CD ROM, or other technology, including technology not yet created."

ROYALTIES NOT PAID WITHIN 90 DAYS SUBCLASS

All individuals entitled to statements of royalties payed to them by WWE or WCW-WWE within 90 days following the end of each quarter and did not receive their statement of royalties within 90 days following the end of each quarter.

**B.      Rule 23(a)'s four prerequisites are met.**

The Court considers numerosity, commonality, typicality, and adequacy: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the class representatives are typical of the claims or defenses of the other class members, and (4) the class representatives are able to protect the interests of the class fairly and adequately.  Fed. R. Civ. P.  23(a).

After considering and satisfying Rule 23(a)'s prerequisites the Court must determine if the claim comes within one or more of Rule 23(b)'s three subsections.

Plaintiffs here seek a 23(b)(2) class which authorizes a class action to proceed where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, and as a 23(b)(3) category (identical monetary claims in differing

amounts), where class treatment is superior, no individual issues exist that would predominate

over class issues, and the claims are best managed by a class action.

### Rule 23 (a)(1) Numerosity

Numerosity is satisfied.  Under Rule 23(a)(1), a class is so numerous that joinder is

impracticable.

Each group numbers in the hundreds, so joinder of all members of each class or subclass

is impracticable.

### Rule 23 (a)(2) Common Questions.

Commonality is met. Under Rule 23(a)(2) there must be questions of law or fact that are

common to the class.

There are numerous questions of law and fact common to the Class, which common

questions predominate over any questions affecting only individual Class members, as to, *inter*

*alia*., issues of whether WWE breached its Booking Contract and Early Contract Release duties.

The Class members' uniform claim is that WWE and WCW Inc. breached their uniform

booking contracts and early release contracts by not paying royalties from WWE's sales of

"WCW" and "WWF" Video Products of "Pay-Per-Views and Non Pay-Per-Views."

As alleged at ¶*** (Bagwell) and ¶ ** (Levy)

> Under Section 7.5, members of the Class and Subclasses are entitled to royalties
> from WCW-WWE's sales of WCW Video Products (streaming video on WWE
> Network) containing Plaintiff in Pay-Per-Views and Non Pay-Per-Views.

Complaint, at Ex. 4, Plaintiff's Booking Contract.

As also alleged at ¶ 68 of the Complaint:

> WWE has not paid Plaintiff and members of the Class and Subclasses any
> royalties from WCW's sales of WCW Video Products (streaming video on WWE
> Network) of Pay-Per-Views and Non Pay-Per-Views.

Under Section 7.5, members of the Class and Subclasses are entitled to royalties from WWE's sales of WWF Video Products (streaming video on WWE Network) containing Plaintiff Levy in Pay-Per-Views and Non Pay-Per-Views.

Complaint, at Ex. 4, Plaintiff's Booking Contract.

As also alleged at ¶ 68 of the Complaint:

WWE has not paid Plaintiff and members of the Class and Subclasses any royalties from WCW's sales of WCW Video Products (streaming video on WWE Network) of Pay-Per-Views and Non Pay-Per-Views.

These are common and predominating issues of fact or law, raised by the First Amended Complaint as one Counts/or Causes of Action.

Count I, for Breach of Contract, per the Plaintiff's Booking Contract, the plaintiffs and class members have a contractual right to royalty payments from WWE's and WCW-WWE's sales of "WWE and WCW Video Products" of Pay-Per-Views and Non Pay-Per-Views.

**Rule 23 (a)(3) Typicality**

The named Plaintiffs' claims are typical of the Class and Subclasses.  Under the typicality requirement, Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).

Typicality is met here because the relief which Plaintiffs seek arises from the same event or practice or course of conduct that gives rise to the claims of other class members and their claims are based on the same legal theory.

Plaintiffs have typical claims because, to pursue their own self-interest in the litigation, they will advance the interests of the class members, which are aligned with the representatives.

Here the named representatives' claims have the same essential characteristics as the claims of the class and subclasses at large.  The plaintiffs' claims are identical to the

rest of the class, seeking the same type of relief—injunctive and monetary arising from WWE's and WCW-WWE's breach of contract.

**Rule 23 (a)(4) Adequacy of Representation.**

Adequacy of representation is also met. Rule 23(a)(4)'s adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. The adequacy test has two parts: first ascertaining that the interests of the representative party will not conflict with the interests of any of the class members; second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation.

Adequacy is fully satisfied in this case. Undersigned counsel Krislov and Led will fairly and adequately protect the interest of the classes. The class representative understands the nature of the claim, the purpose of the litigation, his role in it, and has no interests antagonistic to the class. Undersigned counsel is well experienced and capable of representing the class or classes, and has long acted as a certified class counsel.

Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiff and his counsel have no interests adverse to or which irreconcilably conflict with the interests of the Class and Subclasses.

Plaintiff seeks relief consistent with, and not antagonistic to, the interests of the other class members. The class representative has protected the class' interests because they, like the putative class members, seek injunctive and monetary relief that is to their common benefit.

C.      **Rule 23 (b) Categories.  The claims fit within the (b)(2) and (b)(3) categories.**

**Rule 23(b)(2) – Declaratory Relief**

13

The case fits into the Rule 23(b)(2) category. Certification under 23(b)(2) is proper because plaintiffs' demand is for declaratory relief of their rights under uniform contracts.  Here a declaration is "a permissible prelude to a claim for damages, that is, to monetary relief for a concrete harm already suffered."  Meriter, 702 F.3d at 369.

**Rule 23(b)(3) – Predominance, Manageability and Superiority.**

The Rule 23(b)(3) category for identical monetary claims in differing amounts is also met.  Here, class treatment is superior, no individual issues exist that would predominate over class issues, and the claims are best managed by a class action.

Common issues need only predominate, "not outnumber individual issues."  Here, the requirement is met that "the issues of liability are genuinely common issues" and so predominance is met.

A class action is an appropriate and superior method for fair and efficient adjudication of the controversy and substantial benefits will derive from proceeding as a class action.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would engender.

WHEREFORE, Plaintiff, individually and on behalf of the Class of all others similarly situated, respectfully pray that this Court (i) certify the Class herein pursuant to Rule 23:

Certify the case as a class action for WWE employees contractually entitled to royalty payments, with the two proposed subclasses:

WWE NETWORK CLASS

All individuals to whom WWE or WCW-WWE are obligated to pay royalties to for WWE's/ WCW-WWE's sales of "WWF or WCW Video Products" (as defined in boilerplate booking contracts) featuring "WWF or WCW pay per views or WWF or WWE non pay per views" (as defined in boilerplate booking contracts).

Excluded from the class are those who have signed a WWE "Nostalgia" or "Legends" Contract, a Booking Contract with WWE from January 1, 2004 – prospectively (all WWE contracts in this time period declare that no royalties will be paid for internet subscriptions and video on demand fees), or a settlement agreement with WWE or WCW-WWE, that releases any claims in law or equity against WWE, except for enforcement of any royalty obligations that may exist.

The included class is further defined by the following two Subclasses:

c)      <u>WWE Controlled Performers</u>

<u>1) For the signing period of January 1, 1992 until January 1, 1999,</u>

- All persons who signed a WWF Booking Contract when the definition of WWF Video Products was, "video programs."

<u>2) For the signing period of January 1, 1999 until January 1, 2004</u>

- All persons who signed a WWF, WWE, or WCW-WWE Booking Contract when the definition of WWE (or any other name WWE has used including World Wrestling Federation ("WWF") or WCW Video Products was, "video cassettes, videodiscs, CD ROM, or other technology, including technology not yet created."

<u>ROYALTIES NOT PAID WITHIN 90 DAYS SUBCLASS</u>

All individuals entitled to statements of royalties payed to them by WWE or WCW-WWE within 90 days following the end of each quarter and did not receive their statement of royalties within 90 days following the end of each quarter.

(ii) appoint Plaintiffs Class Representatives; (iii) appoint Krislov & Associates, Ltd. lead Class

Counsel; and (iv) any and all other relief the Court deems just and proper.

Respectfully submitted,


THE PLAINTIFFS
By /s/ Brenden P. Leydon
Brenden P. Leydon, Esq.
TOOHER WOCL & LEYDON, L.L.C.
80 Fourth Street
Dated: September 6, 2016          Stamford, CT 06905
Phone: (203) 324-6164
Fax: (203) 324-1407
Email: BLeydon@tooherwocol.com
Federal Bar No.: CT16026




Pro hac                    `     KRISLOV & ASSOCIATES, LTD.
Clinton A. Krislov (clint@krislovlaw.com)
Matthew T. Peterson (matthew@krislovlaw.com)
20 N. Wacker Dr.
Suite 1300
Chicago, Illinois   60606
Tel.:   (312) 606-0500
Fax.:   (312) 606-0207

*Counsel for Plaintiffs*


## CERTIFICATION OF SERVICE

I hereby certify that on September 7, 2016, a copy of the foregoing Amended Motion for Class Certification was filed electronically and served by mail on another unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


 /s/  Brenden P. Leydon
Brenden P. Leydon