# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : : : : : : : : : : : : | NO. 3:16-CV-01350-JCH |
| Plaintiffs, | | |
| vs. | | |
| WORLD WRESTLING ENTERTAINMENT, INC. and WCW, INC., | | |
| Defendants. | | NOVEMBER 7, 2016 |

## FORM 26(f) REPORT OF THE PARTIES' PLANNING MEETING

**Date Complaint Filed:** Plaintiff filed the original complaint on August 9, 2016. Plaintiffs filed a First Amended Complaint on November 7, 2016.

**Date Complaint Served:** Plaintiff served the original complaint on WWE's counsel on August 9, 2016 with a request that WWE waive formal service of the summons. On August 15, 2016, WWE's counsel executed and returned the waiver of service to Plaintiff's counsel. Plaintiffs served the First Amended Complaint on WWE's counsel by electronic filing on November 7, 2016. The First Amended Complaint names WCW, Inc. as an additional defendant. WCW, Inc. has not been served with any of the papers in this action.

**Date of Defendant's Appearance:** WWE appeared in this action through counsel on September 21, 2016. WCW, Inc. has not yet appeared.

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, conferences were held on October 27, 2016 and November 1, 2016. The participants in the conferences were Clinton A. Krislov, Matthew T. Peterson, and Brenden P. Leydon for Plaintiffs, and Jerry S. McDevitt, Curtis B. Krasik, and Jeffrey P. Mueller for WWE.

## I. CERTIFICATION

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. JURISDICTION

### A. Subject Matter Jurisdiction

Plaintiff's Position

This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which provides for the original jurisdiction of the Federal Courts for any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

Defendant's Position

The Court lacks subject matter jurisdiction over WCW, Inc. because it has ceased to exist as a legal entity and therefore lacks the capacity to be sued.

### B. Personal Jurisdiction

Personal jurisdiction is not contested as to WWE. WWE contends that the Court lacks personal jurisdiction over WCW, Inc. because it has ceased to exist as a legal entity and therefore lacks the capacity to be sued.

## III. BRIEF DESCRIPTION OF CASE

### A. Plaintiffs' Description of Plaintiffs' Claims

Plaintiffs' claims stem from unpaid royalty payments from World Wrestling Entertainment, Inc. ("WWE") and/or WCW, Inc. ("WCW-WWE") for certain content that has been sold or licensed by WWE or WCW-WWE on the World Wrestling Entertainment Network ("WWE Network") and for the nonpayment of all categories of royalties within 90 days following the end of the fiscal quarter. Plaintiffs seek equitable, declaratory, and compensatory damages for the losses suffered by Plaintiffs.

<u>Plaintiff Levy Unpaid WWE Network Royalties Claim</u>

<u>Direct Sales Royalties</u>

Section 7.5 of Plaintiff Levy's 2000 Booking Contract directs WWF to allocate 5% of the Net Receipts paid to WWF with respect to the direct sale by WWF of Pay-Per-Views or non-pay-per view videos (documentary, "best of" etc.) to a talent royalty pool. Net Receipts are defined as the gross amount received by WWF for the direct sales. Only direct sales of pay-per views and non-pay per views of WWF Video Products are entitled to royalties. Section 7.5(a)(1) defines WWF Video Products as "video cassettes, videodiscs, CD ROM, or other technology, including technology not yet created." WWE launched the WWE Network in February 2014, which directly sells subscriptions for $9.99 per month to consumers, enabling them to stream all prior pay-per-views and a rotating group of non-pay-per view videos. Directly selling a subscription to WWE video content (like a Netflix of WWE content) is either other technology (if WWE wants to assert streaming existed in year 2000), or technology not yet created (streaming not available to consumers in year 2000, YouTube did not launch until 2005). Plaintiff Levy appears in both pay-per views and non-pay per views on the WWE Network and

has not received a royalty payment from the direct streaming sales, grossing $159.4 million in 2015.

<u>Plaintiff Bagwell Unpaid WWE Network Royalties Claim</u>

Exact same claim as Plaintiff Levy above, except WWF is interchanged with WCW, Inc., a subsidiary of WWE (formerly known as WWF).

