# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : : : : | NO. 3:16-CV-01350-JCH |
| Plaintiffs, | : : | |
| vs. | : : | |
| WORLD WRESTLING ENTERTAINMENT, INC. and WCW, INC., | : : : | |
| Defendants. | : | JANUARY 23, 2017 |

## DEFENDANT WWE'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

| | |
|---|---|
| Jonathan B. Tropp (ct11295) | Jerry S. McDevitt (pro hac vice) |
| Jeffrey P. Mueller (ct27870) | Curtis B. Krasik (pro hac vice) |
| DAY PITNEY LLP | K&L GATES LLP |
| 242 Trumbull Street | K&L Gates Center |
| Hartford, CT 06103 | 210 Sixth Avenue |
| Phone: (860) 275-0100 | Pittsburgh, PA 15222 |
| Fax: (860) 275-0343 | Telephone: (412) 355-6500 |
| Email: jbtropp@daypitney.com | Facsimile: (412) 355-6501 |
| Email: jmueller@daypitney.com | Email: jerry.mcdevitt@klgates.com |
| | Email: curtis.krasik@klgates.com |

*Counsel for Defendant World Wrestling Entertainment, Inc.*

# **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| A. | Plaintiffs' Breach of Contract Claim For Royalties on the WWE Network Fails Under the Plain Language of the Booking Contracts | 1 |
| | 1. Bagwell Admits that He Never Had a Royalty-Bearing Contract with Anyone | 1 |
| | 2. Plaintiffs' Opposition Proves that Streaming on the WWE Network Does Not Constitute a "Direct Sale" under their Booking Contracts | 1 |
| | 3. Plaintiffs Do Not Dispute WWE's Argument that Content Streamed on the WWE Network Is Not a "Video Product" | 3 |
| | 4. Plaintiffs Mischaracterize WWE's Argument that Plaintiffs' Construction of the Royalty Provisions Would Lead to an Absurd Result | 5 |
| | 5. Plaintiffs Are Attempting to Use the Merger Doctrine to Create an Entitlement to Royalties on WCWI Video Works that Never Existed | 5 |
| B. | Plaintiffs' Breach of Contract Claims for Untimely Paying Royalties and Denying Bagwell's Request to Audit WWE's Books and Records Fail | 6 |
| C. | Plaintiffs' Breach of Fiduciary Duty Claim Fails | 7 |
| D. | Plaintiffs' CUTPA Claim Fails | 8 |
| E. | Plaintiffs' Unjust Enrichment Claim Fails | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*19 Recordings Ltd v. Sony Music Entm't*, No. 14-CV-1056(RA),
 2016 WL 5408167 (S.D.N.Y. Sept. 28, 2016) ................................................................. 1, 2

*Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224 (E.D.N.Y. 2007) ............................. 7

*Baiul v. NBC Sports*, No. 15-cv-9920 (KBF), 2016 WL 1587250
 (S.D.N.Y. Apr. 19, 2016) ..................................................................................................... 10

*Biro v. Matz*, 132 Conn. App. 272, 33 A. 3d 742 (2011) ................................................................ 5

*Cap Maint. Solutions, LLC v. Wallingford Autopark, Inc.*,
 No. CV166060392S, 2016 WL 5798834 (Conn. Super. Ct. Sept. 6, 2016) ...................... 8, 9

*Cooper v. Sony Records Int'l*, No. 00 CIV. 233 (RMB), 2001 WL 1223492
 (S.D.N.Y. Oct. 15, 2001) ................................................................................................... 7-8

*F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010) ....................................... 2

*Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632
 (S.D.N.Y. Mar. 1, 2012) ........................................................................................................ 1

*Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498 (D. Conn. 2015) ............................ 9

*Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176 (E.D.N.Y. 2010) ........................................... 1

*In re OnStar Contract Litigation*, No. 2:07-MDL-01867, 2010 WL 3516691
 (E.D. Mich. Aug. 25, 2010) ............................................................................................. 9-10

*In re Trilegiant Corp.*, 11 F. Supp. 3d 82 (D. Conn. 2014) ............................................................. 9

