## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Marcus Bagwell and Scott Levy, | : | |
| individually and on behalf of all others | : | |
| similarly situated; | : | Civil Action No. |
| | : | 3:16-cv-01350-JCH |
| Plaintiffs, | : | |
| | : | |
| v. | : | Hon. Janet C. Hall |
| | : | |
| World Wrestling Entertainment, Inc., | : | |
| | : | |
| Defendant. | : | JUNE 16, 2017 |

## FORM 26(f) REPORT OF THE PARTIES' PLANNING MEETING

**Date Complaint Filed:**  Plaintiff Bagwell filed the original complaint on August 9, 2016. (Dkt. No. 1.) Plaintiffs filed a motion to amend the complaint on September 7, 2016, which was granted on November 4, 2016. (Dkt. No. 11.) The First Amended Complaint ("FAC") was filed on November 7, 2016. (Dkt. No. 35.)[1] Plaintiffs filed their Second Amended Complaint ("SAC") on May 19, 2017. (Dkt. No. 51.) On June 9, 2017, Plaintiffs' filed a motion to amend the SAC, which was granted on June 14, 2017. (Dkt. No. 64.) Plaintiffs' filed their Third Amended Complaint ("TAC") on June 15, 2017. (Dkt. No. 65.)

**Date Complaint Served:**  Plaintiff Bagwell served the original complaint on Defendant World Wrestling Entertainment, Inc's ("WWE") counsel on August 9, 2016 with a request that WWE waive formal service of the summons. On August 15,

---

[1] Plaintiff Levy was added as a party in the First Amended Complaint.

2016, WWE's counsel executed and returned the waiver of service to Plaintiff's counsel.  Plaintiffs' various amended complaints were served by ECF.

**Date of Defendant's Appearance:**  WWE appeared in this action through counsel on September 21, 2016.

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on June 13, 2017.  The participants in the conferences were Matthew T. Peterson and Brenden P. Leydon for Plaintiffs, and Jerry S. McDevitt, Curtis B. Krasik, and Jeffrey P. Mueller for WWE.

## I.      CERTIFICATION

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case, and in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II.     JURISDICTION

### A.      Subject Matter Jurisdiction

<u>Plaintiffs' Position</u>

This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which provides for the original jurisdiction of the Federal Courts for any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in

which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

<u>WWE's Position</u>

WWE disputes that the Court has subject matter jurisdiction under CAFA because WWE contends that the matter in controversy does not exceed the aggregate sum of $5,000,000.

**B.    Personal Jurisdiction**

Personal jurisdiction is not contested.

**III.    BRIEF DESCRIPTION OF CASE**

**A.    Plaintiffs' Description of Plaintiffs' Claims[2]**

Plaintiffs' claims stem from unpaid royalty payments from WWE and/or WCW, Inc. for certain content that has been sold or licensed by WWE, WCW, Inc., or any licensee on the World Wrestling Entertainment Network ("WWE Network"); and for the nonpayment of all categories of royalties within 90 days following the end of a fiscal quarter. Plaintiffs seek equitable, punitive, and compensatory damages for the losses suffered by Plaintiffs.

1)    *Plaintiff Levy's Unpaid WWE Network Royalties Claim*

(i)    Direct Sales Royalties

Section 7.5 of Plaintiff Levy's June 20, 2000 World Wrestling Federation Entertainment, Inc. ("WWF") Booking Contact directs WWF to allocate 5% of the

---

[2] This report contains Plaintiffs' claims as alleged in their Third Amended Complaint (Dkt. No. 65).

Net Receipts paid to WWF from its direct sales of WWF Video Products featuring pay-per-views ("WWF PPVs") or non-pay-per view videos ("Non WWF PPVs") to a talent royalty pool. Section 7.5(a)(1) defines WWF Video Products as "video cassettes, videodiscs, CD ROM, or other technology, including technology not yet created." WWE launched the WWE Network in February 2014, and sells WWF PPVs and Non WWF PPVs for $9.99 per month on the WWE Network. Plaintiff Levy appears in video content that is sold via the WWE Network, and has not received a royalty payment from the WWE's direct sales of the WWE Network.

