# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : | NO. 3:16-CV-01350-JCH |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : | |
| | : | |
| Defendant. | : | AUGUST 9, 2017 |

## JOINT STATUS REPORT AND AGENDA
## FOR AUGUST 11, 2017 STATUS CONFERENCE

Pursuant to the Court's Memorandum of Conference and Scheduling Order (Doc. No. 84), Plaintiffs Marcus Bagwell and Scott Levy ("Plaintiffs") and Defendant World Wrestling Entertainment, Inc. ("WWE") (collectively, the "Parties") hereby submit this Joint Status Report and Agenda for the August 11, 2017 Status Conference. Pursuant to the Court's Order, the Parties have attached Plaintiffs' First Set of Interrogatories and First Set of Requests for Production as Exhibits A and B to this filing.

### Plaintiffs' Issues

**I.      ESI Protocol: Timing for Parties' Exchange of Search Terms**

In accordance with the Court's Scheduling Order (Dkt. No. 84 at 2), the Parties have conducted extensive meet-and-confer sessions by telephone with respect to proper ESI protocols and have drafted a proposed written Stipulation Regarding Discovery of Hard Copy Documents and Electronically Stored Information in which the parties agree on all issues but one. The sole issue that remains in dispute is whether the Requesting Party should have input into the search

terms and date ranges used to identify and collect potentially responsive electronically-stored information ("ESI") *before* or *after* the Producing Party has implemented its own search terms and date ranges and has produced such ESI to the Requesting Party.

Plaintiffs proposed that after the Producing Party has received the Requesting Party's document requests, both Parties would meet and confer and negotiate in good-faith to develop mutually-agreeable lists of search terms and date ranges that will be used to collect and identify potentially responsive ESI for review – before the Producing Party makes its document production. Defendant proposed that, after receiving a Requesting Party's document requests, the Producing Party will (i) provide a list of search terms and date ranges that it will use to collect and identify potentially responsive materials, (ii) submit a document production to the receiving Party, and then (iii) participate in a meet-and-confer session regarding the adequacy of the Producing Party's search terms.

Plaintiffs maintain that the issue should be addressed and determined ahead of time to avoid any disputes and disagreements regarding the sufficiency or adequacy of a production, and eliminate the time and money that would have to be spent on duplicating discovery searches. However, Defendant's position is that the issue should be reserved until after a production has been made in order to see whether there is any concern raised by the Requesting Party.

## II.     Requesting Client Files from Plaintiffs' Former Counsel

Plaintiffs and their current counsel have made several requests of Plaintiffs' former lead counsel (Clinton A. Krislov of Krislov & Associates, Ltd.) and local counsel (Brenden P. Leydon of Tooher Wocl & Leydon, LLC) to forward immediately all case files and materials to Plaintiffs' counsel.  In his Conditional Motion to Withdraw, Mr. Krislov has asserted a "retaining lien" on the case files.  (Dkt. No. 89 at 2.)  Plaintiffs' counsel has repeatedly informed Mr.

Krislov that the case files may contain potentially relevant and discoverable documents and materials which need to be reviewed and produced promptly.  Relying on his assertion of an attorneys' lien, however, Mr. Krislov has refused to turn over any files or case materials.

**III.   Plaintiffs' Position on the Nature of this Joint Submission and Defendant's Argumentative Statements Below.**

Plaintiffs believe that the Court requested the Parties to submit a Joint Status Report and Agenda for the conference call scheduled for Friday, August 11, 2017, at 8:30 a.m., intending that the Parties' joint submission would set forth a brief and relatively neutral statement of any issues still dividing the Parties.  The Court could then discuss any such issues and hear the Parties' respective views on them.

Accordingly, Plaintiffs have endeavored to make the foregoing statements of the two issues they have raised as straightforward and non-argumentative as possible.  However, Plaintiffs vigorously disagree with the tone and tenor of Defendant's argumentative and *ad hominem* accusations regarding all the supposed failures, deficiencies and reneging they accuse Plaintiffs of committing.  Plaintiffs sought a meet-and-confer this afternoon in an attempt to address the argumentative nature of what was supposed to be a joint submission, but during the brief telephone conference Defendant's counsel made it clear they would not make any changes to their statement of the issues.

Without engaging in the same inappropriate and argumentative discourse, suffice it to say Plaintiffs deny they have acted improperly, and believe they have good-faith reasons and bases for their positions on these remaining discovery issues.

