# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : NO. 3:16-CV-01350-JCH |
| Plaintiffs, | : |
| vs. | : |
| WORLD WRESTLING ENTERTAINMENT, INC., | : |
| Defendant. | : SEPTEMBER 5, 2017 |

**WORLD WRESTLING ENTERTAINMENT, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits the following responses and objections (the "Response") to Plaintiffs' First Set of Interrogatories (the "Interrogatories").

**RESPONSES TO INTERROGATORIES**

1. For each person who provided information used to formulate Your responses to any Interrogatories Plaintiffs have served on You (including but not limited to this first set of Interrogatories), identify both the person and all information that person provided which You used to formulate Your responses. If more than one person provided information used to answer any given Interrogatory, specify which portion of the information each person contributed for the formulation of that answer.

Response:

WWE specifically objects to Interrogatory No. 1 on the grounds that it seeks information subject to the attorney-client privilege and/or attorney work product doctrine. Subject to and

without waiver of the foregoing objections, WWE states that the following persons provided information used in formulating WWE's responses to the Interrogatories: Tom Bergamasco — Interrogatory Nos. 3, 14; Scott Amann — Interrogatory Nos. 4, 8, 9; James Langham — Interrogatory No. 11; Tandy O'Donaghue — Interrogatory No. 12; Kevin Dunn — Interrogatory No. 15.

2.      State the full name, current address and telephone number of each person who has knowledge or claims to have knowledge of any allegation contained in the Third Amended Complaint, your Answer to the Complaint or your Affirmative Defenses to the Third Amended Complaint and, for each person, describe the subject matter of his or her knowledge.

Response:

WWE specifically objects to Interrogatory No. 2 on the grounds that WWE does not know every person who has knowledge, or claims to have knowledge, of any allegation in the Third Amended Complaint ("TAC") or WWE's Answer or WWE's Affirmative Defenses to the TAC and therefore cannot identify each such person. WWE further objects to Interrogatory No. 2 on the grounds that the identification of each person who has knowledge, or claims to have knowledge, of "any allegation" in the TAC is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case. WWE further objects to Interrogatory No. 2 on the grounds that it includes at least three (3) discrete sub-parts which, when counted as separate interrogatories in accordance with Fed. R. Civ. P. 33(a), exceed the limit of 25 written interrogatories. Subject to and without waiver of the foregoing objections, WWE identifies (a) the persons set forth in response to Interrogatory No. 1, who have knowledge of information in response to the referenced

2

interrogatories and (b) the persons previously identified in its Initial Disclosures and any supplements to its Initial Disclosures, who have knowledge of the subject matters described therein. WWE further responds that, as to its Affirmative Defenses, WWE additionally identifies Levy's former counsel, Cary Ichter and David S. Golub.

3. Identify and describe all accounts from which royalty payments to Performers are drawn (before being distributed to Performers), including but not limited to any bank account or any other type of account.

Response:

WWE specifically objects to Interrogatory No. 3 on the grounds that it seeks information for the entire corporate existence of WWE and is not limited to any discrete time frame, much less any time frame relevant to the claims or defenses at issue. WWE further objects to Interrogatory No. 3 on the grounds that the identity of accounts from which royalty payments are drawn is outside the scope of Phase I discovery under the Court's July 27, 2017 Order and, moreover, is not relevant to the claims at issue. WWE further objects to Interrogatory No. 3 on the grounds that it is not even limited to members of the putative plaintiff class but seeks information with respect to every payment to every performer over the entire corporate existence of WWE. Accordingly, Interrogatory No. 3 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case. Subject to and without waiver of the foregoing objections, WWE responds that royalty payments to performers are paid from a WWE corporate account funded by general operating funds of WWE.

4. For each year, identify each Performer with whom WWE had a royalty payment agreement and those with which it did not.

Response:

