# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : : : : | NO. 3:16-CV-01350-JCH |
| Plaintiffs, | : : | |
| vs. | : : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : : : | |
| Defendant. | : : | SEPTEMBER 18, 2017 |

**WORLD WRESTLING ENTERTAINMENT, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits the following responses and objections (the "Response") to Plaintiffs' Second Set of Interrogatories (the "Interrogatories").

**RESPONSES TO INTERROGATORIES**

18. For all Performers for whom Your current obligation to pay direct or licensee sale royalties originates from executed agreements where the definition of WWF Video Products or WWE Video Products includes "other technology, including technology not yet created," identify all WWF Video Products and WWE Video Products of WWF Pay-Per-Views and WWE Pay-Per-Views and Non-Pay-Per-Views that You are obligated to pay direct or licensee sale royalties and the allocated Royalty Rate assigned to each Performer for each Video Product.

Response:

As a threshold response, to the extent that Interrogatory No. 18 is asking for information about royalties for streaming video which can be viewed, not purchased, on the WWE Network,

WWE disputes the premise of the Interrogatory that there is any obligation to pay such royalties and therefore there is no assigned Royalty Rate to each Performer for each Video Product. Plaintiffs also have failed to date to even identify what they contend are royalty-generating events on the WWE Network and, until they do, Plaintiffs have not demonstrated that such information is conceivably relevant to any claim in the case. To the extent that this Interrogatory is asking WWE to compile such information for all Video Products depicting WWF and/or WWE events sold by CD, DVD and other non-streaming technology for all putative class members, WWE has several objections in addition to lack of relevance. WWE objects to Interrogatory No. 18 on the grounds that it seeks broad-based class discovery on "all Performers" that is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. If construed as indicated, Interrogatory No. 18 would require WWE to engage in extensive individual inquiry, review, and analysis as to each one of 253 putative class members to determine every Video Product depicting WWF and/or WWE events on which each putative class member has been paid royalties, the royalty rates for all such Video Products, and associated royalty calculations for a period in excess of twenty years. As such, this interrogatory is in reality 253 separate interrogatories under the operative standard and exceeds the limit on interrogatories established by the Court. WWE further objects because the issue for the Court on class certification is whether the **existence** of such individualized inquiries predominates over common issues, and it is neither necessary nor proper to resolve the merits of such individualized inquiries at the class certification phase even if relevant, which it is not. It is undisputed that no performers were paid royalties on the WWE Network and consequently the amount of royalties paid to putative class members on sales by CD, DVD and other non-streaming technology of Video Products depicting WWF and/or WWE events pursuant to formulas set forth in the respective booking contracts of

each putative class member is irrelevant to this case in general and to the issues on class certification in particular. Plaintiffs' counsel has pled and maintained that there is supposedly a formula to be developed by an expert which can be used to calculate the alleged damages of putative class members, but has not disclosed such a formula. Thus, the contractual royalty rates paid to all Performers has no relevance to a damage theory devised by experts not found in the contract. Additionally, insofar as Interrogatory No. 18 seeks the individual names of specific members of the putative plaintiff class, Second Circuit law is clear that a complete list of class members is not required at the certification stage. *See In re Petrobras Securities*, 862 F.3d 250, 266 n.16 (2d Cir. 2017); *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 n.2 (2d Cir. 2015). Accordingly, Interrogatory No. 18 is overbroad, unduly burdensome, and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

19. For all Performers for whom Your obligation to pay direct or licensee sale royalties originated from executed agreements where the definition of WWF Video Products or WWE Video Products includes "other technology, including technology not yet created," identify all Performers who are not entitled for any reason, to receive royalties with respect to the following: internet subscription fees, subscription video on demand fees, or royalties for revenue derived from the WWE Network. For those Performers referenced above who are not entitled to receive royalties for internet subscription fees, subscription video on demand fees or royalties derived from the WWE Network, identify all WWF Video Products and WWE Video Products of WWF Pay-Per-Views and WWE Pay-Per-Views and Non-Pay-Per-Views that You are or were obligated to pay direct or licensee sale royalties and the allocated Royalty Rate assigned to

each Performer for each Video Product.

