**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : : : : | NO.  3:16-CV-01350-JCH |
| | : | |
| Plaintiffs, | : : | |
| | : | |
| vs. | : : | |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : : : | |
| | : | |
| Defendant. | : | NOVEMBER 6, 2017 |

<u>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL REDACTED INFORMATION FROM PHONE RECORDS**</u>

Defendant World Wrestling Entertainment, Inc. ("WWE") hereby submits this memorandum of law in support of its motion to compel the production of information concerning phone calls between Plaintiffs Marcus Bagwell and Scott Levy ("Plaintiffs") and their counsel that was improperly redacted from the phone records produced by Plaintiffs, including information relating to the length or duration of the calls and the charges for the calls. The redacted information is not privileged and is plainly relevant to establishing that Plaintiffs were improperly solicited to join this lawsuit by Attorney Peterson and to demonstrating the falsity of sworn interrogatory answers provided by Bagwell in an attempt to hide such solicitation.

## I.   FACTUAL BACKGROUND

### A.   Bagwell's Public Interview

On August 9, 2016, Attorney Peterson filed the instant putative class action lawsuit asserting claims for royalties in connection with the WWE Network on behalf of Plaintiff Bagwell. On or about September 13, 2016, Bagwell stated in a recorded interview:

> **Well one day I get a call, about a year ago probably, from a guy, from a lawyer. Well, I - I still never met the guy in real life. I met him over the phone. Super great guy though. His name is Matthew Peterson.** And he called me over the phone and goes, "hey, Buff." And he just talked to me for a minute. He says, "I'm doing a thing where I'm checking on independent contracts and just kind of seeing. You know I know a lot about WCW and WWE." He gave me his resume over the phone. And it was a good one. And I liked the way he spoke, and I liked the way he talked. And he said, "listen, what I basically do is I look at your contract and I see if you feel you've been mistreated as all. And if you do we look at some openings and see. How do you feel about that?" And I said, "I'll send you a copy of my contract today no problem. Look at it. See what you think."

(*See* Ex. A at 7) (emphasis added). During the interview, Bagwell repeatedly stated that he would not have filed this lawsuit if he had not been solicited by Attorney Peterson.

> **So this isn't something that just happened. It's just something that just became relevant because I would never hire a lawyer, go out and do this. It would just be too big of a battle. If I have a lawyer call me up and go, "hey, let me do this and let's see what we can do." Hey, brother, knock yourself out. And that's**

**basically what I had happen** . . . he's thinking that they'll call to try to hire me back instead of paying me what they owe me, because . . . I mean to me it's a smart move for them because they hire me back, they get some ratings out of me, they do whatever instead of just paying me a lump sum of money for doing nothing for you.  I think it's a smart move on their part.  And I would do it, by the way . . .

**I didn't go out and hire a lawyer to do this.   This is something that was presented to me and is not costing me a dime.   And if I can do that who wouldn't do what I'm doing.   Everybody would.   And that's basically what's happened.**

(*Id.* at 8-10) (emphasis added).[1]  On May 17, 2016, Bagwell executed a retention agreement with the Krislov Firm, where Attorney Peterson was employed at the time.  (*See* Ex. B.)

### B.      Bagwell's False Interrogatory Answers

On June 13, 2017, WWE served interrogatories on Plaintiffs seeking to discover how they became aware of the claims asserted in the complaint and how they ultimately became plaintiffs in this case.  In his initial responses to those interrogatories, Bagwell contradicted the statements that he made in the publicly-recorded interview and claimed that he had "incorrectly identified" Attorney Peterson as the attorney who had contacted him regarding this case.  (*See* Ex. C at Interrogatory 10.)  Instead, Bagwell, a Georgia resident, claimed that *he* had contacted Attorney Peterson, a low-level associate in a Chicago law firm:   "In or around May 2016, Plaintiff contacted Mr. Peterson regarding the payment of royalties pursuant to his wrestling contracts.  As a result of those discussions, Plaintiff retained counsel in or around June 2016." (*Id.*)  Bagwell's responses were evasive and incomplete because he did not identify the attorney who had contacted him or explain *how* he became aware of his claims in this case.  As a result, WWE insisted that Bagwell supplement his responses.

---

[1] Attorney Peterson's solicitation of Bagwell constitutes a violation of the Rules of Professional Conduct.  *See* Conn. Rules of Prof'l Conduct 7.3(a) ("[A] lawyer shall not initiate personal, live telephone, or real-time electronic contact, including telemarketing contact, for the purpose of obtaining professional employment.").

On August 7, 2017, Bagwell served supplemental responses stating that he "does not remember" who contacted him but "is certain that it was not Mr. Peterson." (*See* Ex. D at Interrogatory 10.) As for how Bagwell became aware of his claims in this case, he responded:

> Plaintiff also states that through his participation in the wrestling industry, he learned of another class action that was filed in April 2016, styled *Goguen v. World Wrestling Entertainment, Inc.*, Case No. 3:16-cv-00524-SRU (D. Conn.), which asserted similar claims as to those asserted in this action. **After learning of the *Goguen* case, in or around May 2016, Plaintiff contacted counsel regarding the payment of royalties pursuant to his wrestling contracts.**

(*Id.* at Interrogatory 9) (emphasis added). Both the original and supplemental interrogatory answers were verified by Bagwell under oath.

