**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Defendant. | : | NO. 3:16-CV-01350-JCH<br><br><br><br><br><br><br><br>NOVEMBER 17, 2017 |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL REGARDING PRIVILEGE ISSUES**

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this reply memorandum in support of its motion to compel regarding privilege issues.

## I. INTRODUCTION

In his opposition to the motion to compel, Plaintiff Scott Levy ("Levy") attempts to salvage his baseless privilege claim over the March 16, 2016 email sent to him by Attorney Peterson before the formation of their attorney-client relationship by submitting an affidavit that belies the prior representations of his counsel and contradicts his own deposition testimony.

Levy's affidavit claims for the first time that he discussed potential claims for royalties on the WWE Network with Attorney Konstantine Kyros,[1] asked Attorney Kyros to assist him in

[1] Konstantine Kyros is a Massachusetts lawyer who has engaged in an internet solicitation scheme to recruit former WWE performers to bring lawsuits against WWE related to alleged harm from concussions. (*See* Ex. 1, Kyros Law Solicitation, "WWE Wrestler Compensation Lawsuit"). In the past three years, Attorney Kyros commenced six lawsuits against WWE which have all been consolidated in this Court before the Honorable Vanessa Bryant. Judge Bryant has repeatedly admonished Attorney Kyros for engaging in deceptive and misleading conduct throughout the course of that litigation, has dismissed four of the six cases entirely, and has

finding an attorney who could investigate such claims, and "understand[s]" that Attorney Peterson contacted him as a result of a referral from Attorney Kyros. (*See* Levy Aff. ¶¶ 7-13.)

As shown below, Levy's affidavit completely belies his counsel's prior representations that Attorney Kyros had no involvement in this case or with these Plaintiffs and had not referred this case to any counsel for the Plaintiffs. Levy's affidavit also flatly contradicts his own deposition testimony that he only had discussions with Attorney Kyros about concussion litigation, he only told unidentified "friends" that he was searching for an attorney to pursue a royalties claim, and he did not know whether any of these unnamed friends had contacted Attorney Peterson. Levy has not submitted an affidavit from either Attorney Peterson or Attorney Kyros nor offered any competent evidence that Attorney Peterson actually contacted him based on a referral from Attorney Kyros. In any event, Levy's affidavit does not change the undisputed fact that he had never communicated with Attorney Peterson before receiving the March 16 email, and therefore no attorney-client relationship could have existed at the time it was sent. Accordingly, Levy has not met his burden of establishing that the email is privileged.

## II. <u>ARGUMENT</u>

### A. <u>Levy's Affidavit Contradicts the Prior Representations of His Counsel.</u>

Levy's claim that Attorney Peterson contacted him as a result of a referral from Attorney Kyros is contradicted by the prior representations of his own counsel who stated unequivocally that Attorney Kyros had no involvement in this case nor with the Plaintiffs and had not referred this matter to any counsel for the Plaintiffs.

---

indicated an inclination to dismiss the remaining two cases. *See McCullough v. World Wrestling Entertainment, Inc.*, Case No. 3:15-cv-01074-VLB, Doc. Nos. 116, 253, 314.

During a July 25, 2017 teleconference, WWE's counsel specifically asked Levy's counsel whether Attorney Peterson had any agreement with Attorney Kyros concerning this case. Levy's counsel responded that they had never even heard of Attorney Kyros.[2]

On August 4, 2017, WWE's counsel sent an email to all counsel for Levy, including Attorney Peterson, and asked the following specific questions:

> (f) What other attorneys, including but not limited to Konstantine Kyros, have been involved in this case or involved with the Plaintiffs, or have a financial interest in this case?
>
> (g) What attorneys were involved in referring this case to any of the current or former counsel for Plaintiffs?

(Ex. 2, August 4, 2017 Email from Jeffrey Mueller.) On August 9, 2017, Levy's counsel responded to the email and provided the following answers:

> f. There are no other attorneys who are or have been involved in this case on behalf of Plaintiffs, or who are or have been involved in this case on behalf of Plaintiffs, or who have a financial interest in this case, other than the lawyers and law firms who have been disclosed to you and who have entered appearances at one time or another in this litigation.
>
> g. See answer to #6(f) above.

