**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARCUS BAGWELL and SCOTT LEVY, individually and on behalf of all others similarly situated, | : : : : | NO. 3:16-CV-01350-JCH |
| Plaintiffs, | : : | |
| vs. | : : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : : : | |
| Defendant. | : : | DECEMBER 15, 2017 |

**WORLD WRESTLING ENTERTAINMENT, INC.'S VERIFIED BILL OF COSTS**

Pursuant to Fed. R. Civ. P. 54(d) and D. Conn. L. Civ. R. 54, Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this Bill of Costs itemizing the costs to which it is entitled as the prevailing party against Plaintiffs Marcus Bagwell and Scott Levy in the above-captioned matter.

**I.     INTRODUCTION**

On December 7, 2017, the parties filed a Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  *See* Doc. 164.  The parties stipulated that "[t]his action, and all claims and causes of action which were, or which could have been, asserted herein by Bagwell and Levy against WWE [were] dismissed **with prejudice**."  *Id.* at 1 (emphasis added).  No money was paid by WWE to either Bagwell or Levy in consideration for the dismissal of Plaintiffs' claims with prejudice.  *See* Affidavit of Curtis B. Krasik at ¶ 5, Ex. 1.  The parties further stipulated that "[t]he counterclaim asserted by WWE against Levy [was] dismissed **without prejudice**" with WWE being free to reassert such counterclaim "if Levy ever brings any claim against WWE in

the future which, in whole or in part, alleges that WWE breached some contract with Levy." Doc. 164 (emphasis added).

"A 'prevailing party' under Rule 54(d) is one who achieves a 'judicially sanctioned change in the legal relationship of the parties.'" *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 71 (S.D.N.Y. 2015) (quoting *Dattner v. Conagra Foods Inc.*, 458 F.3d 98, 101 (2d Cir. 2006)). A voluntary dismissal of an action with prejudice pursuant to Rule 41(a) satisfies this standard "because it constitutes an adjudication on the merits for purposes of *res judicata* and any action so dismissed could not be brought again." *Id.* (quoting *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 165 (2d Cir. 2014) (internal quotations omitted)); *see also Surprise v. GTE Service Corp.*, 202 F.R.D. 79, 81 (D. Conn. 2000) (holding "a defendant is the prevailing party for purposes of Rule 54(d) costs where there has been a voluntary dismissal with prejudice of plaintiff's claims"). Accordingly, WWE is a prevailing party for purposes of taxing costs under Rule 54(d). For the reasons described in detail below, WWE is entitled to taxable costs in the amount of **$6,105.40**.

## II. BACKGROUND FOR TAXABLE COSTS

### A. Procedural Background

Plaintiff Bagwell commenced this action by filing a putative class action complaint against WWE on August 9, 2016.[1] *See* Doc. 1. Bagwell's original complaint was constructed on false allegations, namely, that Bagwell had been employed by WWE as a professional wrestler

---

[1] Certain of the same Plaintiffs' counsel previously had filed a putative class action complaint asserting similar allegations on behalf of a former-WWE performer named Rene Goguen. *See Goguen v. World Wrestling Entertainment, Inc.*, No. 3:16-cv-00542-SRU (D. Conn). WWE's counsel immediately notified Plaintiffs' counsel that Goguen had signed a release with WWE that barred the claims and provided the release to Plaintiffs' counsel for their independent confirmation. Plaintiffs' counsel voluntarily withdrew Goguen's complaint on April 11, 2016.

from 1991 to 2001 and that two entirely distinct corporations, World Championship Wrestling, Inc., a corporation affiliated with Turner Broadcasting System, Inc., and WCW, Inc., a one-time subsidiary of WWE, were the same corporation.

On September 7, 2016, Plaintiffs filed a motion to amend complaint along with a proposed first amended complaint that sought to add Levy as a plaintiff and WCW, Inc. as a defendant. *See* Doc. 11. The Court granted Plaintiffs' motion to amend on November 4, 2016. *See* Doc. 37. WWE then moved to dismiss Plaintiffs' first amended complaint in its entirety on December 2, 2016 (Doc. 45), which the Court granted in part and denied in part by ruling dated May 5, 2017. *See* Doc. 48. Among other things, the Court dismissed (a) all claims against WCW, Inc.; (b) all claims for declaratory relief; (c) the claim for successor liability; and (d) the claim for unjust enrichment. *Id.* As part of its ruling, the Court granted Plaintiffs' leave to file a second amended complaint. *Id.* at 40-41. Plaintiffs filed their second amended complaint on May 19, 2017. *See* Doc. 51. Due to certain clerical errors made by Plaintiffs' counsel in the second amended complaint, Plaintiffs sought and were granted leave to file a third amended complaint.