<u>Plaintiff Bagwell's and Plaintiff Levy's Unpaid Royalties Within 90 Days Claim</u>

Both Plaintiffs' Booking Contracts assert Under Section 7.12 , "PROMOTER shall prepare and send statements as to royalties payable hereunder to WRESTLER within ninety (90) days following the end of each quarter, based upon the royalties received and processed by PROMOTER in the previous quarter, together with payment of royalties, if any, earned by WRESTLER hereunder during such quarter-annual period, less advances and/or debits made by PROMOTER on WRESTLER's behalf."  Both Plaintiffs have received royalty payments later than 90 days following the end up a quarter, in some instances, years later.

**B.      Defendants' Description of Defendants' Defenses and Claims**

1.      WWE denies liability on any of the claims in the original complaint or amended complaint and contends that all such claims should be dismissed with prejudice.

2.      As a threshold legal matter, all of the claims asserted by Plaintiffs must be dismissed because the plain and unambiguous language of their contracts makes clear that they are not entitled to the royalty payments for WWE's use of its copyrighted works on the WWE Network.  Plaintiff Bagwell never had any contract with WWE, and never had any contract with any entity that entitled him to royalties for copyrighted works owned by WWE which are available to be viewed, not bought, on the WWE Network.  Plaintiff Levy did have contracts with WWE, but these contracts did not provide for royalties if WWE's copyrighted works were made available to be viewed, not bought, on the WWE Network.  In all contracts signed by

Bagwell and Levy with any wrestling organization, they uniformly agreed that all copyrights were owned by the promoter, not them. To the extent both claim entitlement to royalties because WWE makes available on the WWE Network copyrighted works purchased from World Championship Wrestling, Inc., neither Plaintiff had any contract with World Championship Wrestling, Inc. which entitled them to royalties; WWE did not assume such contracts in any event; and Plaintiffs' claims do, and are intended to, interfere with WWE's exclusive rights under copyright law.

3. Under the Booking Contracts at issue, Plaintiffs are only entitled to the payment of royalties when there is a "direct sale" of certain "Video Products" as defined in the contracts. First, the streaming of content to subscribers on the WWE Network is not a "direct sale" because subscribers can only view, not buy, any of the content on the WWE Network, and WWE does not transfer title or ownership of the content that subscribers can view on the WWE Network. Second, the streaming content on the WWE Network is not a "Video Product" because that phrase refers only to tangible products that consumers can directly buy to own for a specific price. Third, the contractual provisions regarding the calculation of royalty payments cannot logically apply in the context of a subscription service like the WWE Network in which subscribers pay a monthly fee to view a broad range of content rather than to purchase a particular video or pay-per-view program.

4. Because Plaintiffs are not entitled to royalties for content on the WWE Network, Count I for breach of contract — failure to pay royalties and Counts V and VI seeking declaratory relief must be dismissed.

5. Because all other non-contractual claims in the amended complaint derive from and are dependent upon the legally insufficient breach of contract claims, Count II (breach of

fiduciary duty), Count III (violation of CUTPA), Count VII (successor liability) and Count IX (unjust enrichment) are equally defective and must be dismissed.

6. Plaintiffs are not entitled to royalties for works created previously by World Championship Wrestling, Inc. for additional and independent reasons that WWE intends to explain in its motion to dismiss, including the fact that Plaintiffs' contracts provided for no such royalties and because of copyright preemption.

7. All of the non-contractual claims asserted by Plaintiffs also are substantively defective for additional and independent reasons that WWE intends to explain in its motion to dismiss, including the fact that these claims are preempted by the Copyright Act and that Plaintiffs have not pled the facts necessary to establish these claims.

8. All of the claims asserted against WCW, Inc. must be dismissed because it no longer exists as a legal entity and therefore lacks the capacity to be sued.

9. Plaintiffs breach of contract claim — failure to pay royalties within 90 days (Count VIII) must be dismissed because Plaintiff Bagwell is not owed any royalties from WWE and Plaintiff Levy failed to satisfy the conditions precedent for filing a claim seeking royalty payments under the terms of his Booking Contract or to exhaust remedies set forth in his contract prior to bringing such a claim.