*Infinite Machs., LLC v. Hasbro, Inc.*, No. 3:07cv675(PCD), 2009 WL 2253212
 (D. Conn. July 27, 2009) ....................................................................................................... 7

*Levy v. World Wrestling Entm't, Inc.*, No. 3:08-cv-01289 (PCD),
 2009 WL 455258 (D. Conn. Feb. 23, 2009) ....................................................................... 10

*Lydall v. Ruschmeyer*, 282 Conn. 209, 919 A.2d 421 (2007) ........................................................ 8

*Mankert v. Elmatco Prods., Inc.*, 84 Conn. App. 456, 854 A.2d 766 (2004) ................................. 8

*McBurney v. Young*, 133 S. Ct. 1709 (2013) ................................................................................. 9

*McClain v. Pfizer, Inc.*, No. 3:06-cv-1795 (VLB), 2008 WL 681481
(D. Conn. Mar. 7, 2008)..................................................................................................1

*Nagel v. Smith & Nephew, Inc.*, No. 3:15-cv-00927 (JAM), 2016 WL 4098715
(D. Conn. July 28, 2016)................................................................................................10

*Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274 (2d Cir. 2006)..............................10

*Shady Grove Orthopedic Associates v. Allstate Insurance Company*, 559 U.S. 393
(2010)...............................................................................................................................9

*Sony Music Entm't, Inc. v. Robison*, No. 01 CIV. 6415(LMM), 2002 WL 272406
(S.D.N.Y. Feb. 26, 2002) ................................................................................................7

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014) ................................10

**Other Authorities**

Fed R. Civ. P. 23................................................................................................................9

A.  **Plaintiffs' Breach of Contract Claim For Royalties on the WWE Network Fails Under the Plain Language of the Booking Contracts[1]**

   1.  **Bagwell Admits that He Never Had a Royalty-Bearing Contract with Anyone**

Plaintiffs' Opposition ignores Bagwell's admissions in the FAC that he never had a royalty-bearing contract with anyone. Specifically, he admits that: (a) under his contracts with WCWI he expressly was not entitled to royalties on WCWI's exploitation of works in which he appeared (*see* FAC, Ex. 14 ¶ 6(c)); (b) neither of his two performances for WCW, Inc. "was entitled to royalty payment" under his WCW, Inc. Booking Contract (FAC ¶ 32(iii)(a)); and (c) he had no contract with any "WWE affiliation other than the [WCW, Inc.] Booking Contract" (*id.*). Bagwell therefore pleads himself out of court on his breach of contract claim for royalties.

   2.  **Plaintiffs' Opposition Proves that Streaming on the WWE Network Does Not Constitute a "Direct Sale" under their Booking Contracts**

As noted in WWE's Opening Brief, Plaintiffs admit that "[o]nly direct sales of pay-per-views and non-pay-per-views of [WWF/WCW] Video Products are entitled to royalties." Opening Brief at 10. In their Opposition, Plaintiffs now concede that "Plaintiffs' Booking Contracts *unambiguously* state WWE's royalty payment obligations." Opposition at 9 (emphasis added).[2] Plaintiffs further concede that a court may dismiss a breach of contract claim

---

[1] Plaintiffs do not dispute that their duplicative declaratory judgment counts must be dismissed because (a) a declaratory judgment is a remedy and not a cause of action, and (b) a request for declaratory relief should be dismissed where the plaintiff has alleged overlapping substantive causes of action. *See* WWE's Memorandum of Law in Support of its Motion to Dismiss (the "Opening Brief") at 30. Plaintiffs have conceded the validity of these arguments by their failure to respond to them in their Opposition. *See Felske v. Hirschmann*, No. 10 Civ. 8899(RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."); *Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) ("Plaintiffs have not responded to this argument, and the court therefore deems the matter to be conceded."); *McClain v. Pfizer, Inc.*, No. 3:06-cv-1795(VLB), 2008 WL 681481, at *5 (D. Conn. Mar. 7, 2008) (plaintiff conceded defendant's argument by not responding to it in her opposition to the motion). More broadly, Plaintiffs do not dispute, or even respond to, numerous arguments of WWE's Opening Brief, all of which are conceded as a matter of law. Due to space limitations, WWE is unable to identify each such conceded argument in this Reply.