(ii)    Licensees' Sales Royalties

In the alternative, Plaintiff Levy alleges Section 7.5(a)(i) and (ii) of his June 30, 2000 Booking Contract requires WWF to pay royalties for WWF PPVs and Non WWF PPVs sold by licensees, such as WWE Network, LLC or other non-disclosed licensees. Additionally, Plaintiff Levy's 1993 WWF Booking Contract requires WWF to pay royalties for licensees' sales of "WWF Video Specials," "WWF Series," and "Video Products." Plaintiff Levy appears in the 1993 pay-per-view Survivor Series that is sold by a WWE licensee on the WWE Network.

2)    *Plaintiff Bagwell's Unpaid WWE Network Royalties Claim*

Plaintiff Bagwell's WWE Network unpaid direct and licensee sales royalties claims are identical to Plaintiff Levy, except that Plaintiff Bagwell's contracting party is WCW, Inc., not WWF.

3)    Unpaid Royalties Within 90 Days Claim

Pursuant to Section 7.12 of Plaintiff Levy's June 30, 2000 WWF and Plaintiff Bagwell's June 4, 2001 WCW, Inc. Booking Contracts, "PROMOTER shall prepare and send statements as to royalties payable hereunder to WRESTLER within ninety (90) days following the end of each quarter, based upon the royalties received and processed by PROMOTER in the previous quarter, together with payment of royalties, if any, earned by WRESTLER hereunder during such quarter-annual period, less advances and/or debits made by PROMOTER on WRESTLER's behalf." Both Plaintiffs have received royalty payments later than 90 days following the end of a quarter, and in some instances, years later.

Moreover, Plaintiff Levy's 1993 WWF Booking Contract requires royalties earned to be paid within 90 days following the end of a fiscal quarter.

### B.   Defendants' Description of Defendants' Defenses and Claims

1.     WWE denies liability on any of the claims in the TAC, and contends that all such claims should be dismissed with prejudice.

2.     As a threshold legal matter, all of the claims asserted by Plaintiffs must be dismissed because they are not entitled to royalty payments for WWE's use of its copyrighted works on the WWE Network under the contracts they signed. Plaintiff Bagwell never had any contract with WWE, and the contract he had with WCW, Inc. does not entitle him to royalties for copyrighted works owned by WWE which are available to be viewed, not bought, on the WWE Network.  Plaintiff Levy did have contracts with WWE, but these contracts did not provide for royalties if WWE's copyrighted works were made available to be viewed, not bought, on the WWE Network.  Further, no contract between Levy and WWE ever promised him

royalties if WWE exploited copyrighted works it purchased from other entities which contained performances by Levy, including works of ECW and World Championship Wrestling, Inc. ("WCWI").  In all contracts signed by Bagwell and Levy with any wrestling organization, they uniformly agreed that all copyrights were owned by the promoter, not them, and neither were promised or paid royalties for video works originally produced by ECW or WCWI.  WWE also has individual defenses against both plaintiffs, including those set forth in WWE's Answer, which not only defeat their individual claims but which also predominate over any common issues of fact or law said by Plaintiffs to make this case suitable for class action status.

3.      Under the Booking Contracts at issue, Plaintiffs are only entitled to the payment of royalties with respect to the "direct sale" of certain "Video Products" as defined in the contracts.  First, the streaming of content to subscribers on the WWE Network is not a "direct sale" because subscribers can only view, not buy, any of the content on the WWE Network, and WWE does not transfer title or ownership of the content that subscribers can view on the WWE Network.  Second, the streaming content on the WWE Network is not a "Video Product" because that phrase refers only to tangible products that consumers can directly buy to own for a specific price.  Third, the contractual provisions regarding the calculation of royalty payments cannot logically apply in the context of a subscription service like the WWE Network in which subscribers pay a monthly fee to view a broad range of content rather than to purchase a particular video or pay-per-view program.