<u>**WWE's Issues**</u>

The parties extensively met and conferred through three separate telephone conferences (on July 20 and 25, and August 3, 2017) and multiple additional emails.  In accordance with this

Court's order, WWE made every effort to resolve the numerous deficiencies in Plaintiffs' discovery responses. After receiving Plaintiffs' supplemental discovery responses (attached as Exhibits C-F) and document production on August 7, 2017 — 55 days after WWE served its discovery requests — Plaintiffs' counsel did not do what they committed to do, reneged on other commitments they made to supplement their responses, and otherwise continue to fail to comply with their obligations under the Federal Rules. The following issues now require resolution by the Court.

1.      <u>Plaintiffs' responses do not specify a date by which production will be completed</u>: Rule 34(b)(2)(B) requires that the production of documents or ESI "must be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Notwithstanding this requirement, Plaintiffs' July 13, 2017 responses did not include the production of any documents or specify a date by which the documents would be produced. In the parties' subsequent meet and confer discussions, Plaintiffs' counsel initially denied any such obligation and then resisted providing a date by which the production of documents and ESI would be completed, but ultimately promised that they would do so in their supplemental discovery responses. Plaintiffs' August 7, 2017 supplemental discovery responses, however, continued to fail to specify a "reasonable time" to complete the production. In particular, Plaintiffs' counsel disclosed in the parties' meet and confer discussions that they had not yet begun to review ESI or collect documents possessed by Plaintiffs' former-counsel and other third-party documents in Plaintiffs' custody or control (after initially claiming that they had no

obligation to collect such third-party documents at all)[1] and still no time is specified in the supplemental responses by which those documents and ESI will be produced.

2.     The documents produced by Plaintiffs are not labeled according to WWE's requests: Rule 34(b)(2)(E) requires that a party must "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requests." Plaintiffs did neither. Plaintiffs' failure to organize and label the documents to correspond to the categories in the requests is demonstrably prejudicial to WWE because Plaintiffs responded to numerous requests by stating that they will produce "any relevant, non-privileged, responsive documents in [their] possession, custody or control" but, upon inspection, it does not appear that any such responsive documents actually were produced. For example, Bagwell RFP 39 and Levy RFP 40 call for the production of documents "that relate to, and/or upon which [Bagwell/Levy] bases [their] contention that a class should be certified in this lawsuit, including all documents [Bagwell/Levy] intend to offer in support of class certification in this lawsuit." Plaintiffs responded that relevant, non-privileged, responsive documents would be produced but the actual production does not indicate any such documents were produced. By not organizing and labeling the documents responsive to these requests, Plaintiffs effectively have concealed from WWE those documents they intend to offer in support of class certification.

3.     Plaintiffs did not provide the "identical formula" alleged in their Complaint (IROG 5; Bagwell RFP 35, Levy RFP 36): In every complaint filed to date, Plaintiffs claimed

---

[1] In their statement of the issues above, Plaintiffs appear to take the position that their obligation to obtain and produce documents from their former counsel is limited to obtaining and producing documents from their former counsel *in this case*. To the contrary, Plaintiffs also have an obligation to produce responsive documents from the files of their former counsel who represented them in connection with contract negotiations with WWE and in connection with prior actual or threatened litigation against WWE, including but not limited to Brad Small, Cary Ichter, Frank Smith, The Disner Law Corporation, and Silver Golub & Teitell LLP.

predominance was satisfied because there were "no individual issues other than calculating each member's royalty amount <u>by an identical formula</u>" (emphasis added).  After initially refusing to provide that formula and claiming it was a matter for experts, Plaintiffs represented to WWE and to the Court, and the Court memorialized in its July 27, 2017 Memorandum of Conference and Scheduling Order, that they would provide the "identical formula" by which the named Plaintiffs and each putative class member's royalty amount supposedly can be calculated.  But no such formula was provided, and no responsive documents were produced.  Instead, just as they stated in their initial deficient responses, Plaintiffs' supplemental responses state that the formula must be further developed with the assistance of experts.   As such, Plaintiffs reneged on the commitment they made and violated the Court's Order.