WWE specifically objects to Interrogatory No. 4 on the grounds that the individual names of specific members of the putative plaintiff class are outside the scope of Phase I discovery under the Court's July 27, 2017 Order. Second Circuit law is clear that the determination of ascertainability does not require a complete list of class members at the certification stage. *See In re Petrobras Securities*, 862 F.3d 250, 266 n.16 (2d Cir. 2017); *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 n.2 (2d Cir. 2015). Moreover, WWE has voluntarily provided Plaintiffs' counsel with information regarding the number of performers who entered into contracts with the so-called "other technology" clause and the years of these contracts thereby giving Plaintiffs' counsel information going to the numerosity issue. WWE states that it has identified 253 performers who entered into booking contracts containing the "other technology, including technology not yet created" clause between August 1996 and April 2004. WWE further responds that, consistent with the Court's July 27, 2017 Order and comments during the parties' July 27, 2017 status conference regarding sampling of putative class members, WWE is producing at Bates Numbers WWE-Levy00000688-00000962 twelve exemplars of the versions of executed WWE booking contracts between August 1996 and April 2004 that contain the "other technology, including technology not yet created" clause and which reflect variations in the royalty provisions with respect to video products. Additionally, pursuant to agreements reached in the parties' meet and confer discussions, WWE is producing at Bates Numbers WWE-Levy00001211-00001301 seven exemplars of subsequent agreements entered into by performers who had previously entered into booking contracts containing the "other technology,

including technology not yet created" clause which exclude such performers from the putative plaintiff class, such exemplars consisting of nostalgia agreements, early contract releases, and booking contracts that provide the performer shall not be paid royalties with respect to, among other things, television subscription fees, internet subscription fees and/or subscription video on demand fees. WWE also responds that, as set forth in Paragraph 11.2 of Levy's and Bagwell's booking contracts, the booking contracts terminate upon the performer's death with no further compensation due to the performer's heirs, successors, personal representatives or assigns. Except for providing the foregoing information, WWE objects to Interrogatory No. 4 on the grounds that the identity of performers who did not have a "royalty payment agreement" is not relevant to the claims at issue. WWE further objects to Interrogatory No. 4 on the grounds that it seeks information for the entire corporate existence of WWE and is not limited to any discrete time frame, much less any time frame relevant to the claims or defenses at issue. Accordingly, Interrogatory No. 4 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

5. With respect to Your answer to the preceding Interrogatory, state for each year the royalty payments made to each Performer pursuant to any royalty sharing agreement.

Response:

Insofar as Interrogatory No. 5 incorporates by reference WWE's response to Interrogatory No. 4, WWE likewise incorporates by reference herein its objections to Interrogatory No. 4 as set forth at length above. Additionally, WWE objects to Interrogatory No. 5 on the grounds that it is undisputed that no performers were paid royalties on the WWE Network and consequently the amount of all royalties paid to each individual performer on other

matters or for other products is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. WWE further objects to Interrogatory No. 5 on the grounds that it is outside the scope of Phase I discovery under the Court's July 27, 2017 Order because, at best, the information sought relates to class damages discovery. Consistent with the Court's July 27, 2017 Order, WWE is producing all available royalty reports for Plaintiffs Bagwell and Levy, which set forth the payments made, the methodology for the calculations, and the reasons for the payments. WWE further objects to Interrogatory No. 5 on the grounds that the term "royalty sharing agreement" is undefined. Accordingly, Interrogatory No. 5 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

      6.     Identify all lawsuits against WWE alleging claims based on the same or similar kinds of conduct described in the Third Amended Complaint (Dkt. No. 65), including but not limited to any lawsuit related to the payment of royalties.

Response:

WWE specifically objects to Interrogatory No. 6 on the grounds that it seeks information for the entire corporate existence of WWE and is not limited to any discrete time frame, much less any time frame relevant to the claims or defenses at issue. Subject to and without waiver of the foregoing objections, WWE responds that there have been no other lawsuits or claims asserted by any performers alleging breach of contract for failure to pay royalties on the WWE Network or for failure to pay royalties within 90 days following the end of a quarter, except for the lawsuit that Attorney Peterson previously filed and voluntarily dismissed captioned *Goguen v. World Wrestling Entertainment, Inc.*, No. 16-cv-00542-SRU.

7.     **Withdrawn per September 3, 2017 email from Plaintiffs' Counsel**

8.     State for each year the total number of royalty payment agreements WWE entered into and for any different versions [sic] those royalty payment agreements You used during each of those years (and which Plaintiffs have requested You to produce in response to Plaintiffs' First Request for the Production of Documents No. 10), state the total number of Performers that had each different version of each contract, and state the period during which WWE offered each such version.