Response:

      WWE objects to Interrogatory No. 19, as an initial matter, because it is fundamentally incomprehensible. The Interrogatory appears to be asking WWE to first identify all members of the putative plaintiff class who are to be excluded from the class because such persons signed a later contract with language stating they are not entitled to royalties on internet subscription fees, subscription video on demand fees, or for revenue derived from the WWE Network. Having done so, WWE understands this Interrogatory to then require WWE to identify all Video Products depicting WWF and/or WWE events on which such excluded putative class members were paid royalties when Video Products were sold by CD, DVD, and other non-streaming technology, and further to identify each member's royalty rate on each such Video Product as well as how that royalty rate was calculated. Such a compound interrogatory with multiple discrete subparts is, in reality, hundreds of separate interrogatories requiring individual analysis of 253 putative class members. If construed as indicated, the information requested by Interrogatory No. 19 is also duplicative of the information requested by Interrogatory No. 18. WWE, therefore, objects to this Interrogatory on the same grounds as set forth in response to Interrogatory No. 18 above and notes the additional point that this Interrogatory is especially vexatious and burdensome because it would require WWE to investigate and disclose royalties paid to persons within the putative class on non-streaming sales even though the Interrogatory presupposes that such persons are in fact excluded from any entitlement to streaming royalties. Accordingly, Interrogatory No. 19 is overbroad, unduly burdensome, and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

20. For all Performers for whom Your obligation to pay direct or licensee sale royalties originates or originated from executed agreements where the definition of WWF Video Products or WWE Video Products includes "other technology, including technology including technology not yet created," identify all WWF Video Products and WWE Video Products of WWF Pay-Per-Views and WWE Pay-Per-Views and Non-Pay-Per-Views for which You are or were obligated to pay direct or licensee sale royalties and that at any time were available to access or view on the WWE Network.

Response:

WWE objects to the premise of Interrogatory No. 20 that WWE's royalty obligations stem from the "other technology" provision or that the availability of a given Video Product on the WWE Network, which is royalty-bearing when sold as a CD or DVD, is a relevant consideration. WWE further objects to Interrogatory No. 20 on the grounds that it again seeks broad-based class discovery for "all Performers" that is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. Once more, this Interrogatory would require WWE to research the history of all 253 members of the putative plaintiff class, including a review of every royalty statement ever provided to each such putative class members; identify every Video Product depicting WWF and/or WWE events on which all 253 putative class members have been royalties on sales by CD, DVD, etc.; and then identify, for each putative class member, every such WWF Pay-Per-View, WWE Pay-Per-View and Non-Pay-Per-View that is available for a subscriber to view on demand on the WWE Network out of the approximately 7775 works currently available for viewing on the Network. Under the operative standard, Interrogatory No. 20 again is in reality hundreds of separate interrogatories and exceeds the limit on interrogatories

5

established by the Court. In addition to the massive burden that responding to this Interrogatory would impose on WWE, the information sought is not conceivably relevant to any issue related to class certification and consequently is outside the scope of Phase I discovery under the Court's July 27, 2017 Order. Insofar as Interrogatory No. 20 would require WWE to identify the individual names of specific members of the putative plaintiff class, Second Circuit law is clear that a complete list of class members is not required at the certification stage. *See In re Petrobras Securities*, 862 F.3d 250, 266 n.16 (2d Cir. 2017); *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 n.2 (2d Cir. 2015). Accordingly, Interrogatory No. 20 is overbroad, unduly burdensome, and calls for information that is not relevant to any party's claims or defenses and not proportional to the needs of the case.

DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,

By: _/s/ Jerry S. McDevitt_
    Jerry S. McDevitt (pro hac vice)
    Curtis B. Krasik (pro hac vice)
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: curtis.krasik@klgates.com

    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com

    Its Attorneys

## CERTIFICATION OF SERVICE

I hereby certify that on September 18, 2017 a copy of foregoing was served on the following counsel of record via email and regular mail.

| | |
|---|---|
| Klint Bruno<br>*kb@brunolawus.com*<br>Eric Zagrans<br>*ez@brunolawus.com*<br>Michael Silverman<br>*msilverman@brunolawus.com*<br>Matthew Peterson<br>*mp@brunolawus.com*<br>**THE BRUNO FIRM, LLC**<br>500 North Michigan Avenue<br>Suite 600<br>Chicago, Illinois 60611<br>Phone: 312.321.6481 | William H. Clendenen, Jr.<br>*whj@clenlaw.com*<br>Maura Mastrony<br>*mam@clenlaw.com*<br>**CLENDENEN & SHEA, LLC**<br>400 Orange Street<br>New Haven, Connecticut 06511<br>Phone: 203.787.1183 |

/s/ *Curtis B. Krasik*