### C.     Bagwell's Evasive Responses to Requests for Production

On August 25, 2017, in an attempt to determine which version of the events told by Bagwell was accurate and whether Levy had also been solicited, WWE served a request for the production of phone records reflecting the dates of all calls between Attorney Peterson and Plaintiffs prior to the date they signed a retention agreement. On September 25, 2017, Plaintiffs served responses that were patently deficient and served only to obscure whether solicitation had occurred. Plaintiffs did not actually produce *any* documents responsive to the requests and instead only listed the dates of calls they had made to Attorney Peterson, while objecting to the disclosure of any information about calls that Attorney Peterson made to them. (*See* Ex. E.) As a result of such obstructionism, WWE demanded that Plaintiffs produce the actual records.

On October 5, 2017, Plaintiffs served supplemental responses accompanied by redacted phone records of Levy and Bagwell, but not Attorney Peterson. (*See* Ex. F; Ex. G at BAGWELL-000000359.) However, the phone records produced by Plaintiffs were heavily redacted to show only the date that calls were placed. The records concealed other relevant and

non-privileged information concerning the phone calls between Plaintiffs and their counsel, including information concerning the length or duration of the calls.  (*Id.*)

## II.     LEGAL STANDARD

"The party resisting discovery bears the burden of showing why discovery should be denied."  *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).  "[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Breon v. Coca-Cola Bottling Co.*, 232 F.R.D. 49, 52 (D. Conn. 2005) (internal quotation marks omitted).

## III.    ARGUMENT

Plaintiffs should be compelled to disclose the redacted information on the phone records concerning the calls with their counsel.  As an initial matter, Plaintiffs' redaction of information related to the calls at issue on relevance grounds is inappropriate.  *See In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, No. 08-CV-0333, 2009 WL 1026013 at *1 (S.D.N.Y Apr. 8, 2009) (finding that redactions for relevance are "generally unwise," "breed suspicions," and "may deprive the reader of context"); *Howell v. City of New York*, No. 06-CV-6347, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) ("It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant.").  Moreover, the redacted information is plainly relevant to establishing that Plaintiffs were improperly solicited to join this lawsuit by Attorney Peterson and to the veracity of Bagwell's verified responses.[2]  WWE respectfully submits that it should not have to

---

[2] Evidence of solicitation of a plaintiff's participation in this lawsuit is relevant to the merits of the plaintiff's claims and his credibility and to class certification issues, including the adequacy of class counsel and the class representatives.  *See   EEOC v. CRST Van Expedited, Inc.*, No. C07-0095, 2009 U.S. Dist. LEXIS 3621, at *13-14 (N.D. Iowa Jan. 20, 2009); *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 U.S. Dist. LEXIS 79166, at *12-14 (D. Md. June

disclose how it intends to use the redacted information to cross-examine Bagwell, but represents to the Court that it has a good-faith basis for believing that the redacted information, if produced, will assist in establishing the truth and impeaching Bagwell's verified responses by which he attempted to deny his prior admission that he had been solicited by Attorney Peterson.

Plaintiffs also cannot claim that the redacted information on the phone records is privileged.  Plaintiffs waived any privilege claim by not including the phone records on a privilege log.  *See Session v. Rodriguez*, No. 3:03CV0943, 2008 WL 2338123, at \*2 (D. Conn. June 4, 2008) ("The failure to produce a privilege log waives the privilege."); *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 168-169 (D. Conn. 2005) ("Where a party fails to perfect a claim of privilege that privilege is deemed waived.").  In any event, the length or duration of communications between and an attorney and a client is not protected by the privilege.  *See Kent Literary Club v. Wesleyan Univ.,* No. CV156013185, 2016 WL 2602274, at \*2 (Conn. Super. Ct. Apr. 12, 2016) ("The privilege does not exempt a party from disclosing other information that may involve a lawyer, such as the identity of who spoke to a lawyer, the date on which they spoke, the length of the communication, etc.").

## IV.    CONCLUSION

For these reasons, the Court should grant WWE's motion to compel and should require Plaintiffs to pay WWE its attorney's fees and expenses incurred in connection with this motion.

---

17, 2016); *Pilcher v. Direct Equity Lending*, No. 99-1245, 2000 U.S. Dist. LEXIS 19811, at \*4, 11-12 (D. Kan. Dec. 22, 2000).  In addition, evidence of solicitation of plaintiffs in class action cases in violation of applicable ethical rules constitutes an abuse of the class action device and may provide a basis for denying class certification.  *See Bodner v. Oreck Direct, LLC*, No. 06-4756, 2007 U.S. Dist. LEXIS 30408, at \*5-7 (N.D. Cal. Apr. 25, 2007); *Ogden v. AmeriCredit Corp.*, 225 F.RD. 529, 535 (N.D. Tex. 2005); *Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237, 240 (N.D. Tex. 1972); *Buford v. American Finance Co.*, 333 F. Supp. 1243, 1251 (N.D. Ga. 1971); *Taub v. Glickman*, No. 67 Civ. 3447, 1970 U.S. Dist. LEXIS 9352, at \*6-7 (S.D.N.Y. Dec. 1, 1970); *Meachum v. Outdoor World Corp.*, 654 N.Y.S.2d 240, 251 (1996).

DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.

By: */s/  Jerry S. McDevitt*
    Jerry S. McDevitt (*pro hac vice*)
    Curtis B. Krasik *(pro hac vice*)
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: curtis.krasik@klgates.com

    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com

    Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that, on November 6, 2017, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

    */s/ Jeffrey P. Mueller*
    Jeffrey P. Mueller (ct27870)

6