(Ex. 3, August 9, 2017 Email from Eric Zagrans.) Significantly, Attorney Peterson was copied on both the email sent to Levy's counsel and the response categorically denying any involvement in this case by Attorney Kyros or referrals of this case from Attorney Kyros.[3]

---

[2] Attorneys Zagrans and Silverman participated in this call for the Plaintiffs. Although Attorney Peterson was not a participant in the call, he is a member of the same law firm (The Bruno Firm) as Attorneys Zagrans and Silverman.

[3] Levy's counsel either made false representations about the involvement of Attorney Kyros in their communications with WWE's counsel or in their recent submissions to the Court. If Levy's counsel made misrepresentations to WWE's counsel, then they have violated their ethical obligations. *See* Conn. Rule of Prof. Conduct 8.4 (stating that it is professional misconduct for a lawyer to engage in conduct involving "dishonesty" or "misrepresentation"). If Levy's counsel made false representations in their submission to the Court, then they have violated both their ethical obligations and the mandates of Federal Rule of Civil Procedure 11. *See id.*; Fed. R. Civ.

WWE specifically relied on the representations made by Levy's counsel in response to these and other questions in reaching a compromise on disputed discovery issues. Specifically, the parties agreed that WWE would not seek to compel the production of retention agreements and related documents at that time based on the written answers to such questions. (*See* Ex. 4, August 3, 2017 Email from Eric Zagrans.) Levy's affidavit flatly contradicts his counsel's representations on which WWE relied to its detriment.

**B. <u>Levy's Affidavit Contradicts His Own Deposition Testimony.</u>**

Levy's affidavit also blatantly contradicts his own deposition testimony. Levy spent eight to twelve hours meeting with his counsel to prepare for his deposition and surely knew that he would be examined on the issue of how he became involved in this lawsuit. (*See* Ex. 5, Levy Dep. at 16-17.) Despite close examination, Levy *never* testified that he had any conversation with Attorney Kyros about a potential claim for royalties or that he was contacted by Attorney Peterson as a result of a referral from Attorney Kyros. To the contrary, Levy's deposition testimony contradicted the statements made in his affidavit in multiple respects.

<u>First</u>, Levy testified that he *only* had a discussion with Attorney Kyros about the concussion litigation that Attorney Kyros had brought on behalf of other WWE performers and that he told Attorney Kyros that he did not want to be a party to that lawsuit.

Q. Did you ever talk to Mr. Kyros?
A. Yes.
Q. When did you speak to Mr. Kyros?
A. I'm not sure.
Q. This year?
A. I don't think so.
Q. Did you call him or did he call you?
A. I'm not certain.

---

P. 11 (by presenting a motion or other paper to the court, an attorney certifies that "factual contentions have evidentiary support"); Conn. Rule of Prof. Conduct 3.3(a) (a lawyer shall not knowingly "make a false statement of fact or law to a tribunal").

Q. How many times did you talk to him?
A. I believe under five and probably under three.
Q. And what was the subject of the conversation?
A. **I believe we discussed his lawsuit and I'm pretty sure that was it.**
**Q. Did he ask you to be a party to that lawsuit?**
**A. Yes.**
**Q. What did you say?**
**A. No.**
**Q. Why did you say no?**
**A. Because I didn't feel I had a fair case.**
**Q. Why is that?**
**A. Because I couldn't correlate whatever injuries I have, whatever concussions I may have had, to my time in WWE alone.**
Q. Did you communicate that to Mr. Kyros?
A. I believe so.
Q. What did he say?
A. I don't recall.

(*Id.* at 152-153) (emphasis added).[4] Levy therefore denied ever speaking with Attorney Kyros about potential claims for royalties on the WWE Network.

Second, Levy testified only that he told certain unidentified "friends" that he was searching for an attorney to pursue such claims against WWE. (*Id.* at 55-57, 109, 120-121, 131-132.) Although Levy was represented by another attorney named Frank Smith at the time, Levy claimed that he sent "feelers" through unnamed friends because Attorney Smith could not handle the case and Levy "didn't know of any other lawyers." (*Id.* at 56-57, 108-109.) Levy's claim in his affidavit that he told Attorney Kyros that he was looking for an attorney to investigate potential royalty claims against WWE is therefore plainly inconsistent with his testimony.