Plaintiffs' third amended complaint was filed on June 15, 2017. *See* Doc. 65. Pursuant to the third amended complaint, Levy purported to represent two putative classes: (a) performers who had entered into contracts with Titan Sports, Inc. from January 1, 1993 through December 31, 1993 (the "Titan Class"), and (b) performers who had entered into contracts with World Wrestling Federation Entertainment, Inc. from January 1, 1999 through January 1, 2004 (the "WWFE Class"). Bagwell purported to represent a class of performers who had entered into contracts with WCW, Inc. from March 24, 2001 through January 1, 2004 (the "WCW, Inc. Class"). On September 29, 2017, Plaintiffs filed a notice stating that they would not pursue

3

claims on behalf of the Titan and WCW, Inc. Classes and that they would not be pursuing any class claims on behalf of Bagwell. *See* Doc. 117.

Both sides actively engaged in discovery, including discovery of electronically-stored information ("ESI") in accordance with a stipulated protocol. Plaintiffs served WWE with First and Second Sets of Documents Requests and First and Second Sets of Interrogatories, in response to which WWE collected, processed, searched and reviewed hard copy documents and ESI in accordance with the parties' stipulated protocol. WWE ultimately produced over 4,600 pages of documents in TIFF format as well as three voluminous Excel files in native format.

WWE conducted Levy's deposition on October 12, 2017. In the deposition, WWE's counsel examined Levy on, among other things, public statements that Levy had made blaming the dismissal of a prior lawsuit he filed against WWE on the fact that the federal judge in that case (the Honorable Peter C. Dorsey) supposedly was paid a bribe by WWE Chairman, Vince McMahon. Shortly after Levy's deposition, on October 27, 2017, WWE filed an amended answer and affirmative defenses that included a new counterclaim against Levy for breach of the non-disparagement provision of his early contract release from WWE based on the false and disparaging statements Levy had made accusing Mr. McMahon of bribing the federal judge in his prior lawsuit against WWE as a quid pro quo for the dismissal of that lawsuit.

WWE conducted Bagwell's deposition on November 15, 2017. Substantial questions arose from Bagwell's testimony regarding his truthfulness generally and specifically as to whether he had been solicited by Attorney Matthew Peterson to file this lawsuit.

Following the depositions of Levy and Bagwell, Plaintiffs' counsel advised WWE's counsel that they intended to voluntarily dismiss Plaintiffs' remaining claims in this action. Originally, Plaintiffs' counsel indicated that they intended to dismiss Levy's claims with

prejudice but Bagwell's claims without prejudice. WWE's counsel responded that WWE would not stipulate to a dismissal on that basis, and insisted that the dismissal of all claims be with prejudice. Plaintiffs' counsel ultimately agreed. On December 7, 2017, the parties filed a Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). *See* Doc. 164.

The parties stipulated that "[t]his action, and all claims and causes of action which were, or which could have been, asserted herein by Bagwell and Levy against WWE [were] dismissed **with prejudice**." *Id.* at 1 (emphasis added). No money was paid by WWE to either Bagwell or Levy in consideration for the dismissal with prejudice. *See* Krasik Affidavit at ¶ 5, Ex. 1. The parties further stipulated that "[t]he counterclaim asserted by WWE against Levy [was] dismissed **without prejudice**" and WWE is free to reassert such counterclaim "if Levy ever brings any claim against WWE in the future which, in whole or in part, alleges that WWE breached some contract with Levy." Doc. 164 (emphasis added). In that connection, the parties stipulated that "any statutes of limitation, statutes of repose, or other limitations periods relating to or applicable in any way to such counterclaims [were] tolled as of October 27, 2017 (the date of the filing of the counterclaim in this action)." *Id.* On December 8, 2017, the Court issued an Order granting the parties' Stipulation of Dismissal. *See* Doc. 165.