### IV. STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. WWE is a Delaware corporation with its principal place of business at 1241 East Main Street, Stamford, Connecticut. (Am. Compl. ¶ 6.)

2. Plaintiff Bagwell entered into a Booking Contract with WCW, Inc. dated May 18, 2001. (Am. Compl. Ex. 13.)

3. Plaintiff Bagwell entered into an Independent Contractor Agreement with World Championship Wrestling, Inc. dated March 26, 1998. (Original Compl. Ex. 1.)

4. Plaintiff Bagwell entered into a Merchandising Agreement with World Championship Wrestling, Inc. dated March 26, 1998. (Am. Compl. Ex. 14.)

5. Plaintiff Levy entered into Independent Contractor Agreements with World Championship Wrestling, Inc. dated February 28, 1992 and June 10, 1997.

6. Plaintiff Levy entered into Merchandising Agreements with World Championship Wrestling, Inc. dated February 28, 1992 and June 10, 1997.

7. Plaintiff Levy entered into a Booking Contract with World Wrestling Federation Entertainment, Inc. dated June 30, 2000. (Am. Compl. Ex. 3.)

## V. CASE MANAGEMENT PLAN

### A. Standing Order on Scheduling in Civil Cases

The parties request a modification of the deadlines in the Standing Order on Scheduling in Civil Cases.

### B. Scheduling Conference with the Court

The parties request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

### C. Early Settlement Conference

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2. The parties do not request an early settlement conference.

3. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

**D.** **Joinder of Parties and Amendment of Pleadings**

Plaintiffs shall be permitted until November 7, 2016 to file their amended complaint. The parties consent to the following briefing schedule for WWE's motion to dismiss the First Amended Complaint:

1. WWE will file its motion to dismiss by December 2, 2016.

2. Plaintiffs will file their opposition to the motion by January 9, 2017.

3. WWE will file its reply in support of the motion by January 27, 2017.

No further amendments to the complaint shall be permitted absent a court order.

**E.** **Discovery**

1. In light of WWE's assertion that its motion to dismiss will raise threshold legal questions concerning the interpretation of the relevant contracts that are dispositive of all of the claims in the case, Plaintiffs are amenable to a stay of discovery pending the resolution of that motion, to conserve the resources of both the parties and the Court. The relevant case deadlines and nature of the discovery required will necessarily depend on the scope of the claims, if any, that remain following the Court's ruling on the motion to dismiss. After the Court's ruling, the parties agree to confer and prepare a realistic case management and discovery plan for submission to the Court in view of any claims that may remain in the case at that time.

2. If discovery proceeds, and depending on which (if any) of Plaintiffs' claims survives, Plaintiffs anticipate that discovery may be needed on, among other things, the following subjects:

   A. **WWE Network Unpaid Royalty Claims**

i. All individuals who are parties to one or more of the following contracts with WWE or its predecessors in interest:

1) WWF Booking Contract from signing period of January 1, 1993 through December 31, 1993;

2) WWF Booking Contract from the signing period of January 1, 1999 through January 1, 2004;

3) WCW-WWE Booking Contract from the signing period of March 24, 2001 through January 1, 2004.

ii. Identify who out of the above mentioned groups has actually appeared on the WWE Network from February 24, 2014 through the present:

1) List of all pay per views and non pay-per views (as defined by respective booking contracts) that each performer has appeared on. From this list, which pay per views and non-pay-per views has appeared on the WWE Network, and the specific dates it appeared on the WWE Network (date first appeared and/or reappeared through date taken off, if it has been taken off)

Excluded from discovery are those who:

1) signed a WWE "Nostalgia" or "Legends" Contract,

2) a Booking Contract with WWE from January 1, 2004 – prospectively (all WWE contracts in this time period declare that no royalties will be paid for internet subscriptions and video on demand fees), or

3) a settlement agreement with WWE or WCW-WWE, that releases any claims in law or equity against WWE, and not reserving rights to royalty payments

B. <u>Royalties Unpaid Within 90 Days Following End Of Fiscal Quarter Claim</u>

(a) To determine what the WWE's policy of sending royalty payment checks is? Plaintiffs' counsel discovered that WWE does not send a royalty check until the balance reaches $50, regardless of how many fiscal quarters it takes to reach that amount.