[2] Despite this concession that the royalty obligations are unambiguous and thus may be interpreted by the Court as a matter of law, Plaintiffs inconsistently cite *19 Recordings Ltd v. Sony Music Entm't*, No. 14-CV-1056(RA), 2016 WL 5408167, at *4 (S.D.N.Y. Sept. 28, 2016) for the proposition "that the question of whether streaming is a sale or

where, as here, the terms of the contract are unambiguous. *See id.* at 8. Given these concessions, Plaintiffs do not and cannot dispute that it is a pure question of law for the Court to decide whether streaming video is a "direct sale" within the meaning of the Booking Contracts.

Although Plaintiffs purportedly dispute the definition of a "sale" asserted in WWE's Opening Brief, Plaintiffs do not challenge, or even address, the authorities cited by WWE uniformly holding that under Connecticut law "[t]he plain meaning of the word 'sale' indicates that a 'sale' involves the transfer of ownership of and title to property from one person to another." Opening Brief at 14-15. Plaintiffs also do not and cannot deny that "sale" in the context of copyrighted works has similarly been interpreted to mean either "a transfer in title of an individual copy of a work, or a sale of all exclusive intellectual property rights in a work." *Id.* at 15 (quoting *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964-65 (9th Cir. 2010)). Indeed, despite claiming that WWE "misportray[ed]" the Ninth Circuit's analysis of the definition of "sale" in *F.B.T* in some unspecified way, Plaintiffs concede that the Ninth Circuit relied on this definition as "secondary persuasive support" for its holding. *See* Opposition at 12.

Plaintiffs' Opposition actually proves WWE's point that streaming on the WWE Network does not constitute a direct sale. Plaintiffs assert, citing Black's Law Dictionary, that a "sale" is "[t]he transfer of property or title for a price." *Id.* at 9. Plaintiffs then assert that a "transfer" is "a conveyance of right, title, *or interest* in real or personal property." *Id.* (emphasis in original).[3] By Plaintiffs' admission, therefore, a sale requires a "conveyance" of right, title or interest. Plaintiffs claim that a subscription to the WWE Network "involves a buyer paying WWE $9.99

---

not is a question of fact for the trier of fact." Opposition at 9. Plaintiffs, however, fundamentally mischaracterize that case's holding. It merely found that the contract provision at issue "as applied" to other third party contracts was "amenable to more than one reasonable interpretation." *19 Recordings*, 2016 WL 5408167, at *4.

[3] Although Plaintiffs cite to Black's, this quote is from Merriam-Webster's Collegiate Dictionary (11th Ed. 2012).

2

per month in consideration for WWE's conveyance of a special, limited interest or right in the PPV and Non PPVs sold on the WWE Network." *Id.* at 10. In addition to Plaintiffs' creation of a legal fiction ("special, limited interest or right") that does not exist under copyright law, it is indisputable that WWE does not **convey** any rights in its copyrighted works to a subscriber of the WWE Network. As described in WWE's Opening Brief, subscribers merely can view, but not download or buy to own, the content made available on the WWE Network. *See* Opening Brief at 8. Watching the WWE Network is no different than watching television delivered by cable or satellite or another internet-based network like Netflix. To be sure, a subscriber to Time Warner cable or DirecTV or Netflix — like the WWE Network — does not acquire any interest in the copyrighted works the subscriber chooses to watch.

### 3. Plaintiffs Do Not Dispute WWE's Argument that Content Streamed on the WWE Network Is Not a "Video Product"

Plaintiffs do not dispute that (a) the three specific "Video Products" enumerated in Paragraph 7.5 of the Booking Contracts are all physical products containing specific content that consumers can buy to own, or (b) Connecticut law has adopted the rule of construction of *ejusdem generis*, which holds that "where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." Opening Brief at 18 (citation omitted). Plaintiffs also do not dispute the authority cited in WWE's Opening Brief specifically finding that the term "video" with other words such as videocassette or videotape indicates the "use[ ] of **recorded** visual content" that requires storage in a tangible form. *Id.* at 19 (citation omitted) (emphasis added). Legally, Plaintiffs do not and cannot dispute the well-established distinction under copyright law between the sale of a video product and the non-sale distribution of copyrighted material — the first-sale doctrine applies to the former, under which a

3

copyright owner who transfers ownership of a physical medium embodying a copyrighted work loses control over further distribution of that medium, but does not apply to the latter.