4.     Plaintiffs are not entitled to royalties with respect to WCWI and ECW works that are made available for subscribers to view, but not buy, on the WWE Network for the separate and independent reason that neither Plaintiff had any contract that entitled them to the royalties on such works.  Additionally, Plaintiff Levy has known since at least November 2005 that WWE did not and would not pay royalties on ECW and WCWI works and since April 2009 that WWE repudiated any obligation to pay him royalties under his WWE contract when WWE exploited the works of WCWI and ECW through the sale of those works directly or through licensees.  Levy's claims for royalties as a result of WWE's placement of video works of ECW and WCWI on the WWE Network are barred by limitations and the doctrines of waiver, estoppel and acquiescence.

5.     Levy's claims for royalties as a result of WWE's exploitation of WCWI and ECW works are also individually barred by the doctrine of res judicata and prohibitions against claim splitting.  Levy previously brought a putative class action in this Court alleging breach of the same contracts he now relies upon which was dismissed by the Honorable Peter Dorsey.

6.     Levy's claims are further defective under his contracts with WWE because he failed to satisfy certain conditions precedent to the filing of suit, including objecting in writing to royalty statements within the time period specified in his contracts, failing to audit, and asserting claims outside the time limit established by his contracts and limitations periods applicable to contract claims.

7.     Because Plaintiffs are not entitled to royalties for content on the WWE Network, Count I for breach of contract — failure to pay direct sales royalties and Count V for breach of contract — failure to pay licensees' sales royalties must be dismissed.

8.     Plaintiffs' breach of contract claims in Count I, Count V, and Count IV for breach of contract — failure to pay royalties within 90 days following the end of quarter, also must be dismissed because Plaintiffs failed to satisfy the conditions precedent for filing a claim seeking royalty payments under the terms of their Booking Contracts or to exhaust remedies set forth in their Booking Contracts prior to bringing such claims.

9.     Because all other non-contractual claims in the proposed amended complaint derive from and are dependent upon the legally insufficient breach of contract claims, Count II (breach of fiduciary duty) and Count III (violation of CUTPA) are equally defective and must be dismissed.

10.     WWE believes that the predicates for class action status cannot be demonstrated here, including, but not limited to, numerosity with respect to the subclass Bagwell seeks to represent of performers who signed a contract with WCW, Inc.  WWE further believes that common issues of fact or law do not predominate over individual issues and defenses to the claims.

11.     WWE believes that each putative member of the plaintiff class also would be subject to individual defenses for, among other things, failure to satisfy the conditions precedent for filing a claim seeking royalty payments under the

terms of their Booking Contracts, which trigger incontestability provisions in each individual contract, and the failure to exhaust remedies set forth in their Booking Contracts prior to bringing such claims.

## IV.   STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1.      WWE is a Delaware corporation with its principal place of business at 1241 East Main Street, Stamford, Connecticut.

2.      Plaintiff Bagwell entered into a Booking Contract with WCW, Inc. dated May 18, 2001.

3.      Plaintiff Bagwell entered into an Independent Contractor Agreement with World Championship Wrestling, Inc. dated March 26, 1998.

4.      Plaintiff Bagwell entered into a Merchandising Agreement with World Championship Wrestling, Inc. dated March 26, 1998.

5.      Plaintiff Levy entered into Independent Contractor Agreements with World Championship Wrestling, Inc. dated February 28, 1992 and June 10, 1997.

6.      Plaintiff Levy entered into Merchandising Agreements with World Championship Wrestling, Inc. dated February 28, 1992 and June 10, 1997.

7.      Plaintiff Levy entered into a Booking Contract with World Wrestling Federation Entertainment, Inc. dated June 30, 2000.