4.    <u>Plaintiffs objected to providing information on their income from WCWI, ECW, and WWE/WCW, Inc. (IROG 3; RFPs 20-22)</u>:  Apart from royalty income, Plaintiffs objected to producing information on their income from performances and documents reflecting that income such as income tax returns.  WWE believes this information is critical to its defenses and to establishing the intent and expectations of the parties to the contracts at issue.  For example, the evidence will show that (a) the alleged royalties Plaintiffs are seeking here on the WWE Network would dwarf the income they have made in professional wrestling from all sources; (b) royalty income was always a small fraction of Plaintiffs' performance income; and (c) Plaintiffs were not even paid royalties on video works at WCWI or ECW but are now claiming entitlement to royalties on WWE's exploitation of those same works.  These inconsistencies will support, among other things, WWE's argument that, under the governing canons of contract interpretation, the parties could not have intended the absurd interpretation of the booking contract advanced by Plaintiffs that would entitle them to a financial windfall out of all

proportion to the total income they made in their wrestling careers.  *See Welch v. Stonybrook Gardens Coop., Inc.*, 158 Conn. App. 198 (2015) ("We will not construe a contract's language in such a way that it would lead to an absurd result.").

5.     Pre-retention correspondence with Plaintiffs (Bagwell RFPs 30, 42; Levy RFPs 31-43): Plaintiffs improperly have objected on privilege grounds to the production of documents and communications sent to Plaintiffs by their attorneys *prior* to their retention in this case, including any solicitation letters.  The existence of an attorney-client relationship is an essential predicate to invocation of the privilege.  *See In re Bonanno*, 344 F.2d 830, 831 (2d Cir. 1965).  Solicitation letters and communications with Plaintiffs *prior* to the existence of an attorney-client relationship are not privileged.  *See EEOC v. CRST Van Expedited, Inc.*, No. C07-0095, 2009 U.S. Dist. LEXIS 3621, at *9-14 (N.D. Iowa Jan. 20, 2009); *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441, 2002 U.S. Dist. LEXIS 26318, at *2-4 (S.D.N.Y. Oct. 8, 2002).  Moreover, such communications are relevant to class certification issues, including the adequacy of class counsel and the class representatives.  *See Pilcher v. Direct Equity Lending*, No. 99-1245, 2000 U.S. Dist. LEXIS 19811, at *11-12 (D. Kan. Dec. 22, 2000).  Indeed, there is evidence in this case, specifically recorded interviews of Plaintiff Bagwell, proving that he was improperly solicited to join this lawsuit by Attorney Peterson.

6.     Documents reflecting actions taken by Levy after learning that WWE was not paying him royalties on works acquired from WCWI and ECW (Levy RFP 39): Plaintiffs improperly have withheld an unidentified number of documents responsive to this request on relevance grounds, while producing other records.  In this case, Levy contends his contract with WWE obligated WWE to pay him royalties on the exploitation of copyrighted works WWE purchased from two other promotions.  Levy has produced evidence demonstrating that WWE

unequivocally repudiated any such obligation in writing to his legal counsel on April 6, 2009. Documents reflecting actions taken by Levy after he learned that he was not receiving royalties on works acquired from WCWI and ECW are central to WWE's defenses that Levy was not entitled to any royalties on such works, including its *res judicata*, statute of limitations, waiver, estoppel and acquiescence defenses.  Accordingly, there is no basis for Plaintiffs to withhold any documents responsive to this request on relevance grounds.

7.      <u>Documents relating to Bagwell's bankruptcy (Bagwell RFP 45)</u>:  Plaintiffs improperly have withheld all documents responsive to this request on relevance grounds.  Documents relating to Bagwell's bankruptcy are relevant to issues concerning his adequacy as a class representative and his potential financial motivations for joining this lawsuit.  Documents submitted in connection with his bankruptcy proceeding also will show whether Bagwell claimed to be a party to any contract that provided him with a right to future royalty payments and the expected amount of any such payments.

8.      <u>Documents relating to damages claimed by Plaintiffs (IROG 6; Bagwell RFP 34; Levy RFP 35)</u>:  Plaintiffs have stated that they intend to supplement their initial disclosures and their responses to WWE's discovery requests seeking information concerning damages. Plaintiffs nevertheless have refused to provide a date certain by which they will provide such information or to state the damages that they are claiming with respect to Bagwell or Levy, as required under the Federal Rules and by the Rule 26(f) Report.  Plaintiffs have even failed to identify what additional facts or information they need to set forth the damages they are seeking with respect to Bagwell and Levy.  WWE submits that Plaintiffs should be required to supplement their responses and provide the requested information promptly as discovery

regarding the claims of the individual Plaintiffs must occur in the first phase of discovery under the Court's scheduling order.