Response:

WWE specifically objects to Interrogatory No. 8 on the grounds that it would require WWE to engage in an extensive individual inquiry, review, and analysis as to the contracts of every member of the putative plaintiff class which is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. It is WWE's position that the issue for the Court on class certification is whether the **existence** of such individualized inquiries predominates over common issues and that it is neither necessary nor proper to resolve the merits of the individualized inquiries at the class certification phase. Accordingly, Interrogatory No. 8 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case. Subject to and without waiver of the foregoing objections, WWE states that it has identified 253 performers who entered into booking contracts containing the "other technology, including technology not yet created" clause between August 1996 and April 2004. WWE further responds that, consistent with the Court's July 27, 2017 Order and comments during the parties' July 27, 2017 status conference regarding sampling of putative class members, WWE is producing at Bates Numbers WWE-

7

Levy00000688-00000962 twelve exemplars of versions of executed WWE booking contracts between August 1996 and April 2004 that contain the "other technology, including technology not yet created" clause and which reflect variations in the royalty provisions with respect to video products.

9. For each year since WWE entered into royalty payment agreements with Performers, identify each royalty payment agreement that you entered into with each Performer.
<u>Response:</u>

WWE specifically objects to Interrogatory No. 9 on the grounds that it would require WWE to engage in an extensive individual inquiry, review, and analysis as to the contracts of every member of the putative plaintiff class which is outside the scope of, Phase I discovery under the Court's July 27, 2017 Order. It is WWE's position that the issue for the Court on class certification is whether the **existence** of such individualized inquiries predominates over common issues and that it is neither necessary nor proper to resolve the merits of the individualized inquiries at the class certification phase. WWE further objects to Interrogatory No. 9 on the grounds that the individual names of specific members of the putative plaintiff class are outside the scope of Phase I discovery under the Court's July 27, 2017 Order. Second Circuit law is clear that the determination of ascertainability does not require a complete list of class members at the certification stage. *See In re Petrobras Securities*, 862 F.3d 250, 266 n.16 (2d Cir. 2017); *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 n.2 (2d Cir. 2015). Accordingly, Interrogatory No. 9 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case. Subject to and without waiver of the foregoing objections, WWE responds that, consistent with the

Court's July 27, 2017 Order and comments during the parties' July 27, 2017 status conference regarding sampling of putative class members, WWE is producing at Bates Numbers WWE-Levy00000688-00000962 twelve exemplars of versions of executed WWE booking contracts between August 1996 and April 2004 that contain the "other technology, including technology not yet created" clause and which reflect variations in the royalty provisions with respect to video products.

10. Identify all people involved in the promotion, marketing, advertising and sales of the WWE Network, including those individuals responsible for acquiring and/or determining the programming content made available to subscribers. If multiple people have been involved in these functions during the relevant time period, please state the dates that each person had the authority described in this Interrogatory.

Response:

WWE specifically objects to Interrogatory No. 10 on the grounds that the requested information is outside the scope of Phase I discovery under the Court's July 27, 2017 Order and consequently Interrogatory No. 10 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case. WWE further objects to Interrogatory No. 10 on the grounds that it includes at least five (5) discrete sub-parts regarding personnel involved in different corporate functions which, when counted as separate interrogatories in accordance with Fed. R. Civ. P. 33(a), exceed the limit of 25 written interrogatories. Subject to and without waiver of the foregoing objections, WWE responds that it is producing at Bates Numbers WWE-Levy00001620-00004469 organizational charts of WWE for each month since the launch of the WWE Network.

11. For each year, since it has existed, identify all distribution contracts WWE Network has entered into for the distribution of its programming.

Response:

WWE specifically objects to Interrogatory No. 11 on the grounds that "WWE Network" is not a legal entity and therefore cannot and did not enter into any contracts. Subject to and without waiver of the foregoing objections, WWE responds that it is producing at Bates Numbers WWE-Levy00000001-00000687 contracts that WWE has entered into with respect to the distribution of the WWE Network.

12. For each year since it has existed, state the total number of subscribers to the WWE Network, the total amount received or revenue generated in exchange for subscriptions to the WWE Network and the total amount received or revenue generated for any other person or entity from subscriptions to the WWE Network, including the methodology for the calculations.

Response:

WWE specifically objects to Interrogatory No. 12 on the grounds that it includes multiple discrete sub-parts which, when counted as separate interrogatories in accordance with Fed. R. Civ. P. 33(a), exceed the limit of 25 written interrogatories. Subject to and without waiver of the foregoing objections, pursuant to agreements reached in the parties' meet and confer discussions, WWE responds that it is producing at Bates Numbers WWE-Levy00000963 documents reflecting the number of subscribers to the WWE Network on a monthly basis. Additionally, WWE responds that for each year the WWE Network has existed WWE's 10-K filings set forth the number of subscribers to the WWE Network and the revenue on subscriptions to the WWE

10

<a>
</a>

Network.