Third, Levy testified that he did not know what actions his unidentified "friends" may have taken after he spoke with them and could not testify whether any of them actually contacted Attorney Peterson. (*Id.* at 55-58.) Levy never testified that Attorney Peterson contacted him as a

[4] Although Levy could not recall who initiated the calls with Attorney Kyros, it is unlikely that Levy would have called Attorney Kyros because he testified that he was not interested in joining the lawsuit that Attorney Kyros had commenced. Phone records from Levy and Attorney Kyros would reflect the dates of any such calls and confirm who initiated the calls.

result of a referral from Attorney Kyros, and his testimony contradicts that new claim. Moreover, Levy has not submitted an errata sheet making any changes to his deposition testimony since the time that his deposition was taken.

**C. <u>Levy's Affidavit Does Not Establish His Privilege Claim</u>.**

Levy now seeks to rescue his baseless privilege claim by submitting an affidavit that both contradicts the prior representations made by the same lawyers who drafted the affidavit and his own deposition testimony. Levy's affidavit cannot save his privilege claim for several reasons.

**1. <u>Levy's Affidavit Should Be Disregarded Entirely.</u>**

As an initial matter, the Court should disregard Levy's "sham affidavit" entirely because it contradicts his prior deposition testimony. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony"); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *Newport Elecs. v. Newport Corp.*, 157 F. Supp. 2d 202, 220 (D. Conn. 2001) ("The settled law in the Second Circuit is that a party may not create a material issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (internal quotation marks omitted) (Hall, *J.*). If Levy cannot avoid summary judgment by contradicting his deposition testimony, then he certainly cannot prevail on an discovery dispute.

If Levy intended to make changes to his deposition testimony, then he was required to submit an errata sheet listing those changes. *See* Fed. R. Civ. P. 30(e)(1) (providing that the

deponent is required to review the deposition transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them"). Where the changes to the deposition testimony are substantial, then the deposition may be re-opened to permit cross-examination on the changes. *See Miller v. Massad-Zion Motor Sales Co., Inc.*, No. 3:12CV1363, 2014 U.S. Dist. LEXIS 141571, at *9-10 (D. Conn. Oct. 6, 2014) (reopening a deposition "to allow for further cross-examination of the deponent if the changes to the transcript are so substantial as to effectively render it incomplete or useless without further discovery") (internal quotation marks omitted). Therefore, if the Court does not disregard Levy's affidavit entirely, it should at least permit WWE to re-examine Levy on the issues in his affidavit.

**2. Levy's Affidavit Does Not Establish That Attorney Peterson Contacted Him As a Result of a Referral From Attorney Kyros.**

Even if the Court were inclined to consider Levy's affidavit, the affidavit is insufficient to establish that Attorney Peterson contacted Levy as a result of a referral from Attorney Kyros.

First, Levy's affidavit can state only his "***understanding*** that Attorney Matthew Peterson contacted me on March 16, 2016 via email as a result of Attorney Kyros's referral." (Levy Aff. ¶ 12) (emphasis added). Levy's affidavit does not offer any basis for that understanding, nor can he alone provide any competent evidence to support that understanding.

Second, Levy has not submitted an affidavit from either Attorney Peterson or Attorney Kyros, the parties to the alleged conversation that led the email, as required to support his claims.

Third, Levy has not produced any documents in this case or included any documents on a privilege log that reflect any communications between Attorney Peterson and Attorney Kyros.

Fourth, the notion that Attorney Kyros would have referred this putative class action case to Attorney Peterson strains credulity. Attorney Peterson was a low-level associate in a Chicago law firm with no prior experience with WWE. Meanwhile, Attorney Kyros had entered into

retainer agreements with several former WWE performers to pursue other royalty claims against WWE and has since asserted claims for additional royalties on behalf of 60 plaintiffs, including plaintiffs who would be considered putative class members in this case. *See Laurinaitis, et al. v. World Wrestling Entertainment, et al.*, Case No. 3:15-cv-01074-VLB, Doc. No. 363, Second Am. Compl. ¶¶ 659-665.[5] It is particularly implausible that Attorney Kyros would have referred this putative class action case to Attorney Peterson without receiving any referral fee, yet Levy's counsel have expressly disavowed Attorney Kyros having any financial interest in this case.[6]

Based on the current record, there is insufficient evidence for the Court to conclude that Attorney Peterson actually contacted Levy as a result of a referral from Attorney Kyros.