Thus, while this action — the second putative class action filed by Plaintiffs' counsel — at one time involved putative class action claims asserted by two named plaintiffs on behalf of themselves and three different putative classes, all of those claims have now been dismissed with prejudice at significant expense to WWE. In successfully obtaining the dismissal with prejudice of such claims, WWE undoubtedly is a "prevailing party" within the meaning of Rule 54(d).

**B.     WWE Is A Prevailing Party Under Rule 54(d)**

Rule 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides

otherwise, costs — other than attorneys' fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Taxing costs pursuant to Rule 54(d) in favor of the prevailing party "is the rule, not the exception, in civil litigation." *Balance Point Divorce Funding*, 305 F.R.D. at 70-71 (citing *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001)). "For this reason, the losing party has the burden to show that costs should not be imposed." *Whitfield*, 241 F.3d at 270. "As a general rule, liability for costs is to be shared jointly and severally when there are multiple parties on the losing side." *N.E. Holdings L.L.C. v. Town of Riverhead*, 244 F.R.D. 166, 168 (E.D.N.Y. 2007); *see also Anderson v. Griffin*, 397 F.3d 515, 522-23 (7th Cir. 2005) ("[T]he presumptive rule is joint and several liability for those costs, unless it is clear that one or more of the losing parties is responsible for a disproportionate share of the costs."); *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002) ("Joint and several liability for costs is the general rule unless equity otherwise dictates."); *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 469 (3d Cir. 2000) ("[T]he default rule is that costs may be imposed jointly and severally.").

"A 'prevailing party' under Rule 54(d) is one who achieves a 'judicially sanctioned change in the legal relationship of the parties.'" *Balance Point Divorce Funding*, 305 F.R.D. at 71 (quoting *Dattner*, 458 F.3d at 101). Put differently, a party "must have gained through the litigation a 'material alteration of the legal relationship of the parties.'" *Carter*, 759 F.3d at 165 (quoting *Buckhanon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).[2] A voluntary dismissal of an action with prejudice pursuant to Rule 41(a) satisfies this standard "because it constitutes an adjudication on the merits for purposes of *res*

---

[2] Although *Buckhanon* involved the fee-shifting provisions of the ADA, the Second Circuit has applied *Buckhanon*'s "prevailing party" standard to the decision to award costs under Rule 54(d), ruling that "a litigant who is a prevailing party for purposes of attorneys' fees is also the prevailing party for purposes of costs." *Dattner*, 458 F.3d at 101.

*judicata* and any action so dismissed could not be brought again." *Id.* (quoting *Carter*, 759 F.3d at 165) (internal quotations omitted)); *see also Commercial Recovery Corp. v. Bilateral Credit Corp., LLC*, No. 12 Civ. 5287(CM), 2013 WL 8350184, at *5 (S.D.N.Y. Dec. 19, 2013) (Rule 41(a) dismissal with prejudice "constitutes a final judgment with the preclusive effect of *res judicata* no only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit") (internal citations and quotations omitted); *Surprise v. GTE Service Corp.*, 202 F.R.D. 79, 81 (D. Conn. 2000) (holding "a defendant is the prevailing party for purposes of Rule 54(d) costs where there has been a voluntary dismissal with prejudice of plaintiff's claims"). Accordingly, WWE is a prevailing party for purposes of taxing costs under Rule 54(d).[3]

WWE now seeks to recover the taxable costs that it necessarily incurred in defending Plaintiffs' claims, which taxable costs are set forth below.

## C.     Depositions

WWE seeks to recover the costs of the depositions of Plaintiffs Levy and Bagwell. Under Local Rule 54(c)2(ii), "[t]he cost of an original and one copy of any paper deposition transcript (as well as electronic text, audio, or audiovisual transcript if used in that form) are recoverable as costs, . . . if they are necessarily obtained for the preparation of the case." D. Conn. L. Civ. R. 54(c)2(ii); *see also* 28 U.S.C. § 1920(2) (taxable costs include "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case"). "A deposition