(b) a list of all individuals whose respective booking contract explicitly requires the payments of royalties earned within 90 days following end of the fiscal quarter.

(c) From (b)'s list, a list of all individuals who have earned royalties in a fiscal quarter who did not receive payment within 90 following the end of quarter. (for example Q1 royalties earned are due 90 days following end of quarter, Q2, Q3, and Q4 the same). From information and belief, we understand that WWE currently combines quarters until balance reaches $50, and then issues a check. Plaintiffs' counsel has proposed resolving this issue (considering its size and simplicity, by just issue checks for all balances quarterly).

If discovery proceeds, and depending on which (if any) of Plaintiffs' claims survives, WWE anticipates that discovery may be needed on, among other things:

a. Communications between Plaintiffs' counsel and former-performers soliciting/requesting their participation in this case.

b. Contracts and agreements that Plaintiffs entered into with WWE, WCW, Inc., and World Championship Wrestling, Inc.

c. Communications between Plaintiffs and WWE, WCW, Inc., or World Championship Wrestling, Inc. regarding their contracts and royalty payments.

d. Any royalty statements or other documents concerning payment of royalties to Plaintiffs from WWE, WCW, Inc., or World Championship Wrestling, Inc.

e. Communications between Plaintiffs and third parties regarding the payment of royalties from WWE, WCW, Inc., or World Championship Wrestling, Inc.

f. Contracts or agreements entered into between Plaintiffs and their counsel.

g. Whether Plaintiffs can satisfy the requirements of class certification.

3. Undersigned counsel have discussed the disclosure and preservation of electronically stored information, including but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agree to abide by their general obligations under the Federal Rules of Civil Procedure and common law to preserve documents and information.

4. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties will follow the procedures set forth in Paragraph 18 of the Standing Protective Order in this case.

### F. Dispositive Motions

Dispositive motions may be filed at any time and not later than 60 days after the close of all discovery.

### G. Joint Trial Memorandum

The Joint Trial Memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 60 days after the later of the expiration of the deadline for filing dispositive motions or the Court's ruling on any dispositive motions that are filed.

## VI. TRIAL READINESS

Counsel expect that this case will be ready for trial 60 days after the later of the expiration of the deadline for filing dispositive motions or the Court's ruling on any dispositive motions that are filed.

As officers of the Court, the undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

| PLAINTIFFS MARCUS BAGWELL and SCOTT LEVY, | DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC., |
|---|---|
| By: */s/ Brenden Leydon*<br>Brenden P. Leydon, Esq.<br>TOOHER WOCL & LEYDON, LLC<br>80 Fourth Street<br>Stamford, CT 06905<br>bleydon@tooherwocl.com<br><br>Clinton A. Krislov, Esq.<br>Matthew T. Peterson, Esq<br>KRISLOV & ASSOCIATES, LTD.<br>20 N. Wacker Drive<br>Suite 1300<br>Chicago, IL 60606<br>Clint@krislovlaw.com<br>Matthew@krislovlaw.com | By: */s/ Jerry S. McDevitt*<br>Jerry S. McDevitt (*pro hac vice*)<br>Curtis B. Krasik (*pro hac vice*)<br>K&L GATES LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222<br>Phone: (412) 355-6500<br>Fax: (412) 355-6501<br>Email: jerry.mcdevitt@klgates.com<br>Email: curtis.krasik@klgates.com<br><br>Jonathan B. Tropp (ct11295)<br>Jeffrey P. Mueller (ct27870)<br>DAY PITNEY LLP<br>242 Trumbull Street<br>Hartford, CT 06103<br>Phone: (860) 275-0100<br>Fax: (860) 275-0343<br>Email: jbtropp@daypitney.com<br>Email: jmueller@daypitney.com |

## CERTIFICATION OF SERVICE

I hereby certify that on November 7, 2016 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                    */s/ Jeffrey P. Mueller*
                                    Jeffrey P. Mueller (ct27870)