Unable to dispute the bases for WWE's argument, Plaintiffs' only response is that the phrase "other technology, including technology not yet created" supposedly was intended to capture future technological developments. *See* Opposition at 13-14. This response fails for two reasons. **First**, it misconstrues WWE's argument. WWE is not arguing that the definition of "Video Products" should be limited to existing technology in 2000 or 2001; rather, the definition is limited to items of the same ilk as those expressly listed. For example, as explained in WWE's Opening Brief, "Video Products" would include a Blu-Ray disc which was not available when Plaintiffs entered into their Booking Contracts but like video cassettes or videodiscs is a physical product that can be bought to own for a specific price per unit. *See* Opening Brief at 19.[4]

**Second**, Plaintiffs are incorrect that transmission over the internet was some unknown or unanticipated technology at the time they entered into their Booking Contracts. Multiple other provisions of the Booking Contracts expressly refer to the internet among the listed media or methods of distribution. *See, e.g.,* FAC, Exs. 3 & 13 at ¶ 7.7 (no additional compensation for wrestler's performance as a commentator from "commercial exploitation of such commentary in any form, whether broadcast programming, cable programming, pay-per-view programming, videotapes, videodiscs, the Internet or other mediums now or hereinafter discovered"); ¶ 9.7 (agreement to appear in publicity to promote scheduled Events "any or all of which may be . . . used in any manner or media and by any art, method, or device now known or hereafter created,

---

[4] Plaintiffs also assert that Paragraphs 8.2(a)&(b) — incorrectly cited as 8.2(b)&(c) — of the Booking Contracts supposedly "prohibit WWE from setting up a distribution system (streaming WWE Network) designed to forego any royalty payments to performers." Opposition at 6. Those paragraphs say no such thing. In fact, Plaintiffs' assertion is contrary to at least ten provisions in the Booking Contracts recognizing WWE's exclusive rights in its copyrighted works, including the right to exhibit and distribute its works in any manner and by any method now known or hereafter discovered. *See* FAC, Exs. 3 & 13 ¶¶ 2.2, 2.3, 2.4, 2.5, 3.2, 3.3, 3.5, 4.1, 6.2, 11.3.

4

including without limitation, by means of videodisc, video cassette, . . . and Internet"). The parties, therefore, could have included "internet" in Paragraph 7.5 had that been their intent. When parties include terms in one part of the contract and not the other, the Court can determine as a matter of law that the difference in language was done deliberately. *See Biro v. Matz*, 132 Conn. App. 272, 282 (2011) (applying principle of *expressio unius est exclusio alterius*).

### 4. Plaintiffs Mischaracterize WWE's Argument that Plaintiffs' Construction of the Royalty Provisions Would Lead to an Absurd Result

Plaintiffs mischaracterize WWE's argument that Plaintiffs' construction of the royalty provisions renders other relevant provisions of the Booking Contracts impossible to apply as a mere difficulty in calculating damages. WWE argued that the impossibility of, and absurd results from, applying Plaintiffs' construction of the royalty provisions demonstrates its implausibility. *See* Opening Brief at 20-22. Unable to dispute these points, Plaintiffs try to avoid the issue by mischaracterizing it as one of damages when it clearly is not.

### 5. Plaintiffs Are Attempting to Use the Merger Doctrine to Create an Entitlement to Royalties on WCWI Video Works that Never Existed

Plaintiffs do not even attempt to respond to WWE's two separate and independent grounds for dismissing Plaintiffs' allegations that they are somehow entitled to royalties on WCWI video works under the "merger doctrine." **First**, Plaintiffs admit in the FAC that merger clauses only apply to contracts between the same parties (FAC ¶ 39), and do not dispute in their Opposition that Bagwell's contract with WCWI and subsequent Booking Contract with WCW, Inc. and Levy's contract with WCWI and subsequent Booking Contract with WWE were not contracts between the same parties. Thus, the merger doctrine cannot apply as a matter of law.