8.    Plaintiff Levy entered into a Booking Contract with Titan Sports, Inc. dated May 4, 1993.

## V.    CASE MANAGEMENT PLAN

### A.    Standing Order on Scheduling in Civil Cases

The parties request a modification of the deadlines in the Standing Order on Scheduling in Civil Cases.

### B.    Scheduling Conference with the Court

The parties request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

### C.    Early Settlement Conference

1.    The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2.    The parties do not request an early settlement conference.

3.    The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

### D.    Joinder of Parties and Amendment of Pleadings

<u>Plaintiffs' Position</u>

Plaintiffs should be allowed until 30 days before trial to file motions to join additional parties and to file motions to amend the pleadings.

<u>WWE's Position</u>

In the Court's May 5, 2017 opinion and order, the Court specifically advised Plaintiffs in granting leave to file a second amended complaint if they desired to do so "that the court is extremely unlikely to grant further leave to amend" and that "[b]oth plaintiffs and WWE bear this Ruling in mind, to the extent it is relevant, as they prepare future filings in this case." Doc. 48 at 40-41. Thereafter, Plaintiffs did file a Second Amended Complaint, which WWE answered and pointed out that various paragraphs were omitted. Plaintiffs' counsel then sought leave to amend again, to which WWE consented in order to prevent further delay. As a result, Plaintiffs have already filed four complaints in this case. Accordingly, Plaintiffs should not be permitted to further amend their pleadings or to join additional parties.

### E.     Discovery

a.     Plaintiffs anticipate that discovery will be needed on the following subjects: (1) WWE's general policies and practices for the payment of royalties for the sale of WWF Video Products and the associated timing of any royalty payments; (2) whether WWE was contractually obligated to pay Plaintiffs and other members of the Classes royalties on revenue generated from the direct sale or licensees' sales of the WWE Network; (3) whether WWE breached its contractual obligations by failing to pay Plaintiffs and other members of the Classes royalties generated from the direct sale or licensees' sales of the WWE Network; (4) whether WWE had a fiduciary duty to Plaintiffs and other members of the Classes to pay royalties in a timely manner; (5) whether WWE's alleged breach of fiduciary duty and failure to

pay royalties violates the Connecticut Unfair Trade Practices Act, C.S.G. § 42-110, *et seq.*; (6) whether WWE satisfactorily complied with its contractual obligation to pay royalties to Plaintiffs and other members of the proposed Classes within 90 days following the end of a fiscal quarter; (7) whether Plaintiffs and other members of the Classes are entitled to compensatory or punitive damages and declaratory or injunctive relief; (8) the identities and size of the proposed Classes; and (9) whether class certification should be granted.

WWE anticipates that discovery may be needed on, among other things, the following subjects:

1.     Contracts and agreements that Plaintiffs entered into with WWE, WCW, Inc., and WCWI.

2.     Communications between Plaintiffs and WWE, WCW, Inc., or WCWI regarding their contracts and royalty payments.

3.     Any royalty statements or other documents concerning payment of royalties to Plaintiffs from WWE, WCW, Inc., or WCWI.

4.     Communications between Plaintiffs and third parties regarding the payment of royalties from WWE, WCW, Inc., or WCWI.

5.     Documents concerning all payments from WWE, WCW, Inc., or WCWI.

6.     Contracts or agreements entered into between Plaintiffs and their counsel.

7.     The alleged "identical formula" that Plaintiffs have contended in all four complaints filed in this case, including in Paragraph 150 of the TAC, can be

used to calculate the supposed "royalty amount" that Plaintiffs claim are owed to them and other putative class members.

      8.     When and how Plaintiffs became aware of the claims asserted in the TAC.

      9.     When and how Plaintiff Levy became aware that WWE was not paying him royalties for its exploitation of WCWI and ECW works in which he performed and all actions he took after becoming aware that WWE was not paying him such royalties.

      10.    Levy's prior putative class action lawsuit against WWE filed in this Court alleging breach of contract and the reasons he did not include claims then regarding non-payment of royalties for WWE's exploitation of ECW and WCWI works.