9.     <u>Plaintiffs' First Set of Interrogatories and Requests for Production to WWE</u>:  On August 4, 2017, Plaintiffs served their First Set of Interrogatories and Requests for Production on WWE (attached as Exhibits A and B).  WWE intends to serve its objections and responses to these requests within 30 days in accordance with the Federal Rules.  Based on an initial review of the requests, however, Plaintiffs appear to have completely disregarded this Court's order regarding the scope of discovery.  The Court specifically held that the first phase of discovery in this case "*shall be limited* to discovery related to the certification of a class, and discovery on the merits of the two named plaintiffs' cases" (Doc. No. 84 at 3) (emphasis added).  Plaintiffs' discovery requests blatantly ignore the court-ordered limitations on the scope of discovery and seek full-blown discovery concerning the *entire* putative class and even discovery that extends *beyond* the putative class to cover *every* performer in WWE's history.  Indeed, only *one* out of the nearly 50 discovery requests that were propounded is limited to Bagwell and Levy.  Plaintiffs clearly made no effort to narrow the scope of their requests to conform to the Court's order and appear to be motivated by a desire to impose massive costs on WWE with patently overbroad and unduly burdensome discovery requests.  WWE reserves its rights to provide complete objections and responses to those requests within the time limits prescribed by the Federal Rules.

10.     <u>ESI Protocol</u>:  WWE agrees with Plaintiffs that the parties have agreed on all issues relating to the ESI Protocol but one, namely, whether a party's ESI collection, search and review must wait until there is agreement (or direction from the court) as to the search terms to apply.  In this regard, Plaintiffs' characterization of WWE's position is inaccurate.  WWE's proposal does not mandate the particular sequence of steps that Plaintiffs suggest.  Instead,

WWE has proposed that a Producing Party implement the search terms it reasonably believes are appropriate in light of the document requests that are served, and then provide those search terms to the other side as part of its written response to the document requests.  If there is a dispute as to the search terms that were used, the parties can meet and confer at that time to attempt to resolve the issue and, if necessary, seek the Court's involvement to resolve the parties' dispute.  WWE believes that its proposal prevents delay and unnecessary collateral litigation by enabling the Producing Party to move forward with e-discovery efforts in order to comply with discovery deadlines under the Federal Rules and the Court's scheduling order, even if there is some point of contention to resolve in terms of the search terms parties believe are appropriate.  WWE believes it makes sense in the event there is a dispute between the parties and/or an issue brought to the Court for the Producing Party to have made a document production so there is something concrete to discuss with respect to whether additional and/or different search terms would be appropriate rather than having theoretical discussions in the abstract.

Respectfully submitted,


*/s/ Eric Zagrans*
Klint Bruno
*kb@brunolawus.com*
Eric Zagrans
*ez@brunolawus.com*
Michael Silverman
*msilverman@brunolawus.com*
Matthew Peterson
*mp@brunolawus.com*
**THE BRUNO FIRM, LLC**
500 North Michigan Avenue
Suite 600
Chicago, Illinois 60611
Phone: 312.321.6481


William H. Clendenen, Jr.
*whj@clenlaw.com*
Maura Mastrony
*mam@clenlaw.com*
**CLENDENEN & SHEA, LLC**
400 Orange Street
New Haven, Connecticut 06511
Phone: 203.787.1183

*Attorneys for Plaintiffs and the Classes*

*/s/ Jerry S. McDevitt*
Jerry S. McDevitt
*jerry.mcdevitt@klgates.com*
Curtis B. Krasik
*curtis.krasik@klgates.com*
**K&L GATES, LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
Phone: 412.355.8608


Jeffrey Mueller
*jpmueller@daypitney.com*
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, Connecticut 06103-1212
Phone: 860.275.0164


Jonathan B. Tropp
*jbtropp@daypitney.com*
**DAY PITNEY LLP**
One Canterbury Green
201 Broad Street
Stamford, Connecticut 06901
Phone: 203.977.7300

*Attorneys for Defendant*
*World Wrestling Entertainment, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that, on August 9, 2017, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)