13.     For each year since it has existed, identify the total number of times videos in which a Performer with a royalty payment agreement has been accessed and/or viewed on the WWE Network.

Response:

WWE specifically objects to Interrogatory No. 13 on the grounds that the term "videos" is undefined, and the lack of a precise definition precludes WWE from being able to respond. Plaintiffs' counsel have consistently refused to identify what "videos" constitute a royalty-generating event so as to narrow and focus the information they are seeking only to such royalty-generating events. WWE further responds to Interrogatory No. 13 on the grounds that it would require WWE to engage in an extensive individual inquiry, review, and analysis as to every member of the putative plaintiff class which is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. At best, such discovery goes to class-wide damages and is not conceivably relevant to class certification issues. WWE further objects to Interrogatory No. 13 on the grounds that the individual names of specific members of the putative plaintiff class are outside the scope of Phase I discovery under the Court's July 27, 2017 Order. Second Circuit law is clear that the determination of ascertainability does not require a complete list of class members at the certification stage. *See In re Petrobras Securities*, 862 F.3d 250, 266 n.16 (2d Cir. 2017); *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 n.2 (2d Cir. 2015). WWE further objects to Interrogatory No. 13 on the grounds that it would be exceedingly burdensome and require a massive amount of resources to attempt to identify every place on the WWE Network in which any of the hundreds of putative class members visually appear and then to attempt to

determine the number of times all such WWE copyrighted works were viewed. In response to Interrogatory No. 15, WWE has identified documents it is producing that list approximately 7775 works comprising over 9000 total hours available for subscribers to view on demand on the WWE Network. WWE estimates that it would require tens of thousands of man-hours to review these approximately 7775 works in real time to attempt to identify each place in which any of the 253 potential members of the putative plaintiff class appear. Accordingly, Interrogatory No. 13 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

14.   Identify all royalty payments made to Plaintiffs including the methodology for the calculations and the reasons for the royalty payments.

Response:

WWE specifically objects to Interrogatory No. 14 on the grounds that WWE sends Plaintiffs quarterly royalty reports that set forth the requested information and therefore this information is equally accessible to Plaintiffs as to WWE. Subject to and without waiver of the foregoing objections, WWE is producing at Bates Numbers WWE-Levy00001310-00001619 all available royalty reports and Form 1099s for Plaintiffs Bagwell and Levy which set forth the payments made, the methodology for the calculations, and the reasons for the payments.

15.   Identify all programs, programming and/or events that are available for subscribers to access or view on the WWE Network. If applicable, identify which programs, programming and/or events are determined to be part of a particular video library.

Response:

WWE is producing at Bates Numbers WWE-Levy00001210 documents that identify the WWE copyrighted works that are available for subscribers to view on demand on the WWE Network.

16. For all programs, programming and/or events incorporated into Your response to the preceding Interrogatory, identify all Performers who participated in such programs, programming and/or events.

<u>Response:</u>

WWE specifically objects to Interrogatory No. 16 on the grounds that it seeks information that is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. WWE further objects to Interrogatory No. 16 on the grounds that it is not even limited to members of the putative plaintiff class but seeks information on every performer who ever appeared in a WWE copyrighted work available for subscribers to view on the WWE Network. WWE further objects to Interrogatory No. 16 on the grounds that it would be exceedingly burdensome and require a massive amount of resources to attempt to identify all of the performers who appeared in every WWE copyrighted work on the WWE Network. In response to Interrogatory No. 15, WWE has identified documents it is producing that list approximately 7775 works comprising over 9000 total hours available for subscribers to view on demand on the WWE Network. WWE estimates that it would require tens of thousands of man-hours to review these approximately 7775 works in real time to attempt to identify all of the performers in each such work. Accordingly, Interrogatory No. 16 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

17.     Identify every lawsuit that has ever been filed by any party against You alleging an injury caused, in whole or in part, by the failure to pay royalties, including, without limitation, the date each such lawsuit was filed, the venue where each such lawsuit was filed, the case number of each such lawsuit, the name(s) of the plaintiff(s) and defendant(s) to each such lawsuit and the identity and contact information of their attorneys, and describe the basis for each such lawsuit.