### 3. Levy Cannot Meet His Burden of Establishing the Privilege.

Even assuming that Attorney Peterson contacted Levy based on a referral from Attorney Kyros, Levy still cannot meet his burden of proving that the March 16 email is privileged.

First, there is no evidence of an attorney-client relationship between Levy and Attorney Kyros necessary to establish a claim of privilege with respect to initial communications between them. Even if such a relationship had existed, Levy waived any privilege claim by disclosing the substance of his communications with Attorney Kyros in his deposition and in his affidavit. *See Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 58 (2009) ("the voluntary disclosure of confidential or privileged material to a third party, such as an adversary, generally

[5] In the *Laurinaitis* case, Attorney Kyros has claimed that the Booking Contracts of the plaintiffs are all void and unconscionable and therefore that they should be entitled to share in 50% of the royalties from their performances.

[6] Contrary to the suggestion in Levy's affidavit, Attorney Peterson would not have had to obtain information about Levy's Booking Contract from Attorney Kyros in order to prepare an analysis of potential contractual claims for royalties. His Booking Contract was a matter of public record as it was filed in prior litigation that Levy had brought against WWE. *See Levy, et al. v. World Wrestling Entertainment, Inc.*, Case No. 3:08-CV-01289-PCD, Doc. No. 18-2.

constitutes a waiver of privileges with respect to that material"); *State v. Taft*, 258 Conn. 412, 421 (2001) ("The law is clear that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege.") (internal quotation marks omitted).

Second, there is no evidence of an attorney-client relationship between Levy and Attorney Peterson necessary to establish a privilege claim with respect to the March 16 email *at the time Attorney Peterson sent it*. Levy's assertion that privilege is a "two-way street" ignores that an attorney-client relationship can only be *initiated* by the client. *See United States v. Silverman*, 430 F.2d 106, 122 (2d Cir. 1970) (stating that "[t]he privilege as commonly formulated refers to a confidential communication *from* the client *to* the attorney" and that "the reason for bringing communications from the attorney to the client within the privilege is to prevent adopted admissions or inferences of the tenor of the client's communication") (emphasis in original). Here, it remains undisputed that (i) Levy had never spoken to or communicated with Attorney Peterson before receiving the March 16 email, (ii) Levy did not know and had never even heard of Attorney Peterson prior to receiving that email, and (iii) Levy did not ask Attorney Peterson to send him that email.[7] Because Levy cannot establish that he had an attorney-client relationship with Attorney Peterson before receiving the March 16 email, he cannot meet his burden of establishing that the email was sent within the scope of an attorney-client relationship such that it could be protected by the attorney-client privilege or the work product doctrine. *See Linnell v. Linnell*, No. FA064010515, 2010 Conn. Super. LEXIS 521, at *10 (Conn. Super. Ct. Feb. 16, 2010) ("Without the presence of an attorney-client relationship,

---

[7] Levy admitted in his deposition that he only considered Attorney Peterson to be his attorney "once we started talking," which did not occur until nearly a month after receiving the March 16 email, when Levy called Attorney Peterson for the first time. (Ex. 5, Levy Dep. at 70.) But even if Levy formed the "understanding" that Attorney Peterson had become his attorney immediately upon reviewing the e-mail, that can only have happened *after* the e-mail was sent. Prior to the time the email was sent, Attorney Peterson was a complete stranger to Levy.

the possibility of protecting the materials requested from discovery is unavailable under both the attorney client privilege and the work product doctrine.").

## IV. CONCLUSION

The Court should grant WWE's motion to compel in its entirety. If the Court is not inclined to grant WWE's motion on the current record, then it should permit WWE to take additional discovery with respect to the issues in Levy's affidavit before ruling on the motion, including additional discovery directed to Levy, Attorney Peterson, and Attorney Kyros.

DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.

By: *<u>/s/ Jerry S. McDevitt</u>*

Jerry S. McDevitt (*pro hac vice*)
Curtis B. Krasik *(pro hac vice*)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com

Its Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 17, 2017, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)