---

[3] That WWE voluntarily dismissed its counterclaim against Levy <u>without prejudice</u> in no way undermines WWE's status as a prevailing party. *See, e.g., In re Americanwest Bancorporation v. Americanwest Bank,* Adv. Proc. No. 11-80323-PCW, 2013 WL 5511352, at *2 (E.D. Wash. Oct. 4, 2013) (rejecting argument that voluntary dismissal of counterclaim undermined party's prevailing party status where, as here, such counterclaims "were merely defensive claims and as such, certainly do not result in that party being deemed a 'loser' in this lawsuit.").

transcript is 'necessarily obtained' if 'it was necessary to counsel's effective performance and proper handling of the case.'" *Natale v. City of Hartford*, No. H-86-928(AHN), 1989 WL 132542, at *6 (D. Conn. Sept. 12, 1989) (citations omitted).

In this regard, federal courts have ruled that the deposition of a party-opponent is "necessarily obtained for the preparation of the case." *Sherman v. Clark*, No. 11-CV-6277-FPG, 2015 WL 3766861, at *2 (N.D.N.Y. Jun. 16, 2015) ("finding that taking the Plaintiff's deposition in this case was necessary" in reimbursing such transcript costs); *Henderson v. Alexander & Baldwin, Inc.*, No. 07-00101 DAE-LEK, 2008 WL 2588712, at *6 (D. Haw. Jun. 30, 2008) ("Clearly, the deposition of a party is necessary for trial preparation and is not mere discovery."); *see also* Guidelines for Bills of Costs for the U.S. District Court for the Western District of New York, II.D.1.c (effective January 1, 2015) (Fees for Printed and Electronically Recorded Transcripts Necessarily Obtained for Use in the Case under 28 U.S.C. § 1920(2) include "Transcript of deposition of a party to the case").  In addition to requiring the depositions for anticipated use at summary judgment and trial, WWE used admissions from Levy's deposition as an integral part of its motion to compel regarding privilege issues (Doc. 132) and reply in further support of that motion (Doc. 153).  At the time the parties filed the Stipulation of Dismissal, WWE was in the process of preparing a similar motion, based on admissions from Bagwell's deposition, to challenge equally-unfounded claims of privilege by Bagwell. Moreover, WWE believes that the admissions it was able to elicit from Levy and Bagwell were material to Plaintiffs' decision to voluntarily withdraw all of their claims in this action.

In addition to written transcripts, WWE also obtained video recordings of Plaintiffs' depositions.  As in any case, WWE obtained the video recordings to use in submissions to the Court and/or as potential impeachment material at trial, so the Court and the jury could view

Plaintiffs' demeanor, facial expressions, and gestures. Where depositions are recorded both in written transcripts and on video, federal courts typically award costs for both the transcripts and the videos. *See, e.g.*, *Synopsys, Inc. v. Ricoh Co. (In re Ricoh Co. Patent Litig.)*, 661 F.3d 1361, 1370 (Fed. Cir. 2011); *Tilton v. Capital Cities/ABC Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997); *Weber v. Fujifilm Med. Sys. U.S.A., Inc.*, No. 3:10CV401(JBA), 2015 WL 4774466, at *4 (D. Conn. Aug. 13, 2015); *Barclay v. Michalsky*, No. 3:04 CV 1322, 2011 U.S. Dist. LEXIS 16408, at *4-5 (D. Conn. Feb. 18, 2011); *Outram v. Outram*, No. CV 08-3437, 2010 U.S. Dist. LEXIS 28202, at *11 (E.D.N.Y. Mar. 4, 2010); *Buell v. Hughes*, No. 3:07 CV 468, 2009 U.S. Dist. LEXIS 131305, at *3 (D. Conn. Apr. 20, 2009); *Oliphant v. State of Conn.*, No. 3:02 CV 700 (D. Conn. June 23, 2008); *Fairbrother v. State of Conn.*, No. 01 CV 162 (D. Conn. Dec. 20, 2006).

The necessary costs for the written transcripts and video recordings of Levy's and Bagwell's depositions are as follows:

| Witness | Transcript (Original and one copy) | Video | Supporting Documents |
|---|---|---|---|
| Scott Levy | $1,409.35[4] | $1,430.00 | DTI Invoice M-156307<br>DTI Invoice M-156311 |
| Marcus Bagwell | $1,208.70 | $1,050.00 | DTI Invoice M-163853<br>DTI Invoice M-163854 |
| **TOTAL: $5,098.05** | | | |

True and accurate copies of the invoices documenting the deposition costs identified above are attached to the Krasik Affidavit, Ex. 1 at Tabs A-D.

---

[4] WWE does not seek to recover the full $2,241.11 that it paid for expedited delivery of the transcript of Mr. Levy's deposition. Rather, WWE seeks to recover only the $1,409.35 that it would have paid for regular, non-expedited delivery of that transcript.

**D.      Transcripts of Pre-Trial Proceedings**

WWE seeks to recover the costs of obtaining transcripts of several pre-trial proceedings. *See* D. Conn. L. Civ. R. 54(c)2(i) ("The cost of the original and one copy of . . . transcripts of pre-trial proceedings . . . [is] taxable if . . . necessarily obtained for use in the case); 28 U.S.C. § 1920(2) (taxable costs include "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case").

WWE obtained transcripts of the following pre-trial proceedings at the following taxable costs:

| Transcript | Amount | Supporting Documents |
|---|---|---|
| Transcript of November 4, 2016 Hearing Before the Honorable Janet C. Hall | $42.70 | Invoice 0001670 |
| Transcript of July 27, 2017 Scheduling Conference Hearing Before the Honorable Sarah A. L. Merriam | $381.15 | Invoice 128023 |
| Transcript of August 11, 2017 Status Conference Hearing Before the Honorable Sarah A. L. Merriam | $205.70 | Invoice 129946 |
| Transcript of August 30, 2017 Status Conference Hearing Before the Honorable Sarah A. L. Merriam | $51.10 | Invoice 134478 |
| Transcript of October 6, 2017 Status Conference Hearing Before the Honorable Sarah A. L. Merriam | $326.70 | Invoice 141956 |
| **TOTAL:  $1,007.35** | | |

All of the foregoing transcripts were necessarily obtained for use in the case, as they were used in connection with, among other things, informing WWE's positions on discovery and the preparation of various joint status reports and discovery motions.  For example, at the July 27, 2017 scheduling conference, the Court articulated the scope of Phase I discovery which framed

WWE's discovery requests and WWE's positions in the parties' numerous meet and confer discussions regarding each side's respective objections to the other side's discovery responses. Likewise, in the August 11 and October 6, 2017 telephonic status conferences, the Court offered guidance regarding certain of the discovery requests in dispute which ultimately facilitated the parties reaching a negotiated resolution of those disputes without the need for motion practice. Additionally, the transcripts of the August 11, 2017 and August 30, 2017 telephonic status conferences provided instructive context and background to the various discovery and case scheduling orders issued by the Court during those status conferences, which subsequently were memorialized as entries on the docket.

True and accurate copies of the invoices documenting WWE's costs in obtaining the transcripts of pre-trial proceedings are attached to the Affidavit of Jeffrey P. Mueller, Ex. 2 at Tabs A-E.

### III.   CONCLUSION

Accordingly, pursuant to Fed. R. Civ. P. 54(d) and D. Conn. L. Civ. R. 54, WWE respectfully requests that the Court enter an order directing Plaintiffs, jointly and severally, to reimburse it in the total amount of **$6,105.40** for the necessary costs incurred in defending this action.

> DEFENDANT WORLD WRESTLING
> ENTERTAINMENT, INC.,
>
> By: _/s/ Jerry S. McDevitt_
>     Jerry S. McDevitt (pro hac vice)
>     Curtis B. Krasik (pro hac vice)
>     K&L GATES LLP
>     K&L Gates Center
>     210 Sixth Avenue
>     Pittsburgh, PA 15222
>     Phone: (412) 355-6500
>     Fax: (412) 355-6501

          Email: jerry.mcdevitt@klgates.com
          Email: curtis.krasik@klgates.com

          Jonathan B. Tropp (ct11295)
          Jeffrey P. Mueller (ct27870)
          DAY PITNEY LLP
          242 Trumbull Street
          Hartford, CT 06103
          Phone: (860) 275-0100
          Fax: (860) 275-0343
          Email: jbtropp@daypitney.com
          Email: jmueller@daypitney.com

          Its Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that, on December 15, 2017, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ *Jeffrey P. Mueller*