**Second**, Plaintiffs do not dispute that (a) they were not entitled to royalties on WCWI video works under their WCWI contracts, and (b) their WCW, Inc./WWE Booking Contracts

5

nowhere mention, much less provide for the payment of, royalties on works created by others like WCWI. Despite the lack of any contract with anyone entitling them to royalties on WCWI video works, through "legal alchemy," Plaintiffs add one contract that does not pay them royalties to another contract that does not pay them royalties to concoct a royalty obligation. Such sophistry is not warranted under the merger doctrine or otherwise.[5]

B.  **Plaintiffs' Breach of Contract Claims for Untimely Paying Royalties and Denying Bagwell's Request to Audit WWE's Books and Records Fail**

With regard to Bagwell, Plaintiffs admit that he was not entitled to any royalties from WCW, Inc. and that he never had a contract with WWE. *See* FAC ¶ 32(iii)(a). Having admitted that Bagwell lacked any basis to be paid royalties by WWE or to audit WWE, Plaintiffs merely point to the fact that WWE erroneously paid Bagwell royalties on certain WWE video works. Yet Plaintiffs readily concede that the royalties paid to Bagwell contained multiple errors, so much so that "[t]he severity of these accounting mistakes lead[ ] Bagwell to question the legitimacy of WWE's royalty accounting practices." Opposition at 20 n.12. Such admitted errors do not modify the royalty provisions of Bagwell's WCW, Inc. Booking Contract and consequently cannot grant Bagwell rights that otherwise did not exist.

As for Levy, Plaintiffs do not dispute that he never satisfied the conditions precedent for filing a claim for royalties, nor exhausted the remedies, provided in his WWE Booking Contract. Plaintiffs' only response is that Levy somehow was not required to comply with such contractual obligations because **Bagwell's** audit request was previously denied — even though, unlike

---

[5] Plaintiffs' non-entitlement to royalties on WCWI video works under their WCWI contracts is fatal to their successor liability claim as well. Plaintiffs do not dispute that they must plead that WCWI, the alleged predecessor corporation is liable to them in order to claim that WWE is liable as its successor. *See* Opening Brief at 26-27. Because Plaintiffs admit that WCWI did not owe them royalties on WCWI video works, WWE cannot be liable as WCWI's successor. Plaintiffs also do not dispute that they fail to plead any exception to the general rule of successor non-liability or that WCWI continued to exist after the transaction with WCW, Inc. *Id.* at 28-29.

Bagwell, Levy had a Booking Contract with WWE — which is a legal *non sequitur*.[6]

## C. Plaintiffs' Breach of Fiduciary Duty Claim Fails

Plaintiffs do not deny that if their breach of contract claim for royalties on the WWE Network fails, their breach of fiduciary duty claim likewise fails. *See Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007) (granting motion to dismiss duplicative breach of fiduciary duty claim based on failing to pay royalties and provide accurate reports). Plaintiffs also do not dispute that, in general, an arms-length business relationship like the Booking Contracts — indeed, Bagwell was represented by counsel in the negotiation of his contract — does **not** give rise to fiduciary duties as a matter of law and, in particular, a contractual royalty obligation does **not** give rise to fiduciary duties. *See* Opening Brief at 30-31; *see also Infinite Machs., LLC v. Hasbro, Inc.*, No. 3:07cv675(PCD), 2009 WL 2253212, at *14 (D. Conn. July 27, 2009) ("[T]he fact that Plaintiffs stood to earn royalties under the Agreement does not create a fiduciary duty to Plaintiffs by Defendant."); *Sony Music Entm't, Inc. v. Robison*, No. 01 CIV. 6415(LMM), 2002 WL 272406, at *3 (S.D.N.Y. Feb. 26, 2002) ("The fact that Sony is responsible for collecting royalties and passing them on to Defendants does not create a fiduciary relationship."). Against the weight of these authorities, Plaintiffs plead no special circumstances that give rise to fiduciary duties by WWE. Courts have ruled that mere conclusory allegations of a fiduciary relationship cannot withstand a motion to dismiss. *See Robison*, 2002 WL 272406, at *3; *Cooper v. Sony Records Int'l*, No. 00 CIV. 233(RMB), 2001

---

[6] Plaintiffs' assertion that Attorney Matthew Peterson directly called WWE employee Tom Bergamasco because he supposedly "did not assume a Pennsylvania law firm represents a Connecticut corporation on every issue when a WWE legal department exists" is demonstrably false. On the very day he filed the *Goguen* lawsuit on April 6, 2016, Attorney Peterson received an email from Attorney Jerry McDevitt of K&L Gates LLP stating that Attorney McDevitt has been "principal outside counsel for WWE for nearly 30 years" and was representing WWE in the *Goguen* lawsuit, which similarly claimed royalties on the WWE Network. Attorney Peterson, therefore, knew that WWE was represented by counsel on these matters months before he contacted a WWE employee and solicited information that he then used in bringing the claims at issue.

WL 1223492, at *5 (S.D.N.Y. Oct. 15, 2001). The sole case cited by Plaintiffs involved an accounting claim that found a fiduciary relationship where the plaintiff was technical director of the defendant and was entitled to commissions in the form of a share of the profits from his sales. *See* Opposition at 24 (citing *Mankert v. Elmatco Prods., Inc.*, 84 Conn. App. 456 (2004)). Unlike *Mankert* and the cases on which it relied, the Booking Contracts make clear there is no profit-sharing or partnership relationship between the parties here. *See* FAC, Exs. 3 & 13 ¶ 13.1.

### D. <u>Plaintiffs' CUTPA Claim Fails</u>

Plaintiffs' Opposition does not meaningfully respond to any of the multiple grounds described in WWE's Opening Brief for the dismissal of Plaintiffs' CUTPA claim. **<u>First</u>**, Plaintiffs do not dispute that a mere breach of contract claim is insufficient to establish a CUTPA violation. *See* Opening Brief at 31. The general rule is that "absent ***substantial aggravating circumstances***, [a] simple breach of contract is insufficient to establish [a] claim under CUTPA . . . ***[T]he aggravating factors alleged must constitute more than a failure to deliver on a promise*** . . . ." *Cap Maint. Solutions, LLC v. Wallingford Autopark, Inc.*, No. CV166060392S, 2016 WL 5798834, at *4 (Conn. Super. Ct. Sept. 6, 2016) (quoting *Lydall v. Ruschmeyer*, 282 Conn. 209, 247-48 (2007)) (emphasis in original). No such "aggravating factors" beyond the alleged failure to deliver on a promise are pled here.

**<u>Second</u>**, Plaintiffs mischaracterize WWE's Opening Brief as arguing that CUTPA only applies to consumer relationships. *See* Opposition at 26-27. Rather, WWE argued that the alleged wrongdoing must "interfere with fair and open competition." Opening Brief at 32 (citation omitted); *see also Cap Maint. Solutions*, 2016 WL 5798834, at *3 ("in the absence of a consumer injury, the plaintiff must demonstrate some type of unfair competitive conduct on the part of the defendant"). In other words, "[t]here must be some nexus with a public interest."

8

*Cap Maint. Solutions*, 2016 WL 5798834, at *5. Plaintiffs do not dispute that, applying these principles, CUTPA does not apply to an alleged injury "within the zone of the employment relationship" or that an alleged injury occurs within the zone of the employment relationship when the alleged misconduct "affected a term or condition of employment." Opening Brief at 33. Plaintiffs also do not dispute that these principles apply with equal force to an independent contractor relationship. *See id.* at 33-34.

**Third**, Plaintiffs admit that CUTPA prohibits them from bringing a class action because they are not residents of Connecticut and were not injured in Connecticut. Plaintiffs nevertheless assert the meritless argument that this prohibition is both unconstitutional and preempted by Federal Rule of Civil Procedure 23. CUTPA's class action restriction does not deprive Plaintiffs of the constitutional right of access to the courts. It merely prevents non-residents like Plaintiffs from serving as class representatives in an action under CUTPA. *Cf. McBurney v. Young*, 133 S. Ct. 1709, 1717 (2013) (finding constitutional requirement satisfied if "non-resident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens") (internal quotations omitted). Furthermore, Plaintiffs' claim that CUTPA's class action restriction is preempted by Rule 23 has been expressly rejected. *See Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 503-06 (D. Conn. 2015) (striking CUTPA class allegations because Rule 23 only supersedes state procedural law and CUTPA's class action restriction is substantive rather than procedural); *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 114-19 (D. Conn. 2014) (same).[7]

---

[7] As these cases recognize, Justice Stevens' concurrence in *Shady Grove Orthopedic Associates v. Allstate Insurance Company*, 559 U.S. 393, 397 (2010), explaining that Rule 23 only supersedes conflicting state law that is procedural, is the controlling opinion in that case. Because CUTPA's class action restriction is substantive rather than procedural, *Shady Grove* does not support Plaintiffs' position. Moreover, Plaintiffs' reliance on *In re OnStar*

9

### E. Plaintiffs' Unjust Enrichment Claim Fails

Instead of contesting any of the arguments in WWE's Opening Brief, Plaintiffs merely contend that they can plead unjust enrichment in the alternative if their Booking Contracts are unenforceable.[8] But this is contrary to Plaintiffs' own allegations. Plaintiffs allege that they entered into "binding and enforceable contracts" and that WWE has been "unjustly enriched" by the alleged failure to pay "royalties to past performers whose contracts entitle them to WWE Network royalties." FAC ¶¶ 114, 136, 155. Plaintiffs, therefore, admit the existence of valid and enforceable contracts that govern the same subject matter of their unjust enrichment claim — the extent to which they are entitled to royalties for the use of their performances. Accordingly, their unjust enrichment claim must be dismissed. *See Levy v. World Wrestling Entm't, Inc.*, No. 3:08-cv-01289(PCD), 2009 WL 455258, at *3-4 (D. Conn. Feb. 23, 2009) (holding unjust enrichment claim by former WWE performers cannot be seen as pled in the alternative because the plaintiffs admitted the existence of an enforceable contract with WWE).[9]

---

*Contract Litigation*, No. 2:07-MDL-01867, 2010 WL 3516691 (E.D. Mich. Aug. 25, 2010) is inapposite because it involved Michigan's Consumer Protection Act, not CUTPA, and never even considered whether the restriction on non-residents pursuing class action claims was procedural or substantive.

[8] Additionally, Plaintiffs' claim that WWE was unjustly enriched by exploiting copyrighted works embodying their performances without paying royalties is contrary to WWE's exclusive copyright ownership of those works and undeniably preempted by copyright law. *See Baiul v. NBC Sports*, No. 15-cv-9920(KBF), 2016 WL 1587250, *9-13 (S.D.N.Y. Apr. 19, 2016) (unjust enrichment claim that plaintiff was not paid royalties on defendant's exploitation of recording of her performance was preempted by copyright law); *see also* Opening Brief at 36-37.

[9] The Court should deny Plaintiffs' request for leave to amend their Complaint because Plaintiffs have failed to demonstrate how any further amendment would not be futile. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (plaintiff was not entitled to replead despite expressing a desire to amend complaint in opposition to motion to dismiss because plaintiff's counsel failed "to make a showing that the complaint's defects can be cured"); *Nagel v. Smith & Nephew, Inc.*, No. 3:15-cv-00927(JAM), 2016 WL 4098715, at *8 (D. Conn. July 28, 2016) (denying leave to amend on the ground of futility because "[i]n requesting leave to amend in his opposition to the pending motion to dismiss, plaintiff has not indicated what changes he would make to survive a future challenge under Rule 12(b)(6)"). In particular, Plaintiffs' suggestion that they would amend "to specifically allege the license paragraph of Plaintiffs' Booking Contract applies to WWE Network transactions" would be futile because it similarly requires a sale. *See* FAC, Exs. 3 & 13 ¶¶ 7.5(a)(i)&(b).

DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,

By: _/s/ Jerry S. McDevitt_
    Jerry S. McDevitt (pro hac vice)
    Curtis B. Krasik (pro hac vice)
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: curtis.krasik@klgates.com

    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com

    Its Attorneys.

## CERTIFICATION

    I hereby certify that on January 23, 2017 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                _/s/ Jeffrey P. Mueller_