      11.    Whether Plaintiffs can satisfy the requirements of class certification.

      b.     Discovery Schedule

<u>Plaintiffs' Position</u>

Plaintiffs acknowledge this Court's order with respect to a 7 month discovery schedule, Plaintiffs propose that fact discovery will be completed 7 months from the date of entering this report. Expert discovery will be completed within 5 months after the close of fact discovery.  Given the short anticipated time frame for the proposed discovery, Plaintiffs recommend that discovery should not be in phases,

other than set forth above (fact and expert). Dispositive motions should be ruled on after class certification (referenced in Section E here).

<u>WWE's Position</u>

WWE proposes that discovery should be conducted in phases, during which discovery in the first phase would be limited to class certification issues and the merits of the claims of the named Plaintiffs. The need for a second phase, and the scope of such a second phase, would depend upon the Court's ruling on class certification and/or WWE's anticipated motion for summary judgment on the merits of the claims of the named Plaintiffs.

WWE's proposed phased discovery plan would serve the ends of judicial economy and efficiency by permitting the Court to determine "at an early practicable time" whether Plaintiffs' putative class claims satisfy the standards under Fed. R. Civ. P. 23 and are appropriate for class treatment and/or whether either named Plaintiff has claims which survive summary judgment. Courts often postpone discovery on the merits of putative class claims because such discovery "delays the certification decision and can create extraordinary and unnecessary expense and burden." Manual for Complex Litigation (Fourth) § 21.14 ("Courts often bifurcate discovery between certification issues and those related to the merits of the allegations."); *see also Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992) (affirming district court's postponement of discovery on the merits of putative class claims and limitation of discovery to class certification issues); *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 490-

491 (S.D.N.Y. 2016) (discovery prior to certification "must generally stop short of the merits of class claims"); *Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198, 2007 U.S. Dist. LEXIS 37642, at *10 (S.D.N.Y. May 24, 2007) ("pre-certification discovery on the merits of the class claims is generally inappropriate"); *Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 169 (S.D.N.Y. 2012) ("[P]laintiffs are not entitled to discovery about individual potential class members until plaintiffs have moved for and been granted class certification.  Plaintiffs cannot take class action discovery, at great expense to defendants, as if their class motion already was granted.  The costs of extensive discovery have long been recognized as a factor forcing defendants to settle even meritless cases.") (collecting cases); *NOW, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. Oct. 31, 1980) ("Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification.  Unnecessarily broad discovery will not benefit either party.  To spend either three million or three hundred thousand dollars, in order to move a mountain of documents and statistics from the defendant's facilities to the plaintiffs' offices, would be, in this pre-certification context, a wasteful and unjustifiable action."); § 26:14. Class actions, 10 Fed. Proc., L. Ed. § 26:14 ("discovery [on the merits of class claims] generally cannot take place in a class action unless and until the class has been certified"); 5-23 Moore's Federal Practice § 23.85[3] ("Often, district courts will attempt to limit precertification discovery to class certification issues, and will postpone discovery on the merits of the action until after the certification decision.").

These considerations are highly pertinent here as, absent phasing, WWE would be compelled to depose each putative member of the plaintiff class on issues relating to individual defenses before a determination is made regarding class certification or putative members have the opportunity to opt-out from any certified plaintiff class.  In doing so, WWE would be forced to incur the considerable time and expense of dozens of depositions that could be limited, or avoided altogether, if the Court denies class certification and/or grants summary judgment on the named Plaintiffs' claims, or if certain putative members of the plaintiff class opt out. Accordingly, WWE requests that the Court order that discovery be conducted in phases and set the following schedule:

1.     The parties shall have four (4) months until October 31, 2017 to complete fact discovery on class certification issues and the merits of the named Plaintiffs' claims including individual defenses to their claims ("Phase 1").

2.     By November 30, 2017, Plaintiffs shall proffer any expert report(s) on class certification issues and the merits of the named Plaintiffs' claims, including all information required under Fed. R. Civ. P. 26(a)(2).

3.     By December 29, 2017, WWE shall conduct the deposition(s) of Plaintiffs' expert(s).

4.     By January 31, 2018, WWE shall proffer any expert report(s) on class certification issues and the merits of the named Plaintiffs' claims, including all information required under Fed. R. Civ. P. 26(a)(2).

5.      By February 28, 2018, Plaintiffs shall conduct the deposition(s) of WWE's expert(s).

6.      By March 30, 2018, Plaintiffs shall file their motion for class certification.

7.      By May 15, 2018, WWE shall file (a) their opposition to Plaintiffs' motion for class certification; (b) any motions to exclude the testimony of Plaintiffs' proffered expert(s) under Daubert or otherwise; and (c) any motions for summary judgment with respect to the merits of the named Plaintiffs' claims.

9.      By June 15, 2018, Plaintiffs shall file their opposition to any motions for summary judgment filed by WWE with respect to the merits of the named Plaintiffs' claims.

10.     By June 30, 2018, WWE shall file its reply brief in support of any summary judgment motion it has filed on the named Plaintiffs' claims.

11.     A class certification hearing and/or summary judgment argument shall be scheduled at the Court's convenience sometime after June 30, 2018.

12.     Within fourteen (14) days after the Court issues a decision on class certification on the claims, if any, that survive summary judgment, if moved for by WWE, the parties shall submit a further joint case management scheduling order that will address class notice, discovery on the merits of the class claims, and the briefing of dispositive motions with respect to the merits of the class claims or individual defenses against any class members if a class is certified, and any other issues remaining after the resolution of the class certification issues ("Phase 2").

WWE cannot anticipate or estimate realistic deadlines for these events prior to resolution of class certification issues as the resolution of such issues necessarily affects the future progress of the litigation, the additional discovery that may be required, and the time necessary to bring the litigation to a final disposition.

c.    Depositions

Plaintiffs' Position

(i)    Each party shall be limited to 10 non-expert depositions. Each deposition shall last no longer than as permitted by the Federal Rules of Civil Procedure. The parties may stipulate and agree to longer depositions.

WWE's Position

WWE does not anticipate that modification of the Federal Rules of Civil Procedure will be required as to the number or duration of depositions during Phase 1 discovery.

d.    Interrogatories

Plaintiffs' Position

Plaintiffs seek permission to serve 40 interrogatories per side.

WWE's Position

WWE does not believe that any change should be made to the limit on the number of interrogatories for either party.

e.      Phased Discovery

<u>Plaintiffs' Position</u>

Discovery will not be conducted in phases.

<u>WWE's Position</u>

Discovery should be completed in phases for the reasons, and on the schedule, set forth above.


f.      Expert Witnesses

<u>Plaintiffs' Position</u>

Expert witnesses focusing on class certification issues as well as merits issues bearing on class certification shall be disclosed, along with a written report prepared and signed by the witness pursuant to FRCP 26(a)(2) and expert depositions shall be taken as follows:

1. Plaintiffs' expert(s) report shall be served within 30 days from the close of expert discovery and Defendant shall depose Plaintiffs' expert(s) within 30 days after Plaintiffs' disclosure.

2. Defendant's expert(s) report shall be served within 60 days from the close of expert discovery and the same day as the deadline to depose Plaintiffs' expert(s).

3. Plaintiffs shall depose Defendant's expert(s) within 30 days after Defendant's expert(s) disclosure.

WWE's Position

The schedule for Phase 1 expert discovery is set forth above.

g.    Damages Analysis

Plaintiffs' Position

The parties will confer and amend the schedule for submitting a damages analysis after the close of fact discovery.

WWE's Position

A damage analysis shall be provided by Plaintiffs not later than November 30, 2017, provided that WWE shall be entitled to discover the "identical formula" referenced in paragraph 150 of the TAC during Phase 1 fact discovery.

h.    Electronic Discovery

Plaintiffs' Position

As the parties have not conferred on discovery procedures for electronically-stored information ("ESI"), Plaintiffs propose that parties meet and confer on ESI protocol and submit a proposed agreement to the Court.

WWE's Position

WWE does not agree with Plaintiffs' position.  During the prior Rule 26(f) conferences held in this case on October 27, 2016 and November 1, 2016, the parties discussed the disclosure and preservation of electronically stored information, including but not limited to, the form in which such data shall be produced, search

terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agreed to abide by their general obligations under the Federal Rules of Civil Procedure and common law to preserve documents and information.

The parties' prior Rule 26(f) report (Doc. No. 36) included this identical statement. During the parties' most recent Rule 26(f) conference on June 13, 2017, WWE's counsel inquired whether there should be any further discussion on these issues at this time, and Plaintiffs' counsel did not raise any issues.

      i.     Privilege or Work Product Protection

      (i)     Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties will follow the procedures set forth in Paragraph 18 of the Standing Protective Order in this case.

      j.     Class Certification

<u>Plaintiffs' Position</u>

Plaintiffs propose that briefing on class certification will take place as follows: (1) Plaintiffs shall file an opening class certification motion and memorandum 35 days after the deadline for Plaintiffs to depose Defendant's

expert(s) and shall not exceed 40 pages; (2) Defendant shall file its memorandum in opposition to Plaintiffs' motion for class certification 35 days after Plaintiffs' opening brief and shall not exceed 40 pages; and (3) Plaintiffs shall file a reply memorandum in support of their motion for class certification 21 days after Defendant files its opposition brief and shall not exceed 20 pages.

<u>WWE's Position</u>

WWE does not agree with Plaintiffs' position.  WWE's proposed schedule for class certification discovery and briefing is set forth above.

**E.    Dispositive Motions**

<u>Plaintiffs' Position</u>

Within 30 days of the Court's decision on Plaintiffs' motion for class certification, the parties shall confer in good faith regarding deadlines for dispositive motions, service of Rule 26(a) expert reports, and preparation of a pre-trial order.

<u>WWE's Position</u>

Dispositive motions shall be filed according to the above schedule proposed by WWE.

**F.    Joint Trial Memorandum**

<u>Plaintiffs' Position</u>

The Joint Trial Memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 60 days after the later of the expiration of the deadline for filing dispositive motions or the Court's ruling on any dispositive motions that are filed.

<u>WWE's Position</u>

The Joint Trial Memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 60 days after the Court's ruling on the last dispositive motions filed under the scheduling order.

**VI.   TRIAL READINESS**

<u>Plaintiffs' Position</u>

Counsel expect that this case will be ready for trial 60 days after the later of the expiration of the deadline for filing dispositive motions or the Court's ruling on any dispositive motions that are filed.

<u>WWE's Position</u>

Counsel expect that this case will be ready for trial 30 days after the filing of the Joint Trial Memorandum.

As officers of the Court, the undersigned counsel agrees to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

PLAINTIFFS MARCUS BAGWELL
and SCOTT LEVY,

By: _/s/ Matthew T. Peterson_

Matthew T. Peterson (*pro hac vice*)
900 W. Jackson Blvd., Suite 4E
Chicago, IL 60607
Phone: (815)-999-9130
Email:
matthew@matthewtpetersonlaw.com

Brenden P. Leydon (CT16026)
TOOHER WOCL & LEYDON, LLC
80 Fourth Street
Stamford, CT 06905
Phone: (203) 517-0456
Email: bleydon@tooherwocl.com

DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,

By: _/s/ Jerry S. McDevitt_

Jerry S. McDevitt (*pro hac vice*)
Curtis B. Krasik (*pro hac vice*)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jonathan B. Tropp (CT11295)
Jeffrey P. Mueller (CT27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 16, 2017 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____*Jeffrey P. Mueller*_____
Jeffrey P. Mueller (ct27870)