Response:

WWE specifically objects to Interrogatory No. 17 on the grounds that it is seeks information for the entire corporate existence of WWE and is not limited to any discrete time frame, much less any time frame relevant to the claims or defenses at issue. WWE further objects to Interrogatory No. 17 on the grounds that it includes multiple discrete sub-parts which, when counted as separate interrogatories in accordance with Fed. R. Civ. P. 33(a), exceed the limit of 25 written interrogatories. WWE further objects to Interrogatory No. 17 on the grounds that it seeks information that is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. Accordingly, Interrogatory No. 17 is overbroad, unduly burdensome and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case. Subject to and without waiver of the foregoing objections, WWE responds that it has identified the following lawsuits that it believes alleged claims for royalties:

*Goguen v. World Wrestling Entertainment, Inc.*, No. 3:16-cv-00542-SRU, D. Conn. (2016)

*Laurinaitis et al. v. World Wrestling Entertainment, Inc. et al.*, No. 3:16-cv-01209-VLB (consolidated with No. 3:15-cv-01074-VLB), D. Conn. (2016)

*Gilbert et al. v. World Wrestling Entertainment, Inc.*, No. 1:15-cv-01086-JDB-egb, W.D. Tenn. (2015)

*Somerson v. McMahon et al.*, No. 1:12-CV-00043-MHS, N.D. Ga. (2011)

*Hart v. World Wrestling Entertainment, Inc.*, No. 3:10-cv-00975-SRU, D. Conn. (2010)

*Hellwig v. Titan Sports, Inc.*, No. CV 96-15377, Superior Court of Arizona, Maricopa County (1996)

*Blood v. Titan Sports, Inc.*, No. 3:94-cv-00307-RDP, W.D.N.C. (1994)

*Colley v. McMahon et al.*, No. 5:92CV0216(WWE), D. Conn. (1992)

*Eadie v. McMahon et al.*, No. 5:91CV0423(WWE), D. Conn. (1991)

*Ventura v. Titan Sports, Inc.*, No. 3:91-cv-00811-PAM-JGL, D. Minn. (1991) & No. 0:97-cv-00046-ADM-JGL, D. Minn. (1997)

           DEFENDANT WORLD WRESTLING
           ENTERTAINMENT, INC.,

        By:  /s/ Jerry S. McDevitt
           Jerry S. McDevitt (pro hac vice)
           Curtis B. Krasik (pro hac vice)
           K&L GATES LLP
           K&L Gates Center
           210 Sixth Avenue
           Pittsburgh, PA 15222
           Phone: (412) 355-6500
           Fax: (412) 355-6501
           Email: jerry.mcdevitt@klgates.com
           Email: curtis.krasik@klgates.com

           Jonathan B. Tropp (ct11295)
           Jeffrey P. Mueller (ct27870)
           DAY PITNEY LLP
           242 Trumbull Street
           Hartford, CT 06103
           Phone: (860) 275-0100
           Fax: (860) 275-0343
           Email: jbtropp@daypitney.com
           Email: jmueller@daypitney.com

           Its Attorneys

## VERIFICATION

I, C. Scott Amann, am Vice President, Legal and Business Affairs of World Wrestling Entertainment, Inc. I have read the foregoing Objections and Responses to Plaintiffs' First Set of Interrogatories and know the contents thereof. I declare under penalty of perjury that the facts set forth in the Responses are true and correct to the best of my knowledge, information, and belief.

_____
C. Scott Amann

CERTIFICATION OF SERVICE

      I hereby certify that on September 5, 2017 a copy of foregoing was served on the following counsel of record via email and regular mail.

| | |
|---|---|
| Klint Bruno<br>*kb@brunolawus.com*<br>Eric Zagrans<br>*ez@brunolawus.com*<br>Michael Silverman<br>*msilverman@brunolawus.com*<br>Matthew Peterson<br>*mp@brunolawus.com*<br>**THE BRUNO FIRM, LLC**<br>500 North Michigan Avenue<br>Suite 600<br>Chicago, Illinois 60611<br>Phone: 312.321.6481 | William H. Clendenen, Jr.<br>*whj@clenlaw.com*<br>Maura Mastrony<br>*mam@clenlaw.com*<br>**CLENDENEN & SHEA, LLC**<br>400 Orange Street<br>New Haven, Connecticut 06511<br>Phone: 203.787.1183 |

                                                                   _/s/ *Curtis